# In The United States Court Of Appeals For The Eleventh Circuit

—————————

**ZEN GROUP, INC.,**
**CARLOS OTAMENDI,**

*Plaintiffs - Appellants,*

**v.**

**STATE OF FLORIDA AGENCY FOR HEALTH CARE ADMINISTRATION;**
**SECRETARY, STATE OF FLORIDA,**
**AGENCY FOR HEALTH CARE ADMINISTRATION;**
**KELLY BENNETT,**
individually and in her official capacity as
Chief of the Office of Medicaid Program
Integrity within the State of Florida,
Agency for Health Care Administration;
**SHEVAUN HARRIS,**

*Defendants - Appellees.*

—————————

APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN
DISTRICT OF FLORIDA, 1:20-CV-23218 (HON. DARRIN P. GAYLES)

———————

**PLAINTIFFS-APPELLANTS' OPENING BRIEF**
———————

Sean M. Ellsworth
ELLSWORTH LAW FIRM, PA
1000 5th Street Suite 223
Miami Beach, FL  33139
(305) 535-2529

Anthony C. Vitale
THE HEALTH LAW OFFICE OF
ANTHONY C. VITALE, PA
2333 Brickell Ave Suite A1
Miami, FL  33129
(305) 358-4500

*Counsel for Plaintiffs-Appellants*

*Gibson*Moore Appellate Services, LLC
206 East Cary Street ♦ P.O. Box 1406 (23218) ♦ Richmond, VA  23219
(804) 249-7770 ♦ www.gibsonmoore.net

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

1.  Bennett, Kelly A., Appellee

2.  Crabb, Thomas A., Counsel for Appellees

3.  Dennis, Laura M., Counsel for Appellees

4.  Ellsworth Law Firm, P.A., Counsel for Appellants

5.  Ellsworth, Sean, Counsel for Appellants

6.  Gayles, Darrin P., United States District Court Judge

7.  Harris, Shevaun, Former Acting Secretary for State of Florida Agency for Health Care Administration, Defendant in District Court

8.  Lunny, Christopher B., Counsel for Appellees

9.  Marstiller, Simone, Current Secretary State of Florida Agency for Health Care Administration

10. Mayhew, Mary C., Former Secretary for State of Florida Agency for Health Care Administration, Defendant in District Court

11. Otamendi, Carlos, Appellant

12. Radey Thomas Yon & Clark, P.A., Counsel for Appellees

13. State of Florida, Agency for Health Care Administration, Defendant in District Court

14. The Health Law Offices of Anthony C. Vitale, P.A., Counsel for Appellants

15. Vitale, Anthony C., Counsel for Appellants

16. Zen Group, Inc., Appellant

i

## <u>CERTIFICATIONS</u>

Pursuant to 11th Circuit Rule 26.1-2(c) and 26.1-3(b), Appellants certify that

they believe the above this is complete and they are not aware of any publicly

traded company or corporation that has an interest in the outcome of this appeal.

Respectfully submitted,

**ELLSWORTH LAW FIRM, P.A.**
Sean M. Ellsworth, Esq.
Florida Bar No. 039845
1000 5th Street, Suite 223
Miami Beach, Florida 33139
(305) 535-2529 telephone
(305) 535-2881 facsimile
sean@ellslaw.com

*/s/  Sean M. Ellsworth*
Sean M. Ellsworth

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

Appellants, Zen Group, Inc. ("Zen Group" or "Zen") and Carlos Otamendi, defer to the Court regarding whether oral argument would materially assist the Court in this case.  While Appellants believe the need to reverse the district court's order of dismissal is plain from the law and facts discussed herein, Zen and Otamendi welcome any opportunity this Court provides to address any questions or issues this Court believes necessary to resolving this appeal, including at oral argument.

# **TABLE OF CONTENTS**

**Page**

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE
DISCLOSURE STATEMENT .....................................................................i

STATEMENT REGARDING ORAL ARGUMENT ............................. iii

TABLE OF CONTENTS........................................................................iv

TABLE OF AUTHORITIES ................................................................. vii

STATEMENT OF SUBJECT MATTER AND APPELLATE
JURISDICTION.......................................................................................1

STATEMENT OF THE ISSUES............................................................3

STATEMENT OF THE CASE................................................................4

        Standard Review ........................................................................10

SUMMARY OF THE ARGUMENT ...................................................10

I.     The District Court Erred In Dismissing Count I Of The AC ......................10

II.    The District Court Erred In Dismissing Count II Of The AC ......................13

ARGUMENT AND CITATIONS OF AUTHORITY ...........................16

I.     Count I of The AC States A Section 1983 Claim Under The
      Fourteenth Amendment, And The District Court Erred In Dismissing
      Count I ...........................................................................................16

      A.    Zen and Otamendi Had A Clear, Incontrovertible
           Constitutionally-Protected Interest In The Property AHCA
           Sought To Deprive Them Of By Way Of A *Fine* In AHCA's
           2019 FAR, Thus Even Accepting The District Court's Flawed
           Legal Framework, The District Court Erred In Dismissing
           Count I...........................................................................21

B.   The District Court Failed To Address The Constitutional Theories Of Section 1983 Liability Alleged In The AC, Under Which Zen And Otamendi Stated A Claim In Count I ......................25

    1.   Zen And Otamendi Stated A Section 1983 Claim In Count I By Alleging Defendants-Appellees Unlawfully Retaliated Against Them For Exercise Of Their Fourteenth Amendment Procedural Due Process Rights To Challenge AHCA's 2019 FAR ............................................25

        a.  Zen and Otamendi alleged they engaged in conduct that is protected by the Constitution or by statute ..............28

        b.  Zen and Otamendi alleged Bennett and other Defendants took adverse action against them because they engaged in the protected conduct................................29

    2.   Zen And Otamendi Stated A Section 1983 Claim In Count I By Alleging Defendants-Appellees Violated The Unconstitutional Conditions Doctrine Regarding The Exercise Of Their Fourteenth Amendment Due Process Rights ......................................................................................31

C.   Defendants-Appellants Are Not Entitled to Qualified Immunity On Count I of the AC ..........................................................37

D.   Conclusion...........................................................................40

II.   Count II of the AC States A Section 1983 Claim Under The First Amendment And The District Court Erred In Dismissing Count II .............40

A.   The First Amendment Protects The Right To Petition and To Free Speech and the Right To Be Free From Retaliation For the Exercise Of Those Rights..................................................42

B.   The District Court Erred By Extending The *Pickering* Balancing And Public Concern Test To The Petition Clause Claim Raised By Zen, A Medicaid Contractor That Petitioned To Challenge An AHCA Overpayment Demand ...............................44

C.    Even If The Public Concern Test Applies Here, The District Court Erred In Dismissing Count II Because Zen and Otamendi Were Petitioning and Speaking On Matters Of Public Concern In The 2019 Administrative Case Challenging AHCA's FAR...........50

D.    Defendants-Appellees Are Not Entitled To Qualified Immunity On Count II............................................................................................57

E.    Conclusion............................................................................................57

CONCLUSION .................................................................................................58

CERTIFICATE OF COMPLIANCE .......................................................................59

CERTIFICATE OF SERVICE ...............................................................................59

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Barnes v. Zaccari*,
  669 F.3d 1295 (11th Cir. 2012) .....................................................22

*Barr v. Johnson*,
  777 F. App'x 298 (11th Cir. 2019) ................................................33

*Bd. of Cty. Comm'rs, Wabaunsee Cty., Kan. v. Umbehr*,
  518 U.S. 668 (1996).................................................................*passim*

*Bd. of Regents of State Colls. v. Roth*,
  408 U.S. 564 (1972).....................................................................22

*Bennett v. Hendrix*,
  423 F.3d 1247 (11th Cir. 2005) .....................................................42

*BMI Salvage Corp. v. Manion*,
  366 Fed. Appx. 140 (2010)............................................................55

*Bordenkircher v. Hayes*,
  434 U.S. 357 (1978)...........................................................26, 27, 39

*Bourgeois v. Peters*,
  387 F.3d 1303 (11th Cir.2004) ......................................................32

*Boxer X v. Harris*,
  437 F.3d 1107 (11th Cir. 2006)*, abrogated on other grounds by*
  *Wilkins v. Gaddy*, 559 U.S. 34 (2010) ..........................................49

*Carollo v. Boria*,
  833 F.3d 1322 (11th Cir. 2016) .....................................................57

*Carter v. City of Melbourne, Fla.*,
  731 F.3d 1161 (11th Cir. 2013) .....................................................56

*City of San Diego v. Roe*,
  543 U.S. 77 (2004).........................................................................55

*Connick v. Myers,*
   461 U.S. 138 (1983)............................................................15, 42, 50

*DeMartini v. Town of Gulf Stream,*
   942 F.3d 1277 (11th Cir. 2019) ...........................................41, 42

*Dep't of Banking & Fin., Div. of Sec. & Inv'r Prot. v.*
*Osborne Stern & Co.,*
   670 So. 2d 932 (Fla. 1996) ...........................................6, 17, 24, 28

*Duryea, Pa. v. Guarnieri,*
   564 U.S. 379 (2011)................................................................*passim*

*Echols v. Lawton,*
   913 F.3d 1313 (11th Cir. 2019) ..................................................10

*Fetner v. City of Roanoke,*
   813 F.2d 1183 (11th Cir. 1987) ..................................................34

*Gaines v. Wardynski,*
   871 F.3d 1203 (11th Cir. 2017) ..................................................37

*Garcetti v. Ceballos,*
   547 U.S. 410 (2006)........................................................47, 55, 56

*Gessler v. DBPR.,*
   627 So. 2d 501 (Fla. 4th DCA 1993)..........................................53

*Grayden v. Rhodes,*
   345 F.3d 1225 (11th Cir. 2003) ...........................................34, 35

*Harris v. Quinn,*
   573 U.S. 616 (2014)...................................................................54

*Koontz v. St. Johns River Water Mgmt. Dist.,*
   570 U.S. 595 (2013)................................................................*passim*

*Lebron v. Sec'y, Fla. Dep't of Child. & Fams.,*
   710 F.3d 1202 (11th Cir. 2013) ..................................................32

*Matthews v. Eldridge*,
    424 U.S. 319 (1976)..............................................................34, 35

*Memorial Hospital v. Maricopa County*,
    415 U.S. 250 (1974)....................................................................32

*North Carolina v. Pearce*,
    395 U.S. 711 (1969)....................................................................39

*Oil States Energy Servs., LLC v. Greene's Energy Grp., LLC*,
    138 S. Ct. 1365 (2018)...........................................................13, 33

*Pagan v. Sarasota Cty. Pub. Hosp. Bd.*,
    884 So. 2d 257 (Fla. 2d DCA 2004)............................................53

*Perry v. Sindermann*,
    408 U.S. 593 (1972)........................................................22, 29, 33

*Pickering v. Bd. of Ed. of Twnp. High Sch. Dist.*,
    391 U.S. 563 (1968)..............................................................*passim*

*Planned Parenthood v. Philip*,
    194 F. Supp. 3d 1213 (N.D. Fla. 2016) .......................................33

*Pullman Co. v. State of Kansas ex rel. Coleman*,
    216 U.S. 56 (1910)......................................................................36

*Ratliff v. DeKalb Cnty.*,
    62 F.3d 338 (11th Cir. 1995) ......................................................26

*Ron Grp., LLC v. Azar*,
    No. 2:20-CV-1038-ECM, 2021 WL 5576616
    (M.D. Ala. Nov. 29, 2021) ..........................................................22

*United States v. Goodwin*,
    457 U.S. 368 (1982)..............................................................*passim*

*United States v. Schneider*,
    853 F. App'x 463 (11th Cir. 2021)..............................................27

*United States v. Toombs*,
    748 F. App'x 921 (11th Cir. 2018) ................................................27

*Zinermon v. Burch*,
    494 U.S. 113 (1990) ....................................................................33

**Statutes**

28 U.S.C. § 1291 .............................................................................

28 U.S.C. § 1331 .......................................................................1, 2

28 U.S.C. § 1343 ............................................................................2

42 U.S.C. § 1343 ............................................................................2

42 U.S.C. § 1983 ....................................................................*passim*

Fla. Stat. § 119.011(12) ................................................................51

Fla. Stat. § 120.57 ................................................................*passim*

Fla. Stat. § 120.57(1)(e)1(3) .........................................................53

Fla. Stat. § 120.57(1)(e)2 .............................................................53

Fla. Stat. § 120.57(1)(e)4 .............................................................53

Fla. Stat. § 120.68(1) ..............................................................6, 17

Fla. Stat. § 120.569 .............................................................*passim*

Fla. Stat. § 409.907(5)(a) (2019) ..................................................23

Fla. Stat. § 409.913(1)(e) (2019) ..................................................23

Fla. Stat. § 409.913(12) (2019) ....................................................23

**Constitutional Provisions**

U.S. Const. amend. I ...........................................................*passim*

U.S. Const. amend. IV ...............................................................32

U.S. Const. amend. V.................................................................32

U.S. Const. amend. XIV .....................................................*passim*

**Regulations**

42 C.F.R. § 455.23 ...........................................................7, 18, 30

Fla.Admin.Code Ann. § 59G-4.125.........................................52

Fla.Admin.Code Ann. § 59G-9.070(2)(f) ...............................23

Fla.Admin.Code. Ann. § 59G-9.070(7) ..................................23

## STATEMENT OF SUBJECT MATTER
## AND APPELLATE JURISDICTION

This appeal arises from a final order of dismissal issued by the United States District Court for the Southern District of Florida on December 29, 2021. *See* DE:45.[1]

In Counts I and II of the Amended Complaint ("AC") filed in the district court, Plaintiff-Appellants, Zen and Otamendi, alleged Kelly A. Bennett, Chief of the Office of Medicaid Program Integrity ("MPI") for the Florida Agency for Health Care Administration ("AHCA" of "Agency"), and other defendants violated Section 1983 of Title 42 of the United States Code ("Section 1983") – when they retaliated against Zen and Otamendi for exercising their statutory and constitutional rights to challenge AHCA's overpayment demand in violation of the Fourteenth Amendment to the United States Constitution (Count I) and violated their First Amendment rights by retaliating against Zen and Otamendi for exercising their right to free speech and to petition the government for redress of grievances (Count II).

Thus, the district court had jurisdiction over this case pursuant to Section 1331 of Title 28 of the United States Code providing jurisdiction to hear cases arising under the laws and Constitution of the United States, and pursuant to

---

[1] "DE" refers to the district court Docket Entry for No. 1:20-cv-23218-DPG; the Docket Entry number follows the colon.

Section 1343(3) of Title 28 of the United States Code, to redress the deprivation under color of state law of any right, privilege or immunity secured by the Constitution, and pursuant to Section 1343(4) of Title 42 of the United States Code, to secure equitable or other relief for the protection of civil rights.

On September 28, 2021, the district court issued a non-final order, as relevant here dismissing, Counts I and II of Plaintiff-Appellants' Amended Complaint *without prejudice*, while retaining supplemental jurisdiction over the related state-law claim raised in Count V of the Amended Complaint. *See* DE:32 at 15.

On October 12, 2021, Defendant-Appellees filed a motion to dismiss the remaining count. *See* DE:34.

On December 29, 2021, the district court issued its final order, granting the motion, declining to continue exercising supplemental jurisdiction over the sole remaining state-law claim, dismissing that claim, and closing the case. *See* DE:45 at 1, 5. The district court's December 29, 2021 Order was a final order disposing of all claims of all parties.

On January 28, 2022, Plaintiff-Appellants, Zen and Otamendi, filed a timely Notice of Appeal. This Court has jurisdiction over this appeal of the final order of the United States District Court for the Southern District of Florida pursuant to Section 1291 of Title 28 of the United States Code.

## <u>STATEMENT OF THE ISSUES</u>

I.  Whether the district court erred in dismissing Plaintiffs-Appellants' Section 1983 claim grounded in the Fourteenth Amendment set out in Count I of the AC by: (1) failing to consider Zen's and Otamendi's allegation they had a constitutionally-protected property right in the money (over $276,000) AHCA sought to take from them by *fine*, and (2) failing to address controlling Due Process Clause law prohibiting government officials from retaliating against individuals for exercise of statutory or constitutional rights, and the unconstitutional conditions doctrine.

II. Whether the district court erred in dismissing Plaintiffs-Appellants' Section 1983 claim grounded in the First Amendment set out in Count II of the AC by: (1) erroneously extending the public concern test to the Petition Clause claim of a Medicaid contractor that petitioned for an administrative hearing to challenge an Agency overpayment in excess of $1.6 million (including a fine of over $276,000), and (2) erroneously concluding Zen and Otamendi did not speak and petition on a matter of public concern by failing to conduct the required fact-specific analysis.

3

## <u>STATEMENT OF THE CASE</u>

This case arises from the unlawful and unconstitutional conduct of Defendant-Appellee Bennett, who, in January 2020, acting in her capacity AHCA's MPI Chief, issued a debilitating and ultra-virus suspension of Medicaid payments to Zen and made an unfounded fraud referral against Zen to Florida law enforcement in retaliation for Zen exercising its right to an administrative hearing to challenge AHCA's 2019 FAR that demanded Zen pay the Agency more than $1.6 million (over $276,000 of which was a fine), and for criticizing AHCA in the process.

As alleged in Counts I and II of the AC, respectively, Defendants-Appellees' conduct violated (1) Zen's and Otamendi's Fourteenth Amendment due process rights, and (2) their First Amendment speech and petition rights.

The relevant background and facts are set out in the AC.

In February 2019, as part of its "effort to cover up its ineptitude in implementing and administering the Behavior Analysis services program, and attempt to restore its budget," DE:17 at 2 (¶2), AHCA issued to Zen a FAR (1) demanding Zen repay $1,367,839.74 in Medicaid payments for services provided from November 1, 2017 to September 30, 2018, and (2) seeking to impose on Zen a fine in the amount of $276,067.95. *Id.* at 36 (¶121); DE:17-1 at 1-4.

4

More specifically, the Agency FAR alleged Zen had been overpaid and was subject to fines because "28 Zen Group providers who were employed as Behavior Assistants – the lowest category within the field of Behavior Analysis ('BA') services – were not qualified" under the two-year experience requirement to provide reimburseable services to Medicaid recipients. *See* DE:17-2 at 1. AHCA's FAR did not allege Zen billed for services that were not rendered, or provided services that were unnecessary or unreasonable. *Id.* at 2-3.

Knowing it had always acted "lawfully and appropriately in providing important services to children requiring behavioral services,", and firmly believing AHCA's overpayment demand was "based on newly-created retroactively-applied provider qualifications imposing myriad requirements not included in the duly adopted Agency rules or the coverage policies incorporated therein," "Zen Group refused to capitulate." DE:17 at (¶¶2-3).

Instead, in March 2019, Zen exercised its rights guaranteed by the Fourteenth Amendment Due Process Clause, the First Amendment Petition Clause, and clear Florida statutory and constitutional law, and filed a Petition For Formal Hearing in the State of Florida Division of Administrative Hearings ("DOAH") to challenge AHCA's FAR allegations, repayment demand of over $1.3 million in Medicaid payments, and proposed fine of over $276,000. *See* DE:17 at 9-10 (¶¶26-27); *see id.* at 34-35 (¶117) (citing clear Florida law

affording Medicaid providers myriad due process protections before AHCA can recoup Medicaid payments or impose "penal in nature" fines, specifically Sections 120.569, 120.57, 120.68(1) of the Florida Statutes); *id.* at 36 (¶121) (citing *Dep't of Banking & Fin., Div. of Sec. & Inv'r Prot. v. Osborne Stern & Co.*, 670 So. 2d 932, 935 (Fla. 1996) (holding administrative fines are "penal in nature," and cannot be imposed unless Agency proves its allegations by the higher standard of clear and convincing evidence).

On October 15, 2019, during the course of administrative proceedings in DOAH, Zen served on AHCA a Motion for Sanctions, in which "Zen Group laid bare its scathing criticism of the Agency's Behavior Analysis service program implementation and administration, and the Agency's improper and unlawful attempts [to] claw-back money through non-rule policies created in an ad hoc, arbitrary and capricious manner." DE:17 at 10-11 (¶¶30-31).

Shortly after receiving Zen's sanctions motion, on October 30, 2019, the Agency agreed to settle its FAR allegations on terms extremely favorable to Zen, including: "(1) the Agency would be permitted to retain approximately $70,000 of the money AHCA had withheld from Zen Group (as Zen Group stated, 'only to avoid continued litigation costs') and AHCA would pay back to Zen Group over $665,000, (2) the money retained by the Agency would not be characterized as 'an overpayment,' and (3) the Agency would remove any fines or sanctions, as Zen

Group maintained it had at all times acted lawfully and had not engaged in any sanctionable conduct." *Id.* (¶125); *see id.* at 38 (¶¶126-127).

"**On January 9, 2020, the Agency paid to Zen Group** the amount due under the Settlement Agreement. *See* Two Checks from State of Florida to Zen Group totaling **$666,980.70**. *See* Exhibit D." *Id.* (¶129) (emphasis added).

"The day after the Agency paid Zen Group the nearly $667,000 it owed Zen Group under the settlement agreement – *the very next day* – AHCA's Kelly A. Bennett, who was at the center of the administrative proceedings on the Agency's overpayment demand, embarked on a course of conduct to retaliate against Zen Group and to put Zen Group out of business." *Id.* at 3 (¶5). Specifically, as alleged in the AC, Bennett – in the absence of a credible allegation of fraud, in violation of federal regulations, and based on nothing but pretext and retaliatory animus, and in bad faith – issued a fraud referral regarding Zen to the Medicaid Fraud Control Unit of the Florida Attorney General's Office ("MFCU") and indefinitely suspended Zen from receiving Medicaid payments (for all outstanding and future claims) purportedly pursuant to 42 C.F.R. § 455.23. *Id.* at 5-6 (¶12), 40 (¶140), 41 (¶142) 42 (¶148), 43 (¶150). MFCU almost immediately recognized the fraud referral was unfounded, and ultimately closed-out the case, but by then the accompanying illegal payment suspension had caused significant harm to Zen and Otamendi. *Id.* at 17-30

7

With regard to Count I, the AC alleges the payment suspension and unfounded fraud referral to MFCU were in "retaliation for Zen Group exercising its Fourteenth Amendment due process right to seek review before an impartial administrative law judge of AHCA's overpayment demand and attempt to impose 'penal in nature' administrative fines on Zen," *id.* at 38-39 (¶131), that such "retaliatory conduct would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights to due process," *id.* at 40 (¶138), that the retaliatory conduct was the proximate cause of significant damage to Zen, *id.* at 40-41 (¶¶140-143).

Similarly, with regard to Count II, the AC alleges, "Zen Group exercised its First Amendment right to petition the government for redress when it sought administrative review of AHCA's overpayment demand in the FAR," and that "Zen Group exercised its First Amendment right to free speech and to criticize the government when it served upon AHCA a motion for sanctions criticizing the Agency for its botched implementation of the Behavior Analysis Services program, and its attempt to impose arbitrary, capricious, and unfair post-hoc non-rule policies on Zen Group and other providers," a matter of public concern, *id.* at 42 (¶¶145-147), that "Defendant Bennett suspended Medicaid payments to Zen Group without a true and proper verified credible allegation of fraud because of, and in retaliation for, Zen Group exercising its First Amendment rights to free

speech and to criticize the government (namely Defendant Bennett and the Agency) and for Zen Group's exercise of its First Amendment right to petition the government for redress," *id.* 143 (¶151), that Defendants-Appellees' retaliatory conduct damaged Zen in myriad ways, and would likely deter a person of ordinary firmness from the exercise of First Amendment rights." *id.* at 43-44 (¶¶151-155).

Defendants-Appellees filed a motion to dismiss the AC, which, as relevant here, the district court granted as to Counts I and II. The district court dismissed Count I for failure to state a claim based on its conclusion that Zen and Otamendi had no constitutionally-protected property interest in the Medicaid payments AHCA sought to recoup in its FAR, thus Defendants-Appellees retaliating against Zen and Otamendi for exercising their due process rights to challenge the FAR was not actionable under Section 1983.

The district court dismissed Count II for failure to state a claim based on its conclusion that Zen was not speaking as a private citizen on a matter of public concern when it petitioned for administrative review in DOAH to challenge the Agency's FAR, thus such conduct was not protected by the First Amendment and Defendants-Appellees retaliating against Zen and Otamendi for exercising their petition rights to challenge the FAR was not actionable under Section 1983.

The appeal follows.

The district court's order dismissing Counts I and II for failure to state a claim is reviewed *de novo*.  *Echols v. Lawton*, 913 F.3d 1313, 1319 (11th Cir. 2019). All factual allegations in the AC must be accepted as true and construed in the light most favorable to Zen and Otamendi. *Id.* To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Id.*

## SUMMARY OF THE ARGUMENT

**I.    The District Court Erred In Dismissing Count I Of The AC**

Count I of the AC States a Section 1983 claim under the Fourteenth Amendment and the unconstitutional conditions doctrine, and the district court erred in dismissing it based on its erroneous conclusion that Zen and Otamendi had no constitutionally-protected property interest in the more than $1.3 million in Medicaid payments AHCA sought to recoup in its 2019 FAR.

First and most fundamentally the district court erred by ignoring the AC's clear allegations that, in addition to seeking repayment of more than $1.3 million in Medicaid payments, AHCA's 2019 FAR was attempting to impose "penal in nature" fines against Zen and Otamendi, and thereby deprive them of more than $276,000 of their own money, to which they had an incontrovertible constitutionally-protected property interest.

10

Because Zen and Otamendi had a constitutionally-protected property interest in their money the Agency sought to deprive them of by *fine*, they had clear due process rights — largely described by Florida statutes guaranteeing an administrative hearing – to contest the Agency's allegations, and the Fourteenth Amendment prohibited Defendants-Appellees from retaliating against Zen and Otamendi for exercising their due process rights.

Second, the district court erred by failing to address clear controlling law establishing that the Due Process Clause prohibits a state actor from retaliating against a party for exercising rights guaranteed by statute or the Constitution. *See United States v. Goodwin*, 457 U.S. 368, 372–74 (1982) ("To punish a person because he has done what the law plainly allows him to do is a due process violation of the most basic sort."); *id.* ("an individual . . . certainly may not be punished for exercising a protected statutory or constitutional right.").

The AC alleges in detail the statutes that guaranteed Zen's right to challenge the FAR's allegations and payment demands – both the $1.3 million-plus in alleged overpayments and the $276,000-plus in proposed fines – through administrative procedures culminating in a hearing in DOAH. *See* DE:17 at 35-37. Zen and Otamendi further alleged they exercised their statutory and constitutional rights to the administrative process, largely prevailed in that process, and then Defendant Bennett and others at AHCA retaliated against them for their exercise of

11

the statutorily- and constitutionally-guaranteed rights to challenge AHCA's FAR through the administrative process. *Id.* at 37-41.

Consequently, Zen and Otamendi alleged a Section 1983 claim based on Defendants-Appellees' violation of their Fourteenth Amendment right to be free from retaliation for exercising clear statutory and constitutional rights.

Third, the district court erred in dismissing Count I by failing to address controlling law demonstrating Defendants-Appellees' alleged conduct violated the clearly established unconstitutional conditions doctrine. "[T]he unconstitutional conditions doctrine . . . vindicates the Constitution's enumerated rights by preventing the government from coercing people into giving them up." *Koontz v. St. Johns River Water Mgmt. Dist.*, 570 U.S. 595, 604 (2013) (the Court has "said in a variety of contexts that the government may not deny a benefit to a person because he exercises a constitutional right.").

That is precisely what Zen and Otamendi alleged Defendants-Appellees did. The AC alleges Defendants-Appellees' retaliatory conduct of making an unfounded fraud referral to MFCU and suspending indefinitely Zen's Medicaid payments – conduct that would deter a similarly situated individual of ordinary firmness from exercising her due process rights – placed an unconstitutional condition on the exercise of Zen's and Otamendi's due process right to administrative review of AHCA's 2019 FAR. *See* DE:17 at 34-41 (¶¶116-43).

12

Because, "[t]he doctrine prevents the Government from using conditions to produce a result which it could not command directly," *Oil States Energy Servs., LLC v. Greene's Energy Grp., LLC*, 138 S. Ct. 1365, 1377 n.4 (2018), and because there can be no serious argument Defendants-Appellees could have prohibited Zen from availing itself of the statutorily- and constitutionally-guaranteed right to administrative review of AHCA's FAR, Count I successfully alleges Defendants-Appellees placed unconstitutional conditions Zen's and Otamendi's exercise of their Fourteenth Amendment rights.

## II.    The District Court Erred In Dismissing Count II Of The AC

In Count II of the AC alleges Defendants-Appellees violated Zen's and Otamendi's First Amendment rights to petition the government for redress and to free speech when Defendants-Appellees retaliated against them *because* Zen and Otamendi filed a Petition For Hearing seeking an administrative hearing to challenge AHCA's 2019 FAR and *because* Zen and Otamendi harshly criticized AHCA in a sanctions motion.

The district court dismissed Count II based on its erroneous conclusion that Zen was not speaking as a private citizen on a matter of public concern when it petitioned for administrative review to challenge the Agency's FAR, thus such conduct was not protected by the First Amendment.

First, the district court erred by extending the "public concern test" to this case, involving a Medicaid contractor's Petition Clause claim. While the Court has applied the balancing test announced in *Pickering v. Bd. of Ed. of Twnp. High Sch. Dist.*, 391 U.S. 563 (1968), and the "public concern test" to a Section 1983 claim brought by a *public employee* grounded in the Petition Clause, *see Duryea, Pa. v. Guarnieri*, 564 U.S. 379, 383 (2011), and extended the "public concern test" to a *Speech Clause* case brought by an independent contractor, *Bd. of Cty. Comm'rs, Wabaunsee Cty., Kan. v. Umbehr*, 518 U.S. 668, 685 (1996), the public concern test has never been extended to *government contractors* raising First Amendment *Petition Clause* claims; and the Court has indicated it would be inappropriate to do so, *see Guarnieri*, 564 U.S. at 394 ("***Outside the public employment context, constitutional protection for petitions does not necessarily turn on whether those petitions relate to a matter of public concern***.") (emphasis added).

The district court erred in extending the public concern test to this case, where Zen, a Medicaid contractor, and its owner Otamendi, alleged Defendants-Appellees retaliated against them for exercising their First Amendment Petition Clause right to challenge AHCA's FAR.  In the absence of the erroneously applied public concern test, there can be no question Count II states a Section 1983 claim under the Petition Clause.

Second, even were the public concern test to be extended to the circumstances of this case, the district court erred in applying it by failing to engage the required fact-specific examination of "the content, form, and context" of Zen's and Otamendi's alleged First Amendment speech and petition activity. *See Connick v. Myers*, 461 U.S. 138, 147-48 (1983).

Applying the proper standard, Plaintiffs-Appellants' alleged First Amendment activity demonstrates they were petitioning and speaking as citizens on a matter of public concern. Zen's Petition For Hearing sought an administrative hearing in DOAH, a public forum, and alleged the Agency FAR was based on a larger effort to enforce a non-rule policy on Medicaid providers of Behavior Analysis ("BA") services, in violation of Florida law. Zen's petition and its associated sanctions motion sought to invalidate the Agency's non-rule policy in a way that would have applied generally to all other BA services providers, thus implicated hundreds of millions dollars in state Medicaid expenditures, a matter of public concern that garnered media coverage. Finally, Zen's sanction motion, served on AHCA during administrative proceedings, beyond addressing Zen providers, laid bare the disarray in AHCA's BA program and roundly criticized AHCA's administration and employees generally.

As such, Zen's 2019 petition and speech activity was protected by the First Amendment, Defendants-Appellees violated Zen's and Otamendi's First

Amendment rights by retaliating against them, Count II stated a claim for relief under Section 1983, and the district court erred in dismissing it.

## ARGUMENT AND CITATIONS OF AUTHORITY

### I. Count I of The AC States A Section 1983 Claim Under The Fourteenth Amendment, And The District Court Erred In Dismissing Count I

The district court erred in concluding Zen and Otamendi failed to state a claim in Count I of the AC.

Most basically Count I alleges AHCA MPI Chief Kelly Bennett and other defendants violated Section 1983 by depriving Zen and Otamendi of their Fourteenth Amendment rights when, in January 2020, Bennett issued against Zen an unfounded and illegal suspension of Medicaid payments and baseless fraud referral in retaliation for Zen's 2019 exercise of it clearly established due process rights to an administrative hearing to challenge a AHCA's overpayment demand that included an effort to recoup over $1.3 million in Medicaid payments and to impose a fine of over $276,000.

More specifically, the AC alleges:

• In February 2019, AHCA issued an FAR against Zen (1) demanding Zen repay $1,368,334.74 in Medicaid payments Zen had received for services provided, and (2) seeking to impose a fine on Zen in the amount of $276,067.95. DE:17 at 36 (¶121); *see also* DE:17-1 at 1-4.  The FAR describes itself as "a probable cause determination by the Agency." *Id.* at 4.

16

• Clear Florida law describe the process due before AHCA can recoup moneys previously paid to a Medicaid provider and impose fines a Medicaid provider. Specifically, Sections 120.569, 120.57 120.68(1) of the Florida Statutes provide myriad due process protections, including, *inter alia*, the right to a hearing before an impartial administrative law judge at which the agency bears the burden of proof, and the right to judicial review of the agency's final order. *See* DE:17 at 34-35. Further, because AHCA's 2019 FAR sought to impose upon Zen a fine, defined by the Florida Supreme Court as "penal in nature," AHCA was required to prove its allegations in an administrative hearing by a higher standard of proof, affording Zen greater due process protections. *See* DE:17 at 36 (¶121) (citing *Osborne*, 670 So.2d at 935). *See also* DE:17 at 36-37 (¶¶122-123).

• Zen and its owner Otamendi invoked their statutory and constitutional due process rights to an administrative hearing to challenge AHCA's allegations and its attempt to recoup Medicaid reimbursements and to impose a fine on Zen. *See id.* at 37(¶¶123-124).  Administrative proceedings ended in settlement on extremely favorable terms to Zen, including: "(1) the Agency would be permitted to retain approximately $70,000 of the money AHCA had withheld from Zen Group (as Zen Group stated, 'only to avoid continued litigation costs') and AHCA would pay back to Zen Group over $665,000, (2) the money retained by the Agency would not be characterized as 'an overpayment,' and (3) the Agency

would remove any fines or sanctions, as Zen Group maintained it had at all times acted lawfully and had not engaged in any sanctionable conduct." *Id.* (¶125); *id.* at 38 (¶¶126-127).

• The **very day after** AHCA paid to Zen Group $666,980.70 pursuant to the settlement agreement, Bennett and AHCA "**suspended Medicaid payments to Zen Group** purportedly 'pursuant to 42 C.F.R. §455.23.'" DE:17 at 38 (¶¶129-130) (emphasis added).

• The payment suspension and unfounded fraud referral to MFCU were in "retaliation for Zen Group exercising its Fourteenth Amendment due process right to seek review before an impartial administrative law judge of AHCA's overpayment demand and attempt to impose 'penal in nature' administrative fines on Zen Group," *id.* at 38-39 (¶131), and such "retaliatory conduct would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights to due process," *id.* at 40 (¶138), and was the proximate cause of significant damage to Zen, *id.* at 40-41 (¶¶140-143).

Instead of addressing the allegations in the AC and the specific theories of constitutional injury alleged by Zen and Otamendi, the district court misconstrued some of Plaintiffs-Appellants' allegations, ignored others, and focused its analysis on an claim not raised by Count I.

En route to dismissing Count I, the district court began by stating: "In Count I, Plaintiffs allege that Defendants sought to deprive them of their liberty and property in violation of the Fourteenth Amendment *when the Agency imposed the Demand* [defined at DE:32 at 2, as the $1,644,402.69 payment demand – comprising alleged Medicaid payments <u>and</u> fines – as set out in the Agency's February 14, 2019 FAR]." DE:32 at 9 (emphasis added).  This is a misstatement of Count I's allegations, the constitutional injury alleged there, and Plaintiffs-Appellants' argument in response to the motion to dismiss. Zen and Otamendi have never questioned AHCA's right to seek recoupment of Medicaid payments in 2019, through the administrative process established by Florida state law.  Instead, the AC alleges that once AHCA issued the FAR (1) demanding repayment of Medicaid payments and (2) attempting to impose fines on Zen for alleged fraud, the U.S. Constitution and Florida state laws provided to Zen and its owner Otamendi a full panoply of due process rights. *See* DE:17 at 34-37 (¶¶117-123); *id.* at 8-14.  As the allegations in the AC explain, Zen was provided the process it was due to challenge the allegations made by the Agency in its FAR. It was not until *after that process was complete*, Zen was vindicated, and the Agency was forced to repay almost $700,000 in previously withheld funds, that Bennett and others at AHCA violated Zen's and Otamendi's constitutional rights to due process guaranteed by the Fourteenth Amendment. *See id.* at 38-41, 2-3, 14-15.

19

Because the district court misread or misconstrued Plaintiffs' allegations and theories of Section 1983 liability – and because the district court ignored the crucial allegations that the Agency's efforts to impose quasi-penal fines on Zen implicated its constitutional liberty and property interests – the district court devoted the entirety of its scant two-page discussion of Count I to a peripheral issue, failed to engage the central issue presented here, and erroneously dismissed Count I.

Specifically, because the district court misunderstood Count I to "allege that Defendants sought to deprive [Zen and Otamendi] of their liberty and property in violation of the Fourteenth Amendment *when the Agency imposed the Demand*," DE:32 at 9 (emphasis added), the district court focused its analysis on whether the AC alleged "a deprivation of a constitutionally protected property interest," *id.*, and erroneously dismissed Count I by concluding, "[t]his Court is unaware of binding Eleventh Circuit precedent on the issue of whether a healthcare provider has a constitutionally[] protected property interest in [Medicaid] payments that may be subject to recoupment action," *id.* at 10 (quotation marks omitted; brackets in original).

The district court erred in two fundamental ways.  First, accepting *arguendo* the district court's characterization of the elements to state a claim in Count I, the district court erred by ignoring the AC's clear allegations that AHCA, through its

2019 FAR, was attempting to impose "penal in nature" fines on Zen and Otamendi, and thereby deprive them of their own money, to which they had an incontrovertible "constitutionally[] protected property interest." Second, the district court erred by failing to address Zen's and Otamendi's theories of Section 1983 liability under the Fourteenth Amendment, specifically the clear allegation that Defendants-Appellees took adverse action against Zen and Otamendi in retaliation for exercising their clear statutory and constitutional rights, and that Defendants-Appellees imposed upon Zen and Otamendi an unconstitutional condition on the exercise of their statutory and constitutional rights.

A.     **Zen and Otamendi Had A Clear, Incontrovertible Constitutionally-Protected Interest In The Property AHCA Sought To Deprive Them Of By Way Of A *Fine* In AHCA's 2019 FAR, Thus Even Accepting The District Court's Flawed Legal Framework, The District Court Erred In Dismissing Count I**

As discussed, the AC alleges unambiguously that in February 2019 AHCA sought to recoup over $1.3 million in Medicaid payments made to Zen (for services provided in 2017 and 2018) *and* sought to fine Zen more than $276,000; Zen and Otamendi exercised their statutory and constitutional right to an administrative hearing in DOAH to challenge AHCA's FAR; Zen largely prevailed in the administrative process; then, in 2020 Bennett and other Defendants retaliated against Zen and Otamendi for exercising their clear Fourteenth Amendment rights to an administrative hearing by issuing an unfounded and unlawful fraud referral

21

and suspending indefinitely Zen's *future* Medicaid payments; and, such retaliatory

conduct damaged Zen and Otamendi and would have deterred a similarly situated

individual of ordinary firmness from exercising his or her constitutional rights to

due process, DE:17 at 40 (¶138).

The district court's most basic error inheres in its complete failure to

address Zen's and Otamendi's contention that they had a clearly established

liberty and property right to be free from the FAR's "penal in nature" fine of

more than $276,000 without due process of law. *Assuming arguendo* the $1.3

million in Medicaid payments to Zen were contingent payments in which Zen

Group had no property interest, as the district court concluded,[2] the allegations in

---

[2] In fact, the district court erred in concluding Zen lacked a property interest in the Medicaid payments AHCA sought to recoup through it 2019 FAR to the extent such payments were proper. *See Ron Grp., LLC v. Azar*, No. 2:20-CV-1038-ECM, 2021 WL 5576616, at *3–5 (M.D. Ala. Nov. 29, 2021) (applying controlling Eleventh Circuit and Supreme Court law and concluding a Medicaid provider "has a protected property interest in receiving full reimbursements for clean claims for services rendered to Medicaid patients"). As discussed there, "[P]roperty interests subject to procedural due process protection are not limited by a few rigid, technical forms. Rather, property denotes a broad range of interests that are secured by existing rules or understandings." *Barnes v. Zaccari*, 669 F.3d 1295, 1303 (11th Cir. 2012) (alteration in original) (quoting *Perry v. Sindermann*, 408 U.S. 593, 601 (1972)). Thus, a party may have a protected property interest in a government benefit when the party has "a legitimate claim of entitlement to it" based on "an independent source such as state law." *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972). Here, Florida laws and regulations require the AHCA to pay valid claims for Medicaid services. Under the Non-Institutional Medicaid Provider Agreement AHCA entered into with Zen, one of the Agency's only responsibilities is "to make timely payment at the established rate for services

the AC (and controlling law) leave no question that the *fine* the Agency attempted to impose on Zen and Otamendi was separate and apart from any Medicaid moneys paid to them. *See* § 409.913(1)(e), Fla. Stat. (2019) ("'Overpayment' includes any amount that is not authorized to be paid by the Medicaid program whether paid as a result of inaccurate or improper cost reporting, improper claiming, unacceptable practices, fraud, abuse, or mistake."); F.A.C. § 59G-9.070(2)(f) ("'Fine' is a monetary sanction."); F.A.C. § 59G-9.070(7) ("Sanctions. *In addition to the recoupment of the overpayment*, if any, the Agency will impose sanctions as outlined in this subsection.") (emphasis added); § 409.913(12), Fla. Stat. (2019) (treating distinctly "repayment of any overpayment" and "impos[ition] an administrative sanction," defined elsewhere as a "fine").

Moreover, that more-than-a-quarter-million-dollar *fine* the Agency attempted to impose through the 2019 FAR was to be paid by nothing other than Zen's and Otamendi's cash money, to which no one can question they had a constitutionally-protected property interest.

Were it not self-evident that the Agency's attempt to impose fines squarely implicated Zen's and Otamendi's fundamental property rights, the Florida Supreme Court has stated unequivocally:

---

or goods furnished to a recipient by the provider upon receipt of a properly completed claim form." § 409.907(5)(a), Fla. Stat. (2019).

an administrative fine deprives the person fined of substantial rights in property. Administrative fines, like the ones imposed upon respondents in this case, are generally punitive in nature . . . [T]he imposition of administrative fines . . . are penal in nature and implicate significant property rights . . .

*Osborne*, 670 So. 2d at 935 (addressing a $20,000 fine).

Consequently, Zen and Otamendi had a clear and incontrovertible Fourteenth Amendment due process right to the procedures guaranteed by Florida statutes and law before they could be deprived of such moneys by Agency fine.  The district court – far from taking as true all allegations in the AC and drawing all reasonable inferences in favor of Plaintiffs-Appellants – simply ignored Zen's and Otamendi's allegations regarding the significant fines the Agency attempted to impose and focused exclusively on the recoupment of Medicaid payments.

Considering and accepting all the AC's allegations, Zen and Otamendi alleged Defendant Bennett and others retaliated against them for exercising their clear Fourteenth Amendment due process right to an administrative hearing prior to being deprived of their property ($276,067.95). Thus, even if this Court were to conclude the district court framed the Count I elements correctly, and Zen and Otamendi were required to allege a they had a constitutionally-protected interest in the property AHCA sought to deprive them of through the 2019 FAR, the district court erred in dismissing Count I.  Irrespective of this Court's view of Zen's

24

property interest in the $1.3 million in Medicaid payments to Zen AHCA sought to

recoup, there is no doubt Plaintiffs-Appellants had a constitutionally-protected

property interest in the more than $276,000 AHCA sought to take from them by

way of a *fine*.

Consequently, accepting the district court framework, Count I stated a

claim under Section 1983, was dismissed in error, and must be reinstated by this

Court.

> **B.** **The District Court Failed To Address The Constitutional Theories Of Section 1983 Liability Alleged In The AC, Under Which Zen And Otamendi Stated A Claim In Count I**

The district court's second fundamental error inheres in its failure to address

the constitutional theories of Section 1983 liability alleged in the AC.  As

articulated there, and in Zen' and Otamendi's opposition to Defendants-Appellees'

motion to dismiss, Count I sets out a Section 1983 claim under the clearly

established Fourteenth Amendment procedural due process retaliation law and the

unconstitutional conditions doctrine.

> **1.** **Zen And Otamendi Stated A Section 1983 Claim In Count I By Alleging Defendants-Appellees Unlawfully Retaliated Against Them For Exercise Of Their Fourteenth Amendment Procedural Due Process Rights To Challenge AHCA's 2019 FAR**

While the district court acknowledged Zen and Otamendi "also allege that

Bennett retaliated against Plaintiffs when they exercised their constitutional right

25

to challenge the Demand in an administrative hearing," DE:32 at 9, that court failed to consider or address the relevant law.

In their motion to dismiss, Defendants-Appellees' argued that a Section 1983 claim under the Fourteenth Amendment may not be predicated on "retaliation" for the exercise of procedural due process rights. *See* DE:20 at 10. Defendants based this argument entirely on dicta in a 1995 Eleventh Circuit case. *See id.* (citing *Ratliff v. DeKalb Cnty.*, 62 F.3d 338 (11th Cir. 1995)).  As Defendants-Appellees clearly understood, *Ratliff* involved, not the Due Process Clause of the Fourteenth Amendment, but the Equal Protection Clause, and in stating "no established right exists under the equal protection clause to be free from retaliation," in *Ratliff*, this Court ventured no commentary regarding the right under the Due Process Clause to be free from retaliation.

That right was clearly recognized and established by the Supreme Court no later than 1982, and has been consistently respected in the federal courts since. The Court could not have articulated more clearly the due process right to be free from retaliation for the exercise of statutory or constitutional rights: "To punish a person because he has done what the law plainly allows him to do is a due process violation 'of the most basic sort.' *Bordenkircher v. Hayes*, 434 U.S. 357, 363 . . . (1978)." *United States v. Goodwin*, 457 U.S. 368, 372–74 (1982) (explaining "In a series of cases beginning with *North Carolina v. Pearce*, 395 U.S. 711 (1969) and

culminating in *Bordenkircher v. Hayes*, the Court has recognized this basic—and itself uncontroversial—principle.").

As the *Goodwin* Court concluded: "For while an individual certainly may be penalized for violating the law, he just as certainly may not be punished for exercising a protected statutory or constitutional right." 457 U.S. at 373; *see also Bordenkircher*, 434 U.S. at 363 ("for an agent of the State to pursue a course of action whose objective is to penalize a person's reliance on his legal rights is patently unconstitutional") (internal quotation marks omitted).

As this Court reaffirmed last year, citing the Court's 1978 *Bordenkircher* opinion: "The government violates a defendant's due process rights when it vindictively seeks to retaliate against him for exercising his legal rights." *United States v. Schneider*, 853 F. App'x 463, 469 (11th Cir. 2021); *see also United States v. Toombs*, 748 F. App'x 921, 929 (11th Cir. 2018) (same).

Consequently, clear, controlling, longstanding Supreme Court and Eleventh Circuit law establishes that it is "patently unconstitutional" and a clear violation of the *Due Process Clause* of the Fourteenth Amendment "of the most basic sort" when a state official takes adverse action against an individual in retaliation for his or her exercise of a right guaranteed by statute or the constitution.

Thus, stated correctly, to state a Section 1983 claim based on retaliation under the Fourteenth Amendment due process clause, a plaintiff must allege (1) the

27

plaintiff exercised a right guaranteed by statute or the Constitution, (2) the

defendant state official took adverse action against the plaintiff (3) in retaliation for

exercise of the right guaranteed by statute or Constitution.

Here, Zen Group and Otamendi clearly alleged the essential elements of a

Section 1983 claim in Count I of the Amended Complaint.

> a. *Zen and Otamendi alleged they engaged in conduct that is protected by the Constitution or by statute*

Plaintiffs-Appellants alleged that on February 14, 2019, AHCA issued FAR

demanding "Zen Group pay to the Agency $1,644,402.69 – $276,067.95 of which

was for administrative fines . . . defined by the Florida Supreme Court as 'penal in

nature,' and thus subject to a higher standard of proof and greater due process

protections." DE:17 at 36 (¶121) (citing *Osborne*, 670 So. 2d at 935 (requiring

agencies to prove allegations in support of administrative fines by clear and

convincing evidence)).

The FAR itself makes clear it is in the nature of a charging document, like

an indictment or an administrative complaint. *See* DE:17-1. "As such," Plaintiffs-

Appellants alleged, "the FAR provided the legally-required notice . . . that Zen

Group had a due process right to contest the Agency's proposed deprivation of

property and liberty via an administrative hearing in the Florida Department of

Administrative Hearings." DE:17 at 36-37 (¶122); DE:17-1 at 5.

28

As alleged in the AC, Zen and its owner Otamendi had clear statutory and constitutional rights to avail themselves of a disputed-fact hearing in DOAH before an impartial administrative law judge. This statutory right to a hearing applied to *both* AHCA's efforts to recoup Medicaid payments *and* AHCA's effort to impose a fine on Zen.  *See Perry v. Sindermann*, 408 U.S. 593, 601 (1972) ("A person's interest in a benefit is a 'property' interest for due process purposes if there are such rules or mutually explicit understandings that support his claim of entitlement to the benefit and that he may invoke at a hearing.").

Plaintiffs-Appellants further alleged they availed themselves of the statutory and constitutional right to put AHCA to its burden of proof and to contest AHCA's allegations before an impartial tribunal in DOAH. *See* DE:17 at 37 (¶123) ("Zen Group vehemently opposed the Agency's assertions, . . . and . . . exercised its constitutionally-protected right to due process by filing a Petition For Formal Hearing seeking administrative review pursuant to Sections 120.569 and 120.57 of the Florida Statutes").

> b. *Zen and Otamendi alleged Bennett and other Defendants took adverse action against them because they engaged in the protected conduct*

Zen and Otamendi alleged Bennett and other defendants took adverse action against them in retaliation for their exercise of the statutorily- and constitutionally-created rights to challenge AHCA's FAR allegations. Specifically, Plaintiffs-

Appellants alleged the administrative case settled on favorable terms for Zen, *see* DE:17 at 37 (¶125), and that the next day after the Agency paid to Zen the $666,980.70 the Agency was required to pay under the settlement agreement, *id.* at 38 (¶¶128-129), Defendant Bennett, in the name of Defendants Secretary and AHCA, ***suspended Medicaid payments to Zen Group*** purportedly "pursuant to 42 C.F.R. §455.23," *id.* (¶130) (emphasis added).

Zen and Otamendi alleged that "Defendant Bennett issued her payment suspension and made her related unfounded fraud referral to MFCU regarding Zen Group in retaliation for Zen Group exercising its Fourteenth Amendment due process right to seek review in DOAH of AHCA's overpayment demand and attempt to impose significant 'penal in nature' administrative fines on Zen Group." *Id.* at 38-39 (¶131); *see also id.* at 132-137. Zen and Otamendi alleged further that Bennett's retaliatory conduct "caused an adverse effect on Zen Group," *id.* at 40 (¶140), damaged Zen in myriad ways, *id.* at 41 (¶142), and that "Defendant Bennett's retaliatory conduct would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights to due process." *Id.* at 40 (¶ 138).

In sum, Zen and Otamendi alleged all necessary facts to state a Section 1983 based on Defendants-Appellees' adverse conduct taken in retaliation for Zen's and Otamendi's exercise of their clearly established right to challenge AHCA's 2019 FAR in violation of the Due Process Clause.

**2.    Zen And Otamendi Stated A Section 1983 Claim In Count I By Alleging Defendants-Appellees Violated The Unconstitutional Conditions Doctrine Regarding The Exercise Of Their Fourteenth Amendment Due Process Rights**

Relatedly, Zen and Otamendi stated a Section 1983 claim under the Due Process Clause because the AC alleged Defendants-Appellees engaged in conduct that violated the clearly established unconstitutional conditions doctrine.

The "overarching principle, known as the unconstitutional conditions doctrine, . . . vindicates the Constitution's enumerated rights by preventing the government from coercing people into giving them up." *Koontz v. St. Johns River Water Mgmt. Dist.*, 570 U.S. 595, 604 (2013).  Under the unconstitutional conditions doctrine, the Supreme Court has "said in a variety of contexts that the government may not deny a benefit to a person because he exercises a constitutional right." *Id.* (internal quotation marks omitted).

Here, that is precisely what Zen and Otamendi have alleged Defendants-Appellees did.  The AC alleges Defendants-Appellees' after-the-fact retaliatory conduct – as conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights to due process – placed an unconstitutional condition on the exercise of Zen's and Otamendi's due process right to administrative review of AHCA's overpayment demand. *See* DE:17 at 34-

31

41 (¶¶116-43). As the AC summed it up at paragraph 135, Defendants' after-the-

fact retaliatory conduct is:

> constitutionally indistinguishable from if Bennett had presented Zen
> with the unconstitutional condition of giving up its due process rights
> to an administrative hearing to contest any over-payment demand or
> administrative fine imposed by AHCA (here over $1.6 million) in
> exchange for Bennett not making an unsupported and false fraud
> referral to MFCU and/or in exchange for Bennett not issuing an
> improper suspension of Zen's Medicaid payments.

*Id.* at 39.

Contrary to Defendants-Appellees' suggestion below, the unconstitutional

conditions doctrine is not limited to the First Amendment context. As noted, that

doctrine "vindicates the Constitution's enumerated rights by preventing the

government from coercing people into giving them up," and has been applied

broadly. *See Koontz*, 570 U.S. at 604 (noting doctrine applies in "a variety of

contexts," applying the doctrine in the context of the Fifth Amendment's Takings

Clause, and discussing *Memorial Hospital v. Maricopa County,* 415 U.S. 250

(1974), in which the Court applied the unconstitutional conditions to protect the

right to travel); *Lebron v. Sec'y, Fla. Dep't of Child. & Fams.*, 710 F.3d 1202, 1218

(11th Cir. 2013) (applying unconstitutional conditions doctrine in the Fourth

Amendment context and quoting *Bourgeois v. Peters,* 387 F.3d 1303, 1324, 1325

(11th Cir.2004), as follows: "Our circuit has roundly condemned the use of

unconstitutional conditions  . . . [T]he very purpose of the unconstitutional

conditions doctrine is to prevent the government from subtly pressuring citizens, whether purposely or inadvertently, into surrendering their rights."); *see also Planned Parenthood v. Philip*, 194 F. Supp. 3d 1213, 1219 (N.D. Fla. 2016) (noting Supreme "Court described the doctrine in language that leaves no room for any assertion that the doctrine is limited to the First Amendment").

"The doctrine prevents the Government from using conditions to produce a result which it could not command directly." *Oil States Energy Servs., LLC v. Greene's Energy Grp., LLC*, 138 S. Ct. 1365, 1377 n.4 (2018); *see also Perry v. Sindermann,* 408 U.S. 593, 597 (1972) (noting that officials cannot exact a waiver of rights as an end-round "to produce a result which it could not command directly.") (internal quotation marks omitted).

Here, there can be no serious argument Bennett could have prohibited Zen from availing itself of administrative review of AHCA's FAR, the Agency's charging document, which included AHCA's attempt to recoup over $1.3 million in Medicaid payments and to impose over $276,000 in fines. Such due process rights to administrative review of Agency overpayment demands are enshrined in Florida law and required by the Florida and federal constitutions.  *See* §§ 120.569, 120.57, Fla. Stat. (2019); *Zinermon v. Burch*, 494 U.S. 113, 132 (1990) (State required to "provide predeprivation hearing before taking property" if feasible); *Barr v. Johnson*, 777 F. App'x 298, 301 (11th Cir. 2019) (same); *see also* DE:17 at

34-41(¶¶116-43); *Fetner v. City of Roanoke*, 813 F.2d 1183, 1186 (11th Cir. 1987)

("Where . . . a deprivation of property is authorized by an established state

procedure and it is practicable for the State to provide pre-deprivation procedures,

due process has been consistently held to require pre-deprivation notice and a

hearing in order to reduce the possibility of a wrongful deprivation."); *Grayden v.

Rhodes*, 345 F.3d 1225, 1236 (11th Cir. 2003) ("there is no doubt in our minds that

the [aggrieved parties] are entitled to a meaningful hearing at some point in time to

contest the [agency] decision").[3]

---

[3] The *constitutional* due process right to administrative review of the allegations in
the 2019 FAR – upon which AHCA sought to recoup from Zen over $1.3 million
in Medicaid payments and impose a fine of more than $276,000 – is beyond doubt,
and is confirmed by consideration of the factors articulated in *Matthews v.
Eldridge*, 424 U.S. 319 (1976) (setting out balancing test).
    As to the first factor, Zen and Otamendi had a substantial private interest in
(1) the more than $1.3 million in Medicaid payments AHCA sought to recoup –
payments Zen Group and Otamendi maintained were valid and earned for
necessary services that were provided, (2) the more than $276,000 AHCA sought
to take by fine, and (3) avoiding the "stigma" of being sanctioned for "fraud or
abuse," as alleged in the FAR as the basis for the fine, *see* DE:17-1 at 5.
    As to the second factor, it is beyond dispute that depriving Zen and
Otamendi of the right to challenge the FAR's allegations – the unconstitutional
condition alleged – carries a serious risk of an erroneous deprivation that would be
greatly mitigated by following the administrative appeal rights provided under
Florida law. This case illustrates the risk concretely.  Here, AHCA's 2019 FAR
alleged Zen was overpaid $1,367,839.74, and that 28 behavior assistants employed
by Zen did not meet the eligibility criteria to provide (and be reimbursed for)
Medicaid services. *See* Dkt. No. 17-1 at 1-3; DE:17-2 at 2. After Zen denied the
allegations and demanded its rights to the administrative process guaranteed by
Sections 120.569 and 120.57 of the Florida Statutes, AHCA revised its accusations
and informed Zen in October 2019, on the eve of the scheduled hearing, that the
Agency "will proceed to hearing on just two rendering providers." *See* DE:17-3 at

The unconstitutional conditions doctrine thus prevented Bennett and other

Defendants from conditioning Zen's exercise of its clear due process rights on

losing a benefit or accepting a burden, even if Zen had no right to the benefit or

right to be free from the burden. *See Koontz*, 570 U.S. at 608 ("we have repeatedly

rejected the argument that if the government need not confer a benefit at all, it can

withhold the benefit because someone refuses to give up constitutional rights").

More specifically, the unconstitutional conditions doctrine forbid Defendants-

Appellees from coercing Zen into giving up its right to administrative review of

AHCA's overpayment demand in exchange for not issuing an unfounded fraud

referral and not suspending Zen's Medicaid payments – even if Zen had no due

---

3.  Ultimately, AHCA agreed to settle the case for approximately $70,000, a 95 percent reduction, and no fines.

     As to the third *Matthews* factor, while Florida and AHCA certainly have an interest in recouping improper Medicaid payments and sanctioning offending providers, there is no government interest whatever in recouping moneys paid for legitimate Medicaid claims or sanctioning innocent parties.  Further, while Florida and AHCA might have an interest in avoiding the "administrative burdens" of affording Medicaid providers a forum to challenge Agency allegations, and affording such providers the right to discovery, the right to call witnesses and cross-examine adverse witnesses, the "cost" of an administrative hearing is "hardly daunting," *Grayden*, 345 F.3d at 1236, and no legitimate government interest can be advanced for denying accused Medicaid providers any process to challenge Agency accusations, *see id.* ("[aggrieved parties] are entitled to a meaningful hearing at some point in time to contest the [agency] decision").

     In sum, consideration of the *Matthews* factors demonstrates Zen and Otamendi were entitled to a hearing process – along the lines detailed by the Florida State legislature in Sections 120.569 and 120.57 of the Florida Statutes – and denying them such process, either directly or by the imposition of unconstitutional conditions – violates the Fourteenth Amendment.

35

process right to be free from an unfounded and retaliatory fraud referral to MFCU, even if Zen had no due process right to challenge a fraud referral, and even if Zen had no due process property interest in its outstanding Medicaid payments in January 2020 or to be free from a payment suspension. *See Pullman Co. v. State of Kansas ex rel. Coleman*, 216 U.S. 56, 70 (1910) ("The controlling influence of the Constitution may not be destroyed by doing indirectly that which it prohibits from being done directly.").

Finally, clearly established controlling law establishes that Defendants-Appellees cannot avoid application of the unconstitutional conditions doctrine simply because the coercive force they applied on Zen and Otamendi is aptly called retaliation, because it occurred after Plaintiffs-Appellants' exercise of their due process rights by demanding an administrative hearing to contest AHCA's FAR allegations. *Koontz*, 570 U.S. at 607 ("Our unconstitutional conditions cases have long refused to attach significance to the distinction between conditions precedent and conditions subsequent."). Consequently, the fact that Defendant Bennett exercised her coercive force in 2020, *after* Zen Group exercised its due process right to administrative review in 2019 – and in retaliation for it – is of no constitutional moment here.

In sum, in Count I of the AC Zen and Otamendi stated a Section 1983 claim based on the unconstitutional conditions doctrine as it vindicates the guarantees of

the Due Process Clause of the Fourteenth Amendment, and the district court erred in dismissing this count.

### C.    Defendants-Appellants Are Not Entitled to Qualified Immunity On Count I of the AC

Because of its erroneous conclusion that Zen and Otamendi failed to state a claim in Count I, the district court did not address qualified immunity. We do so here to demonstrate that this doctrine provides no alternative basis upon which to uphold the district court's erroneous dismissal of Count I.

In the light of the clear, unequivocal, and longstanding controlling law discussed above, Defendants-Appellees are not entitled to qualified immunity on Count I.

In determining whether the law was clearly established, a court looks for "fair warning" to officials that the conduct violates a constitutional right. *Gaines v. Wardynski*, 871 F.3d 1203, 1208 (11th Cir. 2017) (citation omitted). There are three methods to determine fair warning:

> *First,* the plaintiffs may show that a materially similar case has already been decided. *Second,* the plaintiffs can point to a broader, clearly established principle that should control the novel facts of the situation. *Finally,* the conduct involved in the case may so obviously violate the constitution that prior case law is unnecessary. Under controlling law, the plaintiffs must carry their burden by looking to the law as interpreted at the time by the United States Supreme Court, the Eleventh Circuit, or the [relevant State Supreme Court].

*Id.* (internal quotations marks omitted) (emphasis and alteration in original).

37

Here, Zen and Otamendi have demonstrated that clearly established constitutional law prohibited the conduct Bennett and other Defendants are alleged to have engaged in by the second, if not the third, method.

First, with regard to Count I's allegations that Defendants-Appellees *retaliated* against Zen and Otamendi *because* they exercised their statutorily- and constitutionally- guaranteed rights to challenge AHCA's FAR through the administrative process, the Supreme Court's clear and broad pronouncements that "To punish a person because he has done what the law plainly allows him to do is a due process violation of the most basic sort," and that "an individual . . . certainly may not be punished for exercising a protected statutory or constitutional right" directly control the facts of this situation. Here, again, Zen and Otamendi have alleged Bennett and others engaged in precisely the forbidden conduct.

Beyond the Court's clear and broad pronouncement that the Due Process Clause of the Fourteenth Amendment prohibits taking adverse action against an individual for exercising a protected statutory or constitutional right – precisely what Zen and Otamendi have alleged here – the facts of *Goodwin*, and the line of cases leading to it, demonstrate that the Due Process Clause prohibits a state official from taking adverse action against an individual (there, charging the individual with more serious crimes or imposing a harsher sentence) in retaliation

38

for that individual exercising his statutory or constitutional rights (there, pleading not guilty and demanding a trial or appealing a conviction).

Here, again, Zen and Otamendi have alleged they had a clear legal right to challenge AHCA's overpayment demand (including the $276,000 fine) through the statutorily-established administrative process with all its attendant panoply of rights – like the rights of the defendants in *Goodwin* and *Bordenkircher* and *Pearce* to plead not guilty, to put the state to its proof, or to appeal a conviction – and Defendants-Appellees retaliated against them (here by imposing an unjustified and unlawful payment suspension and making an unfounded fraud referral to MFCU) for the exercise of their rights.

Just as "[i]t can hardly be doubted that it would be a flagrant violation [of the Due Process Clause] of the Fourteenth Amendment for a state trial court to follow an announced practice of imposing a heavier sentence upon every reconvicted defendant for the explicit purpose of punishing the defendant for his having succeeded in getting his original conviction set aside," *see Pearce*, 395 U.S., at 723-24, it can hardly be doubted it would be a blatant violation of the Due Process Clause for Bennett and AHCA to follow a practice of punishing Medicaid providers who successfully challenge an AHCA FAR by making unfounded fraud referrals and suspending indefinitely their Medicaid payments. *Cf. id.* at 725 ("Due process of law, then, requires that vindictiveness against a defendant for having

39

successfully attacked his first conviction must play no part in the sentence he receives after a new trial.").  In sum, the factual scenarios presented by the cases in which the Supreme Court reaffirmed this broad principle are analogous in many important respects to the present case, and establish conclusively that Defendants-Appellees had fair warning that their retaliatory conduct violated Zen's and Otamendi's constitutional rights.

Second, as discussed above, the unconstitutional conditions doctrine has been clear for at least half a century.  Further, the constitutional right upon which Defendants-Appellees placed an unconstitutional condition – i.e., the due process right to challenge AHCA's FAR allegations and imposition of a fine in excess of $276,000 and recoupment of Medicaid payments in excess of $1.3 million – is also clearly established, if not self-evident.  Consequently, Defendants-Appellees can find no sanctuary in qualified immunity.

### D.    Conclusion

The district court erred in dismissing Count I, and this Court should reverse, and reinstate Count I.

## II.    Count II of the AC States A Section 1983 Claim Under The First Amendment And The District Court Erred In Dismissing Count II

In Count II of the AC, Zen and Otamendi allege Defendants-Appellees violated their First Amendment rights to petition the government for redress and to free speech when Defendants-Appellees retaliated against them *because* Zen and

40

Otamendi filed a Petition For Hearing seeking an administrative hearing in DOAH challenging AHCA's 2019 FAR and *because* Zen and Otamendi harshly criticized AHCA in a sanctions motion served in the administrative case.

The district court correctly identified the elements of a First Amendment retaliation claim as articulated by this Court. *See* DE:32 at 11 (citing *DeMartini v. Town of Gulf Stream*, 942 F.3d 1277 (11th Cir. 2019)). In *DeMartini*, this Court held: "To state a § 1983 First Amendment retaliation claim, a plaintiff generally must show: (1) she engaged in constitutionally protected speech, such as her right to [criticize or] petition the government for redress; (2) the defendant's retaliatory conduct adversely affected that protected speech and right to petition; and (3) a causal connection exists between the defendant's retaliatory conduct and the adverse effect on the plaintiff's speech and right to petition." 942 F.3d at 1289.

As the district court noted, "Defendants [did] not contest the second or third elements," thus Defendants-Appellees' "only contention [below was] Plaintiffs' petition for administrative review of the Demand is not constitutionally protected speech under the First Amendment." DE:32 at 11-12.

Considering this lone issue, the district court granted Defendants-Appellees' motion to dismiss Count II on the ground that Zen did not speak as a private citizen on a matter of public concern when it petitioned for an administrative hearing to challenge AHCA's 2019 FAR. In dismissing Count II, the district court erred in

41

multiple ways, relying on facile labels and eschewing the Supreme Court's clear commands to conduct a "nuanced" and fact-specific analysis of the relevant issues.

First, the district court erred by (1) applying wholesale the *public employee* Free Speech Clause law to Zen, a Medicaid contractor, not a public employee, and (2) mechanically applying Free Speech Clause law to Zen's and Otamendi's Petition Clause claim.  Second, the district court erred in concluding Zen's speech and petition activity was not on a matter of public concern, failing to conduct the required fact-specific analysis of  "the content, form, and context" of the First Amendment activity.  *See Connick v. Myers*, 461 U.S. 138, 147-48 (1983).

## A.    The First Amendment Protects The Right To Petition and To Free Speech and the Right To Be Free From Retaliation For the Exercise Of Those Rights

"This Court and the Supreme Court have long held that state officials may not retaliate against private citizens because of the exercise of their First Amendment rights." *Bennett v. Hendrix*, 423 F.3d 1247, 1255 (11th Cir. 2005). Supreme Court "precedents confirm that the Petition Clause protects the right of individuals to appeal to courts *and other forums established by the government for resolution of legal disputes*." *Duryea, Pa. v. Guarnieri*, 564 U.S. 379, 387 (2011); *DeMartini*, 942 F.3d at 1288 (same).

Consequently, if Zen and Otamendi acted as *private citizens* in petitioning to challenge AHCA's FAR allegations through the administrative process and in

criticizing AHCA and its BA Services program, Defendants-Appellees' conduct in imposing an unfounded and unlawful payment suspension in retaliation would violate the First Amendment and be actionable under Section 1983. *See id*. The question thus becomes how does Zen's status as a contractual Medicaid provider alter these First Amendment rights.

The law regarding the constitutional right to be free from retaliation for the exercise of First Amendment rights in the context of government *employees*, and the limitations on that right, has been well developed in *Pickering* and its progeny. *Pickering* announced a straightforward, if not always easily applied, test for public employee Free Speech cases that requires balancing the "interests of the [public employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." 391 U.S. 563 at 568.

As relevant here, while the Court has applied the Speech Clause "public concern test" to a Section 1983 claim brought by a *public employee* grounded in the Petition Clause, *see Guarnieri*, 564 U.S. at 383, and extended the "public concern test" to a *Speech Clause* case brought by an independent contractor, *see Umbehr*, 518 U.S. at 685 (trash hauling contractor claimed county commissioners violated rights under the Free Speech Clause in retaliation for his public criticism),

the public concern test has never been extended to *government contractors* raising First Amendment *Petition Clause* claims.

Despite identifying no case applying the "public concern test" to a retaliation claim grounded in the Petition Clause brought by an independent contractor, as opposed to a public employee, the district court uncritically conflated the petition and speech analysis to support this novel rule, and mechanically applied the extensions of the public concern doctrine recognized in *Guarnieri* and *Umbehr* without regard to the particular circumstances presented here. The district court analysis erroneously proceeds as if *Umbehr* rounded independent contractor cases up to public employee cases, and *Guarnieri* rounded Petition Clause cases into Speech Clause cases and the court just had to add up the result. But a number rounded up to two plus a number rounded up to two does not necessarily equal four (1.5 + 1.5 ≠ 4).

### B. The District Court Erred By Extending The *Pickering* Balancing And Public Concern Test To The Petition Clause Claim Raised By Zen, A Medicaid Contractor That Petitioned To Challenge An AHCA Overpayment Demand

The district court, improperly relying on facile labels, erred by extending *Pickering* balancing and the public concern test to the circumstances presented here. *See Guarnieri*, 564 U.S. at 388-89 ("Courts should not presume there is always an essential equivalence in the two Clauses or that Speech Clause precedents necessarily and in every case resolve Petition Clause claims. . . There

44

may arise cases where the special concerns of the Petition Clause would provide a sound basis for a distinct analysis; and if that is so, the rules and principles that define the two rights might differ in emphasis and formulation."); *Umbehr*, 518 U.S. at 678 (courts must take a "nuanced approach" in applying *Pickering* balancing test, "which recognizes the variety of interests that may arise in independent contractor cases").

The very case that extended the public concern test to Petition Clause cases brought by public employees acknowledged the private nature of the Petition Clause and stated specifically that the holding was limited to the public employment context: "**Outside the public employment context, constitutional protection for petitions does not necessarily turn on whether those petitions relate to a matter of public concern**." *Guarnieri*, 564 U.S. at 394 (emphasis added); *id.* ("The Petition Clause undoubtedly does have force and application in the context of a personal grievance addressed to the government. . . Although some claims will be of interest only to the individual making the appeal, for that individual the need for a legal remedy may be a vital imperative.").

Moreover, the very case that extended the *Pickering* balancing test to independent contractor Free Speech Clause cases recognized the different interests the government has when acting as an employer versus when acting as a contractor, as well as core differences between independent contractors and

45

government employees. *See Umbehr*, 518 U.S. at 673, 676, 680 ("*Pickering*

balancing test" must be "adjusted to weigh the governments interests as contractor

rather than as employer"; "independent contractors . . . work at a greater remove

from government officials than do most government employees"); *see also id.* at

677 ("*Pickering* requires a fact-sensitive and deferential weighing of the

government's legitimate interests.").

Here, none of the recognized government interests in controlling public

employee speech and petition activity to "promot[e] the efficiency of the public

services it performs through its employees" – one of the two *Pickering* balancing

factors – applies to Plaintiffs-Appellants' Petition Clause claim.

First, as Medicaid providers, Zen and Otamendi do not speak for the

government, and often find themselves in harmless disputes with the government

over the appropriateness of payment. Unlike the public employee Free Speech

context that led to the complicated public-private-speaker analysis and public

concern test, in the Medicaid contractor Petition Clause context, no reasonable

outside observer could believe the Medicaid provider was speaking for the state

and no reasonable outside observer could confuse the Medicaid provider's speech

for that of the state. *See Umbehr*, 518 U.S. at 677.  Consequently, AHCA and

Florida have no legitimate concern that a Medicaid contractor challenging an FAR

will "express views that contravene governmental policies or impair the proper

performance of governmental functions." *See Garcetti v. Ceballos*, 547 U.S. 410, 419 (2006).

Further, unlike public employees engaging in speech, AHCA has no interest in "maintaining harmonious working environments and relationships recognized in our government employee cases," *Umbehr*, 518 U.S. at 677, with regard to Medicaid contractors. The relationship between Medicaid providers such as Zen and AHCA "are not the kind of close working relationships for which it can persuasively be claimed that personal loyalty and confidence are necessary to their proper functioning." *Pickering*, 391 U.S. at 570.

Even beyond the general conclusions that independent contractors work at greater remove from the government, *see Umbehr*, 518 U.S. at 673, 676, 680, and that "the government's interests are typically . . . somewhat less strong in the independent contractor case," *id.* at 684, Medicaid providers work at the greatest remove and Medicaid providers' exercise of their petition right to challenge an overpayment demand implicates no legitimate government interests. A Medicaid provider stands in a highly distinct position from a government contractor who works closely with government employees, or speaks and acts on behalf of the government, for example, a government contractor that administers student loans for the Department of Education, or a government contractor that monitors and audits Medicaid or Medicare providers for CMS, both of whom essentially stand in

the shoes of, and speak on behalf of, the government, and work closely with government employees.

In sum, the government interest in controlling Medicaid providers' exercise of their right to petition for review of AHCA overpayment demands is vanishingly small.

On the other hand, Zen's and Otamendi's interest in petitioning for access to the administrative process to challenge AHCA's FAR seeking to force Zen to pay the Agency over $1.6 million (including over $276,000 in fines) – the other side of the *Pickering* balance – is at an acme.

In this context, Medicaid contractors, such as Zen, are functionally indistinguishable from licensees, private citizens regulated by state administrative agencies.  As discussed, AHCA's 2019 FAR was nothing less than a charging document attempting to impose "penal in nature" fines upon Zen based on a probable cause determination; thus, in all material respects the FAR was identical to an administrative complaint a state agency might issue attempting to impose fines or other sanctions against a licensee.  There can be no doubt that a state official is barred by the First Amendment Petition Clause from taking adverse action against a licensee in retaliation for that licensee exercising her right to petition for an administrative hearing to challenge agency allegations in an Administrative Complaint.  Similarly, in all constitutionally relevant ways, a

48

Medicaid contractor petitioning to challenge an AHCA overpayment demand resembles an inmate petitioning to avoid administrative punishment or to challenge the conditions of his confinement. *See, e.g., Boxer X v. Harris*, 437 F.3d 1107, 1112 (11th Cir. 2006) ("First Amendment rights to free speech and to petition the government for a redress of grievances are violated when a prisoner is punished for filing a grievance concerning the conditions of his imprisonment."*), abrogated on other grounds by Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010).

Here, in almost every material way, Zen acted as a private citizen in petitioning for administrative review of AHCA's FAR. Stated simply, Zen and Otamendi have a momentous interest in petitioning for an administrative hearing to challenge the AHCA's overpayment demand – more than 1.6 million reasons – while AHCA has little or no legitimate interest in controlling or influencing Zen's (or any Medicaid provider's) petition activity to challenge a FAR.

Consequently, the district court erred in extending the public concern test to this case, where a state Medicaid contractor raised a Petition Clause retaliation claim rooted in Zen's petition for an administrative hearing to challenge AHCA's 2019 FAR allegations and overpayment demand.

49

**C.    Even If The Public Concern Test Applies Here, The District Court Erred In Dismissing Count II Because Zen and Otamendi Were Petitioning and Speaking On Matters Of Public Concern In The 2019 Administrative Case Challenging AHCA's FAR**

Zen and Otamendi were petitioning and speaking as citizens on matters of public concern when they petitioned for an administrative hearing and criticized AHCA, and the district court erred in concluding otherwise.

The Supreme Court has instructed repeatedly that "[w]hether [a plaintiff's] speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." *Connick v. Myers*, 461 U.S. 138, 147-48 (1983); *Guarnieri*, 564 U.S. at 398 (same). Thus, the district court was required to examine the details of the petition and speech for which Defendants-Appellees retaliated against Zen and Otamendi. The district court failed to acknowledge this standard and failed to apply it, instead relying on the precise type of empty labels and self-serving conclusory characterizations the Court has condemned.

Applying the proper standard and examining the content, form, and context of Plaintiffs-Appellants' alleged First Amendment activity demonstrates that Zen's petition for redress in DOAH (and related sanctions motion) is "fairly characterized as" a petition on a matter of public concern, *Connick,* 461 U.S. at 146, and not "a matter of purely private concern," *Guarnieri*, 564 U.S. at 398.

In considering the "context" of the petition, "the forum" in which it is lodged "will be relevant to the determination whether the petition relates to a matter of public concern." *Id.* Here, Zen filed its Petition For Formal Hearing pursuant to controlling Florida Statutes providing a detailed legislative scheme for a highly formal and very public hearing with all dockets, pleadings, motions, rulings and orders publically available, and searchable on the DOAH website. *See* § 119.011(12), Fla. Sta. (2019). This forum stands in stark contrast to that of *Guarnieri*, where the plaintiff's "petition" was a union grievance resolved in arbitration, and the Court observed: "A petition filed with an employer using an internal grievance procedure in many cases will not seek to communicate to the public or to advance a political or social point of view beyond the employment context." 564 U.S. at 398. Here, the forum in which Zen filed its petition supports a finding the petition related to a matter of public concern.

The "content and form" further confirm Zen's petition is fairly characterized as relating to a matter of public concern. From the outset, in its Petition For Formal Hearing, Zen sought a declaration that AHCA was acting on the basis of a prohibited non-rule policy and that such non-rule policies did not carry the force of law. *See* DE:24-1 at 2 (Zen's petition requested "finding that AHCA's conclusions are un-promulgated rules without any force of law"); DE:17 at 9-10 (¶ 26).

51

Moreover, Zen's Petition Clause activity in this case encompasses the Motion For Sanctions it served on the Agency in the course of DOAH proceedings. In its sanctions motion, which includes a sections titled, "Agency Attempts To Change Policy Without Amending Or Adopting New Rule," and "Agency Disarray In Interpreting and Applying Rule 59G-4.125 Leads To Prohibited Arbitrary And Capricious Agency Action," DE:17-2, at 6, 9, Zen asserted the "Agency sought to recoup payments it had made under the program by any means necessary," including "re-writing post hoc the experience qualification requirement to impose myriad requirements not included in the duly adopted Agency rules or the coverage policies incorporated therein," *id.* at 13, and Zen complained about "the new, ad hoc, informal, extra-rulemaking additions the Agency attempts to include post-hoc in the experience requirement," *id.* at 14. *See also* DE:17 at 10 (¶¶29-30). In sum, Zen's petition contended AHCA created out of thin air, and certainly outside the rulemaking process, new, unwritten, after-the-fact requirements for Behavior Assistants to qualify to provide Medicaid services, and that AHCA then attempted to retroactively apply those new unlawful requirements to BA providers in an effort to recoup Medicaid money previously paid by AHCA. Zen's non-rule policy challenge laid out in the sanctions motion explicitly argued the Agency was prohibited from enforcing such an illegal, unadopted rule on Zen "or any other provider." *See id.* at 42 (arguing AHCA's "arbitrary and capricious, ad hoc

additional requirements" were "not part of any rule," and "were unknowable to Zen Group *or any other provider*").

Clear Florida law leaves no doubt Zen's rule challenge, which made up a core component of Zen's petition for redress, would have had precedential effect on all Medicaid providers. Such law (1) explicitly authorizes such generalized rule challenges, § 120.57(1)(e)2, Fla. Stat. (a "party's timely petition for hearing may challenge the proposed agency action . . . based on an alleged unadopted rule"), (2) explicitly prohibits "agency action that determines the substantial interests of a party on an unadopted rule," § 120.57(1)(e)1, (3) severely restricts an agency's authority to reject an "administrative law judge's determination regarding an unadopted rule under subparagraph 1, or subparagraph 2" § 120.57(1)(e)4, and (4) would prohibit AHCA from applying the provisions determined to constitute an unadopted rule in Zen's case to any other provider and any other case, *see Gessler v. DBPR.*, 627 So. 2d 501, 504 (Fla. 4th DCA 1993) (recognizing "principle of administrative stare decisis in Florida"); *Pagan v. Sarasota Cty. Pub. Hosp. Bd.*, 884 So. 2d 257, 266 (Fla. 2d DCA 2004) (*Gessler* based on "fundamental principle that like cases should be treated alike").

In this context, the BA provider community in particular had great interest in Zen's petition raising the issue that AHCA was disqualifying previously-authorized rendering providers (and recouping previously-issued payments) on the

53

basis of an unadopted rule. The BA provider community knew – just as AHCA did – that any favorable ruling on Zen's petition would carry far-reaching consequences affecting millions of dollars for each provider and scores or hundreds of millions of dollars BA system-wide. AHCA's knowledge of the prospective general applicability of such a favorable ruling on Zen's petition was a substantial motivating factor in the Agency settling with Zen on extremely favorable terms. *See* DE:17 at 11(¶31).

Finally, because Zen's petition concerned an issue with the potential to significantly impact AHCA's widespread effort to recoup Medicaid payments from Florida Medicaid providers of BA services throughout South Florida and statewide – involving a full statewide review of all previously authorized BA rendering providers' qualifications with Medicaid recoupment implications in the hundreds of millions of dollars – Zen's petition centered on a subject the Supreme Court has held is quintessentially a matter of public concern. *See Harris v. Quinn*, 573 U.S. 616, 652-54 (2014) (applying public concern test in the context of speech related to Medicaid expenditures, and concluding, "it is impossible to argue that the level of Medicaid funding . . . is not a matter of great public concern"). According to the Court, because of the nature of the Medicaid program and its enormous costs – both as a gross amount and a percentage of state budgets – speech about Medicaid expenditures inherently centers on matters of public concern. *Id.*

54

Further evidencing the public interest in the issues raised in Zen's petition –

AHCA's disastrous implementation of the BA services program, and its 2018

efforts to control runaway costs and recoup moneys spent on the BA services

program – was the subject of serious media coverage. *See* DE:24-2 at 3-6 (2018

Miami Herald article discussing, *inter alia*, AHCA's controversial recoupment

efforts directed at retroactively attacking the credentials of previously-approved

therapists); *City of San Diego v. Roe,* 543 U.S. 77, 83-84, (2004) ("public concern

is something that is a subject of legitimate news interest").

In sum, an examination of the content, form, and context of the petition, as

revealed by the whole record, confirms that Zen's petition was of great interest to

the BA provider community and the general public, and is fairly characterized as

relating to a matter of public concern.

Consequently, as a factual and legal matter, the district court erred in baldly

asserting, without any analysis or discussion of the "content, form, and context" of

Zen's petition or speech: "Zen Group's petition pertained only to its individual

grievance. As such, Zen Group did not speak as a citizen on a matter of public

concern but in its capacity as a medical provider." DE:32 at 12.[4] The fact that Zen

---

[4] Contrary to the district court's conclusion, based on this Court's unpublished and
non-precedential opinion in *BMI Salvage Corp. v. Manion*, 366 Fed. Appx. 140
(2010), the *Garcetti* capacity-of-the-speaker inquiry is simply inapplicable to this
case, because Zen, as a Medicaid provider, never speaks or petitions as part of its
relationship to the state. *See* DE:24 at 7-9 & n.4.

stood to benefit from preventing AHCA from applying a *post-hoc* non-rule policy to unlawfully recoup money legitimately paid to Zen and other BA providers, does not convert its First Amendment activity on matters of public concern into purely private activity. *Cf. Carter v. City of Melbourne, Fla.*, 731 F.3d 1161, 1169 (11th Cir. 2013) ("The fact that Carter would be affected by the policy changes for which he was advocating cannot be cause alone to deny him First Amendment protections. The Supreme Court's First Amendment case law has never required a speaker addressing political matters to be disinterested or unaffected personally by the policies he advocates . . ."); *Garcetti* 547 U.S. at 421.

In sum, because Zen's petition activity in DOAH centered on a matter of public concern, even if this Court extends *Pickering* balancing and the public concern test to the circumstances presented here, Zen engaged in constitutionally-protected activity, Defendants-Appellees' retaliatory conduct violated the First Amendment, Count II of the AC states a claim for relief under Section 1983, and the district court erred in dismissing Count II.[5]

---

[5] The district court failed to address Zen's and Otamendi's allegations and argument that they engaged in constitutionally-protected *free speech* in their sanctions motion criticizing AHCA and its employees. Much of Speech Clause overlaps with the foregoing discussion demonstrating Zen's sanctions motion constitutes speech on a matter of public concern, thus Zen's Speech Clause claim provides an independent basis for Section 1983 liability.

Beyond all Zen's protected speech concerning AHCA's efforts to illegally recoup Medicaid money by way of an *ex post* non-rule policy, aimed at deterring the Agency from acting unlawfully, the sanctions motion aired AHCA's dirty

### D.    Defendants-Appellees Are Not Entitled To Qualified Immunity On Count II

Defendants-Appellees are not entitled to qualified immunity. The foregoing discussion of controlling law, all decided prior to the improper conduct alleged in the AC, demonstrates the constitutional rights Defendants-Appellees violated were clearly established at the time of the conduct.

The core cases discussed above constitute a "robust consensus of cases of persuasive authority" that provided Defendants-Appellees more than "fair warning" (1) Zen's petition and speech activity was protected by the First Amendment, and (2) they were forbidden from issuing an unfounded criminal fraud referral and suspending Medicaid payments in retaliation for Zen exercising its First Amendment rights. *See Carollo v. Boria*, 833 F.3d 1322, 1333 (11th Cir. 2016) (rejecting qualified immunity in §1983 First Amendment retaliation case because plaintiff "plausibly pled that *at least some of his speech* was about matters of public concern"). Thus, Defendants-Appellees are not entitled to qualified immunity.

### E.    Conclusion

The district court erred in dismissing Count II, and this Court should reverse, and reinstate Count II.

---

laundry and internal divisions, quoted extensively from depositions and emails of key Agency personnel tasked with issuing Medicaid provider numbers to behavior assistant applicants, and roundly criticized AHCA's administration of its BA program. *See* DE:17-2 at 9-13.

## <u>CONCLUSION</u>

This Court should reverse the district court order dismissing Counts I and II of the Amended Complaint.

Respectfully submitted,

**THE HEALTH LAW OFFICES OF ANTHONY C. VITALE P.A.**
Anthony C. Vitale, Esq.
Florida Bar No. 249841
2333 Brickell Avenue, Suite A-1
Miami, Florida 33129
(305) 358-4500 telephone
(305) 358-5113 facsimile
avitale@vitalehealthlaw.com

**ELLSWORTH LAW FIRM, P.A.**
Sean M. Ellsworth, Esq.
Florida Bar No. 039845
1000 5th Street, Suite 223
Miami Beach, Florida 33139
(305) 535-2529 telephone
(305) 535-2881 facsimile
sean@ellslaw.com

 */s/ Sean M. Ellsworth*
Sean M. Ellsworth

## <u>CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS</u>

I HEREBY CERTIFY this brief complies with the type-volume limitations set forth in Fed. R. App. P. 32(a)(7).  This brief contains <u>12,944 words</u>, including all headings, footnotes, and quotations, and excluding the parts of the brief exempted under Fed. R. App. P. 32(f) and 11th Cir. R. 32-4.

I HEREBY FURTHER CERTIFY, that this brief complies with the typeface and type style requirements of Fed. R. App. P. 32(a)(5) and (6) because it has been prepared in a proportionally-spaced typeface using Microsoft Word in 14-point Times New Roman font.

*/s/ Sean M. Ellsworth*
Sean M. Ellsworth

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on April 22, 2022, a true and correct copy of the foregoing has been filed electronically with the Clerk using CM/ECF who will serve a copy on all counsel of record.

*/s/ Sean M. Ellsworth*
Sean M. Ellsworth

59