Case No. 22-10319-CC

_____

## UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT
_____

ZEN GROUP, INC., and CARLOS OTAMENDI,

*Plaintiffs-Appellants*,

v.

STATE OF FLORIDA AGENCY FOR HEALTH CARE ADMINISTRATION;
SIMONE MARSTILLER, in her official capacity as SECRETARY, STATE OF
FLORIDA AGENCY FOR HEALTH CARE ADMINISTRATION; and
KELLY BENNETT, individually and in her official capacity as Chief of the Office
of Medicaid Program Integrity, STATE OF FLORIDA AGENCY FOR HEALTH
CARE ADMINISTRATION,

*Defendants-Appellees*.

_____

On Appeal from the United States District Court for the Southern District of
Florida

_____

## APPELLEES' ANSWER BRIEF
_____

Christopher B. Lunny (Fla. Bar No. 0008982)
Thomas A. Crabb (Fla. Bar No. 25846)
Laura M. Dennis (Fla. Bar No. 91549)
Radey Law Firm
301 S. Bronough Street, Suite 200
Tallahassee, Florida 32301
(850) 425-6654

*Counsel for Appellees*

Docket No. 22-10319-CC
*Zen Group, Inc. v. State of Florida Agency for Health Care Administration*

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Appellees submit and certify the following list of all persons or entities known to have an interest in the outcome of this appeal. Pursuant to 11th Circuit Rule 26.1-3(b), Appellees are unaware of any publicly traded company or corporation that has an interest in the outcome of this appeal.

1.    Bennett, Kelly A., Appellee

2.    Crabb, Thomas A., Counsel for Appellees

3.    Dennis, Laura M., Counsel for Appellees

4.    Ellsworth Law Firm, P.A., Counsel for Appellants

5.    Ellsworth, Sean, Counsel for Appellants

6.    Gayles, Darrin P., United States District Court Judge

7.    Harris, Shevaun, Former Acting Secretary for State of Florida Agency for Health Care Administration, Defendant in District Court

8.    Lunny, Christopher B., Counsel for Appellees

9.    Marstiller, Simone, Current Secretary for State of Florida Agency for Health Care Administration, Appellee

Docket No. 22-10319-CC
*Zen Group, Inc. v. State of Florida Agency for Health Care Administration*

10.    Mayhew, Mary C., Former Secretary for State of Florida Agency for Health Care Administration

11.    Otamendi, Carlos, Appellant

12.    Radey Law Firm, Counsel for Appellees

13.    State of Florida, Agency for Health Care Administration, Appellee

14.    The Health Law Offices of Anthony C. Vitale, P.A., Counsel for Appellants

15.    Vitale, Anthony C., Counsel for Appellants

16.    Zen Group, Inc., Appellant

## STATEMENT REGARDING ORAL ARGUMENT

Appellees do not request oral argument in this matter.

## TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE
DISCLOSURE STATEMENT ..............................................................................C-1

STATEMENT REGARDING ORAL ARGUMENT ............................................ i

TABLE OF CONTENTS.................................................................................... ii

TABLE OF CITATIONS ..................................................................................... iv

STATEMENT OF THE ISSUES.......................................................................... ix

STATEMENT OF THE CASE..............................................................................1

   I.  Nature of the Proceedings .........................................................................1

  II. Statement of the Facts ..............................................................................2

          A.    Florida's Medicaid Program and Efforts to Combat Medicaid
                Fraud ..............................................................................................2

          B.    Zen Group's Final Audit Report .................................................4

          C.    The Credible Allegation of Fraud and Referral to the
                Medicaid Fraud Control Unit.......................................................7

          D.    Proceedings in the District Court................................................8

  III. Standard of Review ...................................................................................10

SUMMARY OF THE ARGUMENT ....................................................................10

ARGUMENT .......................................................................................................13

   I.  Count I of the Amended Complaint Failed to State a Section 1983 Claim
      for Retaliation Under the Fourteenth Amendment ....................................13

          A.    Zen Failed to Allege a Constitutionally-Protected Property
                Interest to Support a Claim Under the Fourteenth
                Amendment.................................................................................13

          B.    Zen's Attempt to State a Claim Under "Alternative" Section
                1983 Theories of Liability Fails.................................................19

1. Appellants Do Not State a Claim Under the Law
   Governing Prosecutorial Vindictiveness .............................19

2. Appellants Do No State a Claim Under the
   Unconstitutional Conditions Doctrine ................................22

C. Defendant Bennett is Entitled to Qualified Immunity .............27

II. Count II of the Amended Complaint Failed to State a Section 1983 Claim
   for Retaliation Under the First Amendment...................................30

A. The Public Concern Requirement and *Pickering* Balancing
   Test Apply to Zen as an Independent Contractor Under Both
   the Petition and Speech Clauses of the First Amendment ........31

B. Zen was Not Speaking or Petitioning as a Citizen on a Matter
   of Public Concern.......................................................38

C. Defendant Bennett is Entitled to Qualified Immunity .............44

CONCLUSION .......................................................................46

CERTIFICATE OF COMPLIANCE .......................................................47

CERTIFICATE OF SERVICE ..........................................................48

iii

# TABLE OF CITATIONS

## Cases

*Access Now, Inc. v. Southwest Airlines Co.,* 385 F.3d 1324 (11th Cir. 2004) ........................................................................ 16, 17, 20, 37

*Alpha Home Health Sols., LLC v. Sec'y of U.S. Dep't of Health & Human Servs.,* 340 F. Supp. 3d 1291 (M.D. Fla. 2018)............................................15

*Alves v. Bd. of Regents of the Univ. Sys. Of Ga.,* 804 F.3d 1149 (11th Cir. 2015) ........................................................................... 40, 41, 45

*Bd. of Cty. Comm'rs, Wabaunsee Cty., Kan. v. Umbehr,* 518 U.S. 668 (1996) ........................................................................... 33, 36, 45

*Bennett v. Hendrix,* 423 F.3d 1247 (11th Cir. 2005) ................................................30

*BMI Salvage Corp. v. Manion,* 366 F. App'x 140 (2010) ......................................32

*Bordenkircher v. Hayes,* 434 U.S. 357 (1978)........................................................21

*Borough of Durya, Pa. v. Guarnieri,* 564 U.S. 379 (2011) ........................... passim

*Bourgeois v. Peters,* 387 F.3d 1303 (11th Cir. 2004)...................................... 22, 23

*Butler v. Ala. Dep't of Transp.,* 512 F. Supp. 2d 1209 (N.D. Ala. 2007), *overruled on other grounds,* 536 F.3d 1209 (11th Cir. 2008)......................18

*Carruth v. Bentley,* 942 F.3d 1047 (11th Cir. 2019)........................................ 29, 44

*City of San Diego, Cal. v. Roe,* 543 U.S. 77 (2004) ................................... 33, 36, 43

*Connick v. Myers,* 461 U.S. 138 (1983)................................................... 32, 33, 38

*DeMartini v. Town of Gulf Stream,* 942 F.3d 1277 (11th Cir. 2019) .....................31

*Doe v. Miami-Dade Cty., Fla.,* 846 F.3d 1180 (11th Cir. 2017) ............................10

*Dolan v. City of Tigard,* 512 U.S. 374 (1994) ................................................. 24, 25

*Gable v. Lewis,* 201 F.3d 769 (6th Cir. 2000) .......................................................35

iv

*Gaines v. Wardynski,* 871 F.3d 1203 (11th Cir. 2017) ........................ 28, 29, 30, 45

*Garcetti v. Ceballos,* 547 U.S. 410 (2006) ............................................................. 32

*Glover v. Mabrey,* 384 F. App'x 763 (10th Cir. 2010) ..................................... 34, 45

*Goffer v. Marbury,* 956 F.2d 1045 (11th Cir. 1992) ........................................ 33, 35

*Grayden v. Rhodes,* 345 F.3d 1225 (11th Cir. 2003) ...................................... 13, 17

*Harbert Int'l, Inc. v. James,* 157 F.3d 1271 (11th Cir. 1998) ................................. 28

*Harris v. Quinn,* 573 U.S. 616 (2014) ............................................................. 42, 43

*Heritage Constructors, Inc. v. City of Greenwood, Ark.,* 545 F.3d 599 (8th Cir. 2008) ........................................................................................ 35, 45

*Holloman ex rel. Holloman v. Harland,* 370 F.3d 1252 (11th Cir. 2004) .............. 28

*Koontz v. St. Johns River Water Mgmt. Dist.,* 570 U.S. 595 (2013) ............ passim

*Kurtz v. Vickrey,* 855 F.2d 723 (11th Cir. 1988) ........................................ 39, 42, 45

*L.L. Nelson Enters., Inc. v. Cty. of St. Louis, Mo.,* 673 F.3d 799 (8th Cir. 2012) ...................................................................................... 34, 45

*Lakner v. Lantz,* 547 F. App'x 13 (2d Cir. 2013) ........................................... 34, 45

*Lebron v. Sec'y, Fla. Dep't of Children & Families,* 710 F.3d 1202 (11th Cir. 2013) ....................................................................................... 22, 23

*Malley v. Briggs,* 475 U.S. 335 (1986) ................................................................. 28

*McKinney v. Pate,* 20 F.3d 1550 (11th Cir. 1994) ................................................. 18

*Mitchell v. Hillsborough Cty.,* 468 F.3d 1276 (11th Cir. 2006) ...................... 38, 39

*Morgan v. Ford,* 6 F.3d 750 (11th Cir. 1993) ........................................................ 39

*Morris v. Crow,* 142 F.3d 1379 (11th Cir. 1998) ................................................... 41

*New York State Nat'l Org. for Women v. Pataki,* 261 F.3d 156 (2d Cir. 2001) ...... 15

*Nirvana Health Servs., Inc. v. Sec'y of U.S. Dep't of Health & Human Servs.,* No. 6:18-cv-2044-Orl-40DCI, 2018 WL 10216474, (M.D. Fla. Dec. 20, 2018) .............................................................................. 15-16

*Nollan v California Coastal Comm'n,* 483 U.S. 825 (1987) ........................... 24, 25

*Pearson v. Callahan,* 555 U.S. 223 (2009) ...................................................... 27, 28

*Personal Care Prods., Inc. v. Hawkins,* 635 F.3d 155 (5th Cir. 2011) ..................14

*Pickering v. Board of Education of Township High School District 205, Will County, Illinois,* 391 U.S. 563 (1968) ........................................... passim

*Planned Parenthood Ass'n of Hidalgo Cty. Texas, Inc. v. Suehs,* 692 F.3d 343 (5th Cir. 2012) .......................................................................................30

*Planned Parenthood v. Philip,* 194 F. Supp. 3d 1213 (N.D. Fla. 2016) ...............23

*Rankin v. McPherson,* 483 U.S. 378 (1987) .................................................... 35, 43

*Ratliff v. DeKalb,* 62 F.3d 338 (11th Cir. 1998) ...................................................18

*Riley's Am. Heritage Farms v. Elsasser,* 29 F.4th 484 (9th Cir. 2022); *amended and superseded on other grounds,* 32 F.4th 707 (9th Cir. 2022) ............................................................................................................. 37-38

*Ron Grp., LLC v. Azar,* No. 2:20-cv-1038-ECM, 2021 WL 5570309 (M.D. Ala. Nov. 29, 2021) ................................................................................... 14-15

*State v. Scharlepp,* 292 So. 3d 872 (Fla. 1st DCA 2020) ........................................8

*Summit Med. Assocs., P.C. v. Pryor,* 180 F.3d 1326 (11th Cir. 1999)...................27

*United States v. Goodwin,* 457 U.S. 368 (1982) ............................................. 19, 20

*United States v. Schneider,* 853 F. App'x 463 (11th Cir. 2021)............................21

*United States v. Toombs,* 748 F. App'x 921 (11th Cir. 2018) ...............................21

*Walker v. Jones,* 10 F.3d 1569 (11th Cir. 1994) ...................................................16

*Watkins v. Bowden,* 105 F.3d 1344 (11th Cir. 1997)............................................18

*Willingham v. Loughnan,* 321 F.3d 1299 (11th Cir. 2003)......................................30

*Yorktown Med. Lab'y, Inc. v. Perales,* 948 F.2d 84 (2d Cir. 1991) .......................14

*Youmans v. Gagnon,* 626 F.3d 557 (11th Cir. 2010)........................................ 28, 44

*Zinermon v. Burch,* 494 U.S. 113 (1990)................................................................17

**Statutes**

42 U.S.C. § 1983 ............................................................................................ passim

§ 57.105, Fla. Stat. ...................................................................................................6

§ 57.105(4), Fla. Stat. ..............................................................................................6

§ 120.56(4)(a), Fla. Stat. .......................................................................................40

§ 120.56(4)(d), Fla. Stat. .......................................................................................42

§ 120.56(4)(e), Fla. Stat. .......................................................................................42

§ 120.57, Fla. Stat. .................................................................................................17

§ 120.569, Fla. Stat. ...............................................................................................17

§ 409.902(1), Fla. Stat. ...........................................................................................2

§ 409.907(5)(a), Fla. Stat. ......................................................................................15

§ 409.913, Fla. Stat. ...................................................................................... 2-3, 4, 15

§ 409.913(1)(e), Fla. Stat. .......................................................................................3

§ 409.913(2), Fla. Stat. ...........................................................................................3

§ 409.913(12), Fla. Stat. ........................................................................................21

§ 409.913(13), Fla. Stat. .........................................................................................3

§ 409.913(14), Fla. Stat. .........................................................................................3

§ 409.913(15), Fla. Stat. .........................................................................................3

§ 409.913(16), Fla. Stat..........................................................................3

§ 409.913(21), Fla. Stat..........................................................................3

§ 409.913(27), Fla. Stat..........................................................................3

§ 409.913(27)(a), Fla. Stat. .................................................................5, 14

§ 409.920(9), Fla. Stat..........................................................................8, 21

§ 409.920(9)(d), Fla. Stat. ......................................................................4

## Federal Regulations

42 C.F.R. § 455.23 ........................................................................ 7, 29, 44

42 C.F.R. § 455.23(a)..............................................................................2

42 C.F.R. § 455.23(a)(1) ......................................................................4, 14

42 C.F.R. § 455.23(b) ..............................................................................4

42 C.F.R. § 455.23(d) ..............................................................................4

## Constitutional Provisions

U.S. Const. amend. I ...................................................................... passim

U.S. Const. amend. V...................................................................... 24-25

U.S. Const. amend. XI ............................................................................27

U.S. Const. amend. XIV .................................................................. passim

## STATEMENT OF THE ISSUES

1.      Whether the district court erred in dismissing Count I of the Amended Complaint, which purports to state a claim under 42 U.S.C. § 1983 for a procedural due process violation based on retaliation, when: (i) Zen Group and Otamendi failed to allege a constitutionally-protected property interest; (ii) the Eleventh Circuit has not recognized a § 1983 claim for a procedural due process violation rooted in retaliation; and (iii) Zen Group and Otamendi's proposed alternative theories of § 1983 liability are inapplicable.

2.      Whether the district court erred in dismissing Count II of the Amended Complaint, which purports to state a claim under 42 U.S.C. § 1983 for a First Amendment violation, when Zen's speech and petition activity failed to involve matters of public concern and, as such, did not to fall within the protections of the First Amendment.

## STATEMENT OF THE CASE

## I.    Nature of the Proceedings

This appeal arises from a final order of dismissal where the district court declined to exercise supplemental jurisdiction over Zen Group, Inc. (Zen Group) and Carlos Otamendi's (Otamendi) (collectively Zen) state law claims. Doc. 45.[1] That order followed a non-final order dismissing Zen's § 1983 claims for damages and injunctive relief under the Fourteenth and First Amendments, along with claims for declaratory judgment and outrageous conduct causing severe emotional distress. Doc. 32.

When parsed to its essence, Zen's Amended Complaint stems from two prior proceedings: (1) an administrative challenge to the Agency for Health Care Administration's (AHCA) demand to recover Medicaid overpayments made to Zen Group; and (2) AHCA's finding of a credible allegation of fraud against Zen Group, which led to an investigation by the Medicaid Fraud Control Unit of the Florida Office of Attorney General (MFCU). Doc. 17, at 2-3, 8-10, 14-15. Zen alleges that because it initiated the first proceeding, it was retaliated against in violation of the Fourteenth and First Amendments when AHCA later determined that a credible allegation of fraud warranted an investigative referral to MFCU and the statutory

---

[1] The record will be referred to by document number and page number (where applicable) in the following format: Doc. #, at page #.

suspension of Medicaid payments to Zen pending the investigation. *Id.* at 3, 14; *see also* 42 C.F.R. § 455.23(a).

The district court dismissed Zen's federal law claims, however, finding that Zen failed to allege a constitutionally-protected property interest under the Fourteenth Amendment (Count I) and was not speaking as a citizen on a matter of public concern under the First Amendment (Count II). Doc. 32, at 10, 12.[2] Following dismissal of the federal claims, the district court declined to exercise supplemental jurisdiction over the remaining state law claims and closed the case. Doc. 45, at 5. This appeal followed. Doc. 46.

## II.    Statement of the Facts

### A.    Florida's Medicaid Program and Efforts to Combat Medicaid Fraud

The Florida Legislature has expressly designated AHCA as the single state agency authorized to make payments for medical assistance and related services under the Medicaid Program. § 409.902(1), Fla. Stat. The Legislature further requires AHCA to oversee the activities of Florida Medicaid providers to ensure that fraudulent and abusive behavior occur to the minimum extent possible. § 409.913,

---

[2] The district court also dismissed Zen's state law claims for declaratory judgment and outrageous conduct causing severe emotional distress. *See* Doc. 32. Zen has not appealed the dismissal of those claims.

Fla. Stat. In this capacity, AHCA is tasked to recover overpayments and impose sanctions against providers as appropriate. *Id.*

AHCA's Office of Medicaid Program Integrity (MPI) serves as the state Medicaid oversight program responsible for "conducting reviews, investigations, and/or audits to determine possible fraud, abuse, overpayment,[3] or recipient neglect in the Medicaid program." Doc. 17-1, at 3; *see also* § 409.913(2), Fla. Stat. Any finding of an overpayment must be reported in an audit report, showing the calculation of the overpayment. §§ 409.913(2), (21), Fla. Stat. AHCA may also impose sanctions on a provider, including fines, for violations of the statute. §§ 409.913(13)-(16), Fla. Stat. The provider may challenge the audit report through an administrative hearing under Chapter 120, Florida Statutes; however, if AHCA has made a probable cause determination and alleged an overpayment has occurred, AHCA is required to withhold Medicaid reimbursement payments during the pendency of the administrative hearing until the overpayment is recovered. § 409.913(27), Fla. Stat.

Similarly, federal regulations require that AHCA suspend Medicaid payments to a provider in the event of fraud. If AHCA determines there is a credible allegation

---

[3] Overpayment is defined as "any amount that is not authorized to be paid by the Medicaid program whether paid as a result of inaccurate or improper cost reporting, improper claiming, unacceptable practices, fraud, abuse, or mistake." § 409.913(1)(e), Fla. Stat.

of fraud for which an investigation is pending, it must suspend all Medicaid payments unless there is a good cause to not suspend payments or suspend payments in part. 42 C.F.R. § 455.23(a)(1). If program payments are suspended, AHCA is further required to notify the provider and make a fraud referral to the state's Medicaid fraud control unit (here, the MFCU). 42 C.F.R. §§ 455.23(b), (d). If the MFCU accepts the fraud referral for investigation, the payment suspension is continued until such time as the investigation and any associated law enforcement proceedings are completed. *Id.* The Attorney General, which conducts the statewide MFCU, alone decides whether prosecution of alleged fraudulent activity is warranted. *See* § 409.920(9)(d), Fla. Stat.

### B.    Zen Group's Final Audit Report

Zen Group, owned by Carlos Otamendi, is a Florida Medicaid provider furnishing behavior analysis services to developmentally disabled recipients in Florida. Doc. 32, at 1-2; Doc. 17, at 6. Zen Group and AHCA were parties to a Non-Institutional Medicaid Provider Agreement. Doc. 17, at 6. In 2017, AHCA implemented its Behavior Analysis Services Program, through which AHCA paid behavior analysis providers, like Zen Group, for providing services to Medicaid recipients. Doc. 32, at 1-2.

Pursuant to section 409.913, Florida Statutes, AHCA's MPI conducted an audit of Zen Group related to claims for Medicaid reimbursement from November

1, 2017 through September 30, 2018. Doc. 17-1, at 2. On February 14, 2019, AHCA issued a Final Audit Report (FAR), finding that Zen Group was overpaid $1,367,839.74 for services that, in whole or in part, were not covered by Medicaid. *Id.* In particular, the FAR found that payments were made for services rendered by individuals who did not meet the qualifications to provide behavior analysis services, or for whom documentation was insufficient to determine eligibility, resulting in the overpayment. *Id.* at 4. The FAR also announced AHCA's intent to impose a fine in the amount of $276,067.95 and costs for the audit in the amount of $495.00, resulting in a total amount of $1,644,402.69. *Id.* at 2.

On March 7, 2019, Zen Group sought administrative review of the FAR by filing a Petition for Formal Hearing (Petition). Doc. 17, at 9-10. The Petition, spanning no more than three pages, disputed that Zen Group should repay money received for providing services that were not covered by Medicaid. *Id.* at 8, 9; *see generally* Doc. 24-1. The Petition listed as its singular disputed issue of material fact whether Zen Group's providers complied with AHCA's behavior analysis enrollment guidelines. Doc. 24-1, at 2. During the pendency of the administrative hearing, AHCA, in accordance with section 409.913(27)(a), Florida Statutes, withheld Medicaid reimbursement payments from Zen Group. Doc. 17, at 10.

On October 15, 2019, Zen Group served AHCA with a Motion for Sanctions (Motion), asserting that AHCA's claims against Zen Group were baseless and that

Zen Group should therefore be awarded attorney's fees. Doc. 17, at 10; Doc. 17-2, at 46. At the time the Motion was served, AHCA had withheld approximately $737,000.00 in Medicaid reimbursements from Zen Group. Doc. 17, at 12. In accordance with section 57.105, Florida Statutes, *the Motion was never filed* with the Division of Administrative Hearings because the parties executed a settlement agreement shortly thereafter.[4] Doc. 17, at 11, 13.

Under the terms of the settlement, the parties agreed that AHCA would retain $70,726.38. Doc. 17, at 12; Doc. 20, at 2; Doc. 20-1, at 13. With respect to this sum, the settlement agreement provided that "Provider agrees to pay AHCA the sum of seventy thousand, seven hundred twenty-six dollars and thirty-eight cents . . . , which the Agency contends represents an overpayment." Doc. 20-1, at 13. In addition, the parties agreed that AHCA would re-pay Zen Group $666,980.70 of the total Medicaid reimbursement payments withheld. Doc. 17, at 14; Doc. 20, at 2; Doc. 20-1, at 13. The settlement agreement did not impose any fines against Zen Group. *See generally* Doc. 20-1; *see also* Doc. 17, at 12 (conceding the parties agreed to "remove any fines or sanctions"). On November 21, 2019, AHCA issued a Final Order closing the matter (Doc. 20-1, at 9), and on January 9, 2020, AHCA paid to Zen Group the amount due under the settlement agreement. Doc. 17, at 14.

---

[4] Section 57.105(4), Florida Statutes, provides that a motion for sanctions must be served and not filed with the court unless, within twenty-one days, the motion, claim, or defense is not withdrawn or appropriately corrected.

### C.    The Credible Allegation of Fraud and Referral to the Medicaid Fraud Control Unit

On January 10, 2020, Bennett, Chief of AHCA's Office of MPI, notified Zen Group that AHCA was suspending Medicaid payments pursuant to 42 C.F.R. § 455.23. Doc. 17, at 14-15. AHCA also referred the matter to MFCU for investigation. *Id.* at 15.

Thereafter, Zen Group purportedly communicated with the MFCU investigator throughout the course of the investigation. Doc. 17, at 15-26. Taken as true, the attachments to the Amended Complaint demonstrate a series of communications between the Florida Attorney General MFCU and counsel for Appellants. *See* Docs. 17-5 through 17-23. Notably, none of the correspondence discussing the status of the investigation involved Defendant Bennett or AHCA. *See id.*

In February 2020, an MFCU investigator informed Zen's counsel that the investigation is "trending to closing out as Unfounded," but that discussion was still required with the Assistant Attorney General. Doc. 17, at 18; Doc. 17-9, at 2. In a subsequent correspondence, Zen was again informed that in order to close the investigation, approval from the Regional Chief Assistant Attorney General for the MFCU in Miami, Florida was required. Doc. 32, at 4; *see also* Doc. 17, at 19; Doc. 17-11, at 2; Doc.  17-12, at 2.

On April 30, 2020, Jose Marti, an Assistant Attorney General with the MFCU, informed Zen that the investigation was still "ongoing," and that the MFCU was "working diligently." Doc. 17-18, at 2. Ms. Marti requested additional information from Zen on July 1, 2020, which Zen alleges was unrelated to the fraud referral by AHCA. Doc. 17, at 26, 28; Doc. 17-20, at 2. Five days later, Ms. Marti informed Zen that "our investigation of Zen Group has been continuous since we first were in contact with your client and no part of our investigation at the Medicaid Fraud Control Unit has been closed at this point." Doc. 17-22, at 2. Zen alleges, however, that it ceased operations a month earlier on June 1, 2020. Doc. 17, at 26. Zen claims that, as a result, it initiated this lawsuit.[5] *Id.*

## D.    Proceedings in the District Court

Zen's Amended Complaint asserts the following claims: 42 U.S.C. § 1983 for violation of its right to procedural due process under the Fourteenth Amendment (Count I); 42 U.S.C. § 1983 for violation of the right to free speech and to petition the government for redress under the First Amendment (Count II); declaratory relief (Count III); tortious interference with business relations (Count IV); defamation

---

[5] Although the Florida Attorney General is a separate state agency that independently investigates fraud referrals within its MFCU program, *see* § 409.920(9), Fla. Stat.; *State v. Scharlepp,* 292 So. 3d 872, 879 n.3 (Fla. 1st DCA 2020) (stating that "AHCA is separate and apart from the Medicaid Fraud Control Unit of the Department of Legal Affairs"), Appellants have never named the Florida Attorney General or any investigator as a defendant in this case, even though they blame the Attorney General for its "bad-faith refusal" to close the investigation. Doc. 17, at 26 (¶ 84).

(Count V); and outrageous conduct causing severe emotional distress (Count VI). Doc. 17. With respect to Count I, Zen alleged that money paid to Zen for services it provided prior to AHCA's overpayment demand in the FAR was property of Zen. Doc. 17, at 35. Zen concedes that it exercised its due process rights by initiating the administrative hearing to challenge the FAR, but that following the resolution of the administrative hearing, Bennett took retaliatory action against Zen by issuing the payment suspension and making the fraud referral to MFCU. *Id.* at 37-39. In Count II, Zen similarly alleges that Bennett retaliated against Zen by issuing the payment suspension and making the fraud referral following Zen's exercise of its First Amendment rights through its Petition and Motion for Sanctions. *Id.* at 42-43.

On November 20, 2020, Defendants moved to transfer venue and to dismiss the Amended Complaint for failure to state a claim. Doc. 20. The district court denied the request to transfer venue, but dismissed Counts I, II, III, and VI without prejudice. Doc. 32. In dismissing Count I, the district court concluded that Zen failed to allege a constitutionally-protected property interest in either: (1) Medicaid payments received prior to the FAR that were subject to recoupment; or (2) Medicaid payments that were withheld pending the administrative hearing and suspended following the fraud referral. Doc. 32, at 10-11. With respect to Count II, the district court determined that because Zen was not speaking as a citizen on a matter of public concern, its speech was not entitled to First Amendment protections. *Id*. at 12-13.

Thereafter, Bennett, as the sole remaining Defendant, moved to dismiss Zen's remaining state law claims, arguing the district court should decline to exercise supplemental jurisdiction. Doc. 34. On December 29, 2021, the district court granted Bennett's motion, dismissed the remaining claims without prejudice to refiling in state court, and closed the case. Doc. 45.

### III.    Standard of Review

The order granting the motion to dismiss for failure to state a claim is subject to *de novo* review, accepting the allegations in the Amended Complaint as true and construing them in the light most favorable to the plaintiff. *Doe v. Miami-Dade Cty., Fla.,* 846 F.3d 1180, 1183 (11th Cir. 2017) (citing *Hill v. White,* 321 F.3d 1334, 1334 (11th Cir. 2003)).

### SUMMARY OF THE ARGUMENT

The district court's dismissal of Zen's federal law claims must be affirmed. The district court properly dismissed Count I of the Amended Complaint because Zen failed to allege a constitutionally-protected property interest to support a claim under the Fourteenth Amendment. The district court rightly concluded that Medicaid payments are always contingent upon an overpayment demand and, as such, Medicaid payments are not "property" that can support a § 1983 claim premised upon the Fourteenth Amendment. Likewise, because Medicaid payments that are withheld during the pendency of an administrative hearing and payments suspended

10

following a credible allegation of fraud are inherently contingent upon the outcome of the administrative challenge or the MFCU investigation, these payments also fail to create a constitutionally-protected property interest. Lastly, Zen's argument that AHCA's attempted fines of Zen somehow create a constitutionally-protected property interest must be rejected because the argument was not raised below and, regardless, Zen admits (as it must) that it never paid a fine. In the absence of a constitutionally-protected property interest, Zen's claim in Count I fails.

Count I is also subject to dismissal because a § 1983 claim for a procedural due process violation may not be predicated on retaliatory conduct. Zen attempts to circumvent this precedent by manufacturing its own cause of action for retaliation under doctrines that are inapplicable here. First, Zen's attempt to craft a procedural due process retaliation claim under the body of criminal law governing prosecutorial vindictiveness must be rejected. The doctrine of prosecutorial vindictiveness has not been extended beyond the criminal law context and has never buttressed a § 1983 claim.

Second, Zen has failed to state a claim for retaliation under the unconstitutional conditions doctrine. Zen has not alleged that AHCA conditioned the receipt of any government benefit on Zen's relinquishment of its procedural due process rights. Moreover, the unconstitutional conditions doctrine has not been applied to a § 1983 procedural due process claim based in allegations of retaliation

(as here) and, regardless, Zen has failed to allege that AHCA ever threatened or coerced Zen to abandon any such right. Quite the opposite, Zen claims that it vindicated its rights in the administrative process. For all these reasons, dismissal of Count I should be affirmed.

The district court's dismissal of Count II should also be affirmed. For Zen to claim the protections of the First Amendment, the speech at issue must involve a matter of public concern. Indeed, the Supreme Court has applied the public concern requirement to both claims by independent contractors and claims under the Petition Clause, and the majority of circuit courts have applied the requirement to cases where, as here, an independent contractor asserts a claim under the Petition Clause.

A review of the record as a whole reveals that Zen's speech and petition activity did not invoke a matter of public concern. Zen's Petition and Motion, which form the basis for Count II, both stem from the FAR and challenge AHCA's determination that Zen was overpaid because its behavior assistants were not qualified. Neither the Petition nor the Motion are the subject of general interest or of value and concern to the public. Therefore, Count II fails to state a claim under the First Amendment.

Finally, to the extent this Court finds that Zen sufficiently stated a cause of action under Counts I or II, Defendant Bennett is entitled to qualified immunity. Zen has failed to establish that Bennett committed a constitutional violation and that the

law governing the circumstances was clearly established at the time of the alleged violation. The district court's order dismissing Counts I and II must therefore be affirmed.

## ARGUMENT

## I.    Count I of the Amended Complaint Failed to State a Section 1983 Claim for Retaliation Under the Fourteenth Amendment

To state a § 1983 claim for a procedural due process violation, a plaintiff must allege "(1) a deprivation of a constitutionally-protected liberty or property interest; (2) state action; and (3) constitutionally-inadequate process." *Grayden v. Rhodes,* 345 F.3d 1225, 1232 (11th Cir. 2003) (citation omitted). Because Zen failed to allege a constitutionally-protected property interest, the district court's order of dismissal must be affirmed. Additionally, dismissal of Count I is appropriate because the Eleventh Circuit has not recognized a § 1983 retaliation claim premised upon the Procedural Due Process Clause of the Fourteenth Amendment. Lastly, Zen's attempt to manufacture a cause of action for retaliation based on alternative theories of liability must be rejected.

## A.    Zen Failed to Allege a Constitutionally-Protected Property Interest to Support a Claim Under the Fourteenth Amendment

In Count I, Zen alleges that Appellees took retaliatory action against Zen by finding a credible allegation of fraud and suspending Zen's Medicaid payments after Zen pursued administrative review of the FAR. Doc. 17, at 39-40. The district court

13

dismissed Count I, finding that Zen failed to establish a constitutionally-protected property interest in either: (1) the overpayment of Medicaid funds subject to recoupment; or (2) Medicaid funds withheld during a pending administrative hearing pursuant to section 409.913(27)(a), Florida Statutes, or suspended following a credible allegation of fraud and referral to MFCU pursuant to 42 C.F.R. § 455.23(a)(1). Doc. 32, at 10-11.

In its Brief, Zen challenges the district court's holding in nothing more than a fleeting footnote.[6] In. Br., at 22, n.2. Zen argues that the district court erred in finding it did not have a property interest in Medicaid payments AHCA sought to recoup in the FAR "to the extent such payments were proper." *Id.* In support, Zen erroneously relies on a decision from the Middle District of Alabama where the court found a property interest existed in receiving full reimbursements for "clean claims"—a property interest which is not alleged here. *Id.* (citing *Ron Grp., LLC v. Azar,* No.

---

[6] Zen does not challenge the district court's holding that it lacked a constitutionally-protected property interest in Medicaid payments that were withheld during the administrative proceeding and suspended following the credible allegation of fraud. Nevertheless, that holding should be affirmed. *See Personal Care Prods., Inc. v. Hawkins,* 635 F.3d 155, 159 (5th Cir. 2011) (holding that the provider did not have a property right in Medicaid reimbursements withheld pending a fraud investigation); *Yorktown Med. Lab'y, Inc. v. Perales,* 948 F.2d 84, 89 (2d Cir. 1991) (holding the lab had no property interest in payment for claims pending investigation).

2:20-cv-1038-ECM, 2021 WL 5570309 (M.D. Ala. Nov. 29, 2021)); *see generally* Doc. 17.

Additionally, Zen's argument that it has a "legitimate claim of entitlement" to Medicaid payments wholly ignores the contingent nature of the payments which takes them outside the purview of the Fourteenth Amendment's due process protections. In. Br., at 22, n. 2; *see also New York State Nat'l Org. for Women v. Pataki,* 261 F.3d 156, 164 (2d Cir. 2001) ("Where, as here, a purported property interest is contingent on the exercise of executive discretion, no legitimate claim of entitlement exists."). While section 409.907(5)(a), Florida Statutes, requires AHCA to pay providers for services furnished upon receipt of a properly completed claim form, section 409.913 makes clear that such payments are not absolute and overpayments are subject to recoupment. Thus, the district court correctly concluded that, because of the contingent nature of the payments, Zen lacked a constitutionally-protected property interest. Doc. 32, at 10 (citing *Alpha Home Health Sols., LLC v. Sec'y of U.S. Dep't of Health & Human Servs.,* 340 F. Supp. 3d 1291, 1303 (M.D. Fla. 2018));[7] *see also Nirvana Health Servs., Inc. v. Sec'y of U.S. Dep't of Health & Human Servs.,* No. 6:18-cv-2044-Orl-40DCI, 2018 WL 10216474, at *2-3 (M.D.

---

[7] In reaching its decision, the district court recognized the absence of binding Eleventh Circuit precedent addressing the issue. Doc. 32, at 10. Accordingly, the district court appropriately considered a decision from the Middle District of Florida. *See id.*

Fla. Dec. 20, 2018) (rejecting the argument that Medicaid providers have a property interest in receiving payments owed to them for services rendered).

In an effort to evade the district court's ruling, Zen argues that the district court erred because it ignored allegations that AHCA, through the FAR, *attempted to impose a fine* on Zen Group and Otamendi and deprive them of their money to which they have a constitutionally-protected property interest. *See* In. Br., at 20-21, 22, 23. Because this argument was not raised or briefed before the district court below, Zen is precluded from raising it now. *Walker v. Jones,* 10 F.3d 1569, 1572 (11th Cir. 1994) (quotation omitted) ("[A]n issue not raised in the district court and raised for the first time in an appeal will not be considered by this court.").

An appellate court may consider an issue for the first time on appeal, but only if: (1) it is a pure question of law and refusal to consider it would result in a miscarriage of justice; (2) the appellant raises an objection he had no opportunity to raise in the district court; (3) the interest of substantial justice is at stake; (4) the proper resolution is beyond any doubt; and (5) it presents a significant question of general impact or public concern. *Access Now, Inc. v. Southwest Airlines Co.,* 385 F.3d 1324, 1332 (11th Cir. 2004) (citation omitted). None of these circumstances are present here. The failure to consider Zen's new argument would not result in a miscarriage of justice, particularly when, as explained *infra*, consideration of the same would still require dismissal of Count I. Additionally, Zen had every

opportunity to raise this argument before the district court, but did not do so. *See generally* Docs. 20, 24. Moreover, Zen's new argument does not raise an issue of substantial justice, the proper resolution of the issue is not beyond doubt, and because the issue relates solely to Zen in its role as a Medicaid provider, it cannot be said that it represents a significant question of general impact. *See Access Now, Inc.,* 385 F.3d at 1333-34 (finding none of the exceptions applied).

Even if this Court were to consider Zen's new argument, the district court's order dismissing Count I should nevertheless be affirmed. Assuming Zen has sufficiently alleged a constitutionally-protected property interest (which it has not), Zen has nevertheless failed to allege the deprivation of such interest by state action without due process. *See Grayden,* 345 F.3d at 1232; *see also Zinermon v. Burch,* 494 U.S. 113, 125 (1990) (quotation omitted) (emphasis in original) ("[T]he deprivation by state action of a constitutionally protected interest in life, liberty, or property, is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest *without due process of law*.").

Here, Zen does not allege that it was deprived of money through AHCA's attempt to impose fines without adequate due process of law. Instead, Zen alleges the exact opposite; Zen claims it "exercised its constitutionally-protected right to due process by filing a Petition for Formal Hearing seeking administrative review pursuant to Sections 120.569 and 120.57 of the Florida Statutes." Doc. 17, at 37, 38-

39 (conceding in ¶ 131 that it exercised its Fourteenth Amendment due process rights). Moreover, Zen alleges that, pursuant to its settlement with AHCA, *no fines were ever paid*; therefore, Zen was never deprived of its property. Doc. 17, at 14, 35, 37.

Zen's efforts to frame its procedural due process claim as one for retaliation fail. *See* Doc. 17, at 38-39. A § 1983 claim under the Fourteenth Amendment may not be predicated on retaliation for the exercise of a procedural due process right. *See Butler v. Ala. Dep't of Transp.,* 512 F. Supp. 2d 1209, 1221 (N.D. Ala. 2007) (rejecting an argument that a retaliation claim may be made under the Procedural Due Process Clause), *overruled on other grounds,* 536 F.3d 1209 (11th Cir. 2008); *see also Ratliff v. DeKalb,* 62 F.3d 338, 340-41 (11th Cir. 1998) (declining to extend a § 1983 claim for retaliation under the equal protection clause); *Watkins v. Bowden,* 105 F.3d 1344, 1354-55 (11th Cir. 1997) (same). The right to be free from retaliation is generally established as a First Amendment right. *See Ratliff,* 62 F.3d at 340. On the other hand, the procedural component of the Due Process Clause guarantees notice and a fair hearing. *See McKinney v. Pate,* 20 F.3d 1550, 1561 (11th Cir. 1994). Zen has not demonstrated any procedural due process right to be free from retaliation, nor has Zen cited any case law establishing a cause of action for retaliation based on the procedural component of the Due Process Clause. Accordingly, the dismissal of Count I must be affirmed.

**B.      Zen's Attempt to State a Claim Under "Alternative" Section 1983 Theories of Liability Fails**

In its attempt to nevertheless pursue a retaliation claim under the Procedural Due Process Clause, Zen claims that the district court erred because it failed to address its "alternative" theories of § 1983 liability. In. Br., at 25. Zen then recites, without any supporting authority, what it has fashioned as the elements required to state a § 1983 claim based on retaliation under the Fourteenth Amendment and claims that the Amended Complaint meets these self-manufactured elements. *Id.* at 27-30. Because Zen's "alternative" theories are not applicable here, they must be rejected and the dismissal of Count I must be affirmed.

**1.      Appellants Do Not State a Claim Under the Law Governing Prosecutorial Vindictiveness**

Zen first attempts to craft a procedural due process retaliation claim by relying on the Supreme Court's decision in *United States v. Goodwin,* 457 U.S. 368 (1982), and its progeny. In. Br., at 26-27. As a preliminary matter, Appellees note that Zen never alleged, or argued, this claim below. In seeking dismissal below, Appellees argued that the Eleventh Circuit has not recognized a § 1983 claim under the Fourteenth Amendment rooted in retaliation. Doc. 20, at 10. In response, Zen argued only that it successfully alleged a claim under the unconstitutional conditions doctrine. Doc. 24, at 2-4. Zen made no reference to this new theory of § 1983 liability. *See id.* Further, none of the exceptional circumstances which would permit

this Court to consider this new theory are present. *See Access Now, Inc.,* 385 F.3d at 1331. For this reason alone, Zen's argument must be rejected.

Regardless, the cases on which Zen relies are wholly inapplicable as they concern a body of criminal law commonly referred to as "prosecutorial vindictiveness." *See* In. Br., at 26-27. In *Goodwin,* the defendant initiated plea negotiations with the prosecutor, but later advised the government that he desired to proceed to trial. *Goodwin,* 457 U.S. at 371. The prosecutor then obtained an indictment charging the defendant with a felony, which was heightened from the original charge of a misdemeanor. *Id.* The defendant was convicted on the felony count and moved to set aside the verdict on the ground of "prosecutorial vindictiveness," arguing the indictment on the felony charge gave rise to an "impermissible appearance of retaliation." *Id.* It is against this backdrop the Supreme Court stated that "[t]o punish a person because he has done what the law plainly allows him to do is a due process violation." *Id.* at 372 (citation omitted). The Court in *Goodwin* explained that when action detrimental to a criminal defendant is taken after the exercise of a legal right, the Court has presumed an improper vindictive motive. *Id.* at 373. The Court, however, questioned the boundaries of such presumption, and ultimately declined to apply it in that case. *Id.* at 381, 384.

The remaining cases relied on by Zen concern similar situations where a criminal defendant claims the prosecutor took vindictive retaliatory action after the

defendant exercised his legal rights—usually by declining to plead guilty. *See*
*Bordenkircher v. Hayes,* 434 U.S. 357 (1978) (finding no due process violation when
a state prosecutor reindicts the accused on more serious charges when the accused
did not plead guilty to the offense with which he was originally charged); *United*
*States v. Schneider,* 853 F. App'x 463 (11th Cir. 2021) (finding no vindictive
prosecution when the government advocated for a higher loss finding at sentencing);
*United States v. Toombs,* 748 F. App'x 921 (11th Cir. 2018) (declining to find
prosecutorial vindictiveness when the government filed a sentence enhancement
notice after the defendant declined to plead guilty).

The undersigned is unaware of any instance where the law of prosecutorial
vindictiveness has been extended outside of these limited criminal law applications,
and none of these cases cited by Zen discussing the same involve § 1983 claims.
Simply put, cases governing prosecutorial vindictiveness are inapplicable here and
cannot salvage Zen's claim in Count I from dismissal.[8] This Court should therefore
reject Zen's attempt to manufacture its own elements for a § 1983 retaliation claim
under the Fourteenth Amendment and find that no such claim exists or has been
stated. *See* In. Br., at 27-30.

---

[8] Moreover, AHCA and Defendant Bennett have no authority to *prosecute* Zen, as
that authority lies solely with the Attorney General and MFCU who have not been
named in this proceeding. *See* §§ 409.920(9), 409.913(12), Fla. Stat.

**2.    Appellants Do No State a Claim Under the Unconstitutional Conditions Doctrine**

Zen next attempts to frame Count I as a claim under the unconstitutional conditions doctrine. In. Br., at 31. Like prosecutorial vindictiveness, the doctrine of unconstitutional conditions is not applicable to the facts as alleged in the Amended Complaint and cannot justify a basis to reverse the lower court's dismissal of Count I.

The unconstitutional conditions doctrine prohibits "burdening the Constitution's enumerated rights by coercively withholding benefits from those who exercise them." *Koontz v. St. Johns River Water Mgmt. Dist.,* 570 U.S. 595, 606 (2013); *see also Lebron v. Sec'y, Fla. Dep't of Children & Families,* 710 F.3d 1202, 1217 (11th Cir. 2013). In this regard, the purpose of the doctrine is to "prevent the Government from subtly pressuring citizens, whether purposely or inadvertently, into surrendering their rights." *Bourgeois v. Peters,* 387 F.3d 1303, 1324-25 (11th Cir. 2004).

Here, the Amended Complaint does not allege facts that fit into the confines of the unconstitutional conditions doctrine. Zen has not alleged that the government coerced it into giving up its procedural due process rights. Nor does Zen allege that the government conditioned Zen's exercise of its due process rights on the withholding or termination of any government benefit. Instead, the Amended Complaint alleges otherwise, claiming that Zen fully exercised its due process rights

and that the credible allegation of fraud had no existence, real or otherwise, until *after* the administrative case was concluded. Doc. 17, at 9-10, 13-14, 37, 39.

As such, this case is readily distinguishable from the cases relied on by Zen wherein the litigants challenged a condition that was imposed by statute or expressed coercion by the government. *See e.g., Koontz,* 570 U.S. at 607 (holding the district could not condition approval of a land-use permit on the landowner's funding of offsite mitigation projects on public lands); *Lebron,* 710 F.3d at 1217-18 (holding the statute that required applicants for federal benefits to submit to a suspicion-less drug testing as a condition for eligibility was a condition violating the applicant's Fourth Amendment rights); *Bourgeois,* 387 F.3d at 1325   (finding the city requirement that protestors first submit to searches before participating in protests was an unconstitutional condition); *Planned Parenthood v. Philip,* 194 F. Supp. 3d 1213, 1220 (N.D. Fla. 2016) (applying the doctrine to a statute that required Planned Parenthood to stop providing abortions as a condition to receive state or local funds for services unrelated to abortions). These cases recognize a narrow claim under the unconstitutional conditions doctrine when the government explicitly conditions the receipt of a certain government benefit on the relinquishment of a specific constitutional right, facts which Zen does not allege here.

Zen argues that the sequence of events here—that Bennett allegedly retaliated after Zen exercised its procedural due process rights—is of "no constitutional

moment." In. Br., at 36. However, Zen's argument, which relies on *Koontz v. St. Johns River Water Management District,* cannot salvage Count I.

In *Koontz,* the Court addressed whether certain Fifth Amendment protections afforded to landowners under the Supreme Court's prior precedent in *Nollan/Dolan*[9] were applicable to the developer's claim that the district denied its land-use permit application because he refused to fund offsite mitigation projects on public lands. *Koontz,* 570 U.S. at 603. The Florida Supreme Court declined to apply *Nollan/Dolan*, noting that unlike in those cases, the district did not approve the application on the condition that the applicant accede to the district's demands, but instead denied the application because the applicant refused to make such concessions. *Id.* The Supreme Court reversed, holding that the protections under *Nollan/Dolan* did not change depending on whether the government approves a permit on a condition that the applicant turn over property or denies a permit because the applicant refuses to turn over property. *Id.* at 606. The Court explained that under the Florida Supreme Court's approach, "a government order stating that a permit is 'approved if' the owner turns over property would be subject to *Nollan* and *Dolan*,

_____

[9] The *Nollan* and *Dolan* cases "provide important protection against the misuse of the power of land-use regulation" and hold that a "unit of government may not condition the approval of a land-use permit on the owner's relinquishment of a portion of his property unless there is a 'nexus' and 'rough proportionality' between the government's demand and the effects of the proposed land use." *Koontz,* 570 U.S. at 599 (citing *Nollan v California Coastal Comm'n,* 483 U.S. 825 (1987) and *Dolan v. City of Tigard,* 512 U.S. 374 (1994)).

24

but an identical order that uses the words 'denied until' would not." *Id.* at 607. As a result, the Court did not "attach significance to the distinction between conditions precedent and conditions subsequent." *Id.*

*Koontz* is plainly distinguishable. *Koontz* addresses the appropriate application of *Nollan* and *Dolan* to the landowner's Fifth Amendment Takings Clause claim. *Koontz*, 570 U.S. at 605-07 (recognizing that land-use permit applicants are "especially vulnerable to the type of coercion that the unconstitutional conditions doctrine prohibits"). The Supreme Court in *Koontz* explained that *Nollan* and *Dolan* "involve a special application" of the unconstitutional conditions doctrine "that protects the Fifth Amendment right to just compensation for property the government takes when owners apply for land-use permits," an issue that is not raised here. *See Koontz,* 570 U.S. at 604 (citation omitted). Indeed, neither *Koontz*, nor any other case relied on by Zen, apply the unconstitutional conditions doctrine to a § 1983 claim for procedural due process based on retaliation *because none exist*.

Second, regardless of whether the landowner in *Koontz* was presented with a condition subsequent (i.e. the permit will be granted if you turn over property) or a condition precedent (i.e. the permit is denied until you turn over property), the landowner was made aware by the district that the benefit sought (i.e. the land-use permit) was being expressly conditioned on the relinquishment of a constitutionally enumerated right (i.e. the right to just compensation for property taken by the

government). *See Koontz,* 570 U.S. at 601 (noting the district informed the landowner that it would approve construction only if he agreed to certain concessions).

Here, Zen fails to allege it was aware of any pressure or condition from AHCA that would be applied if Zen exercised its procedural due process rights. Instead, Zen alleges only that Bennett's alleged conduct was as if Defendant Bennett had "presented Zen Group with the unconstitutional condition of giving up its due process rights" in exchange for not making a fraud referral to MFCU and/or not issuing a suspension of Medicaid payments. Doc. 17, at 30 (¶ 135). But there is a difference between allegations of fact and hypotheticals, and the allegations of Zen's Amended Complaint do not claim that Bennett made any demand that Zen forfeit its administrative review. As such, there simply was no "unconstitutional condition" threatened upon Zen.

In sum, Zen's attempt to re-cast Count I as a § 1983 claim premised upon an extension of the "unconstitutional conditions" doctrine to a procedural due process right which was admittedly exercised and not threatened by any government actor is as far-fetched as it sounds. For all these reasons, dismissal of Count I must be affirmed.

### C.    Defendant Bennett is Entitled to Qualified Immunity

Even if this Court concludes that Zen has stated a claim for relief in Count I, the Count must still be dismissed against Bennett under the doctrine of qualified immunity.[10] Qualified immunity "protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan,* 555 U.S. 223, 231 (2009) (citation omitted). The immunity seeks to balance the need for official accountability with the need to permit officials to engage in their discretionary duties without fear of personal liability or harassing

---

[10] Counts I and II were brought against Bennett in her individual capacity and against Bennett and AHCA's Secretary in their official capacities for prospective injunctive relief. Doc. 17, at 34, 41. On appeal, Zen argues only that there is no qualified immunity for Bennett and does not raise arguments regarding sovereign immunity with respect to the claims against Bennett and the Secretary in their official capacities. *See generally* In. Br. Regardless, it is clear that Counts I and II are also barred under the doctrine of sovereign immunity. The Eleventh Amendment bars suit against a state that is initiated by the state's own citizens. *Summit Med. Assocs., P.C. v. Pryor,* 180 F.3d 1326, 1336 (11th Cir. 1999). However, under the *Ex Parte Young* doctrine, a suit against state officials seeking "*prospective* equitable relief to end *continuing* violations of federal law" does not violate the Eleventh Amendment. *Id.* (emphasis in original). The doctrine requires the allegation of an "ongoing and continuous violation of federal law" which is absent here. *See id.* at 1338. Zen alleges the purported constitutional violation (the fraud referral and suspension of Medicaid payments) occurred at one singular point in the past. Doc. 17, at 14. Zen further alleges the payment suspension has since been terminated. *Id.* at 30. Accordingly, the Amended Complaint fails to satisfy the *Ex Parte Young* doctrine and Bennett and AHCA's Secretary enjoy the protections afforded by the Eleventh Amendment for claims against them in their official capacity.

litigation. *Id.* at 231. It protects from suit "all but the plainly incompetent or one who is knowingly violating the law." *Malley v. Briggs,* 475 U.S. 335, 341 (1986). To establish the defense of qualified immunity, the official must first establish the allegedly unconstitutional conduct occurred while acting within the scope of her discretionary authority. *Harbert Int'l, Inc. v. James,* 157 F.3d 1271, 1281 (11th Cir. 1998). Then, the burden shifts to the plaintiff to establish the official violated clearly established law. *Id.*

Here, Zen concedes that the fraud referral and payment suspension occurred while Bennett was acting within the scope of her discretion. Doc. 17, at 39 (characterizing the "unfounded fraud referral to MFCU and suspending Medicaid payments" as "discretionary actions"); *see also Holloman ex rel. Holloman v. Harland,* 370 F.3d 1252, 1265 (11th Cir. 2004) (describing "discretionary authority" to include actions where the official was performing a legitimate job-related function through means that were within her power to utilize). Zen has, however, failed to meet its burden to show that Bennett committed a constitutional violation and that the law governing the circumstances was clearly established at the time of the violation. *Youmans v. Gagnon,* 626 F.3d 557, 562 (11th Cir. 2010).

To determine if law was "clearly established," a court looks for "fair warning" to officials that the conduct violates a constitutional right. *Gaines v. Wardynski,* 871 F.3d 1203, 1208 (11th Cir. 2017) (citation omitted). Fair warning may be established

by: (1) a materially similar case that has already been decided; (2) a broader, clearly established principle that should control the novel facts of the case; or (3) a showing that the conduct so obviously violates the constitution that prior case law is unnecessary. *Id.* (citation omitted).

The Amended Complaint recognizes that the federal regulations require the temporary suspension of Medicaid payments following a credible allegation of fraud, along with a fraud referral to MFCU. Doc. 17, at 15; *see also* 42 C.F.R. § 455.23. Zen has not alleged facts to sufficiently show the payment suspension and fraud referral were somehow unlawful. *See Carruth v. Bentley,* 942 F.3d 1047, 1061 (11th Cir. 2019) (finding defendants were entitled to qualified immunity when it was not clearly established that the agency's decision to place the credit union in conservatorship violated due process where the state law provided for judicial review of conservatorship decisions).

Zen has likewise failed to establish that the law as it existed at the time provided "fair warning" to Bennett that her alleged conduct somehow violated Zen's constitutional right to procedural due process. As explained *supra,* the Eleventh Circuit has not recognized a § 1983 claim under the Procedural Due Process Clause based on retaliation. In addition, the prosecutorial vindictiveness cases on which Zen relies have *never* been extended beyond the criminal law context. Likewise, the unconstitutional conditions doctrine cases cited by Zen do not address procedural

due process claims and the doctrine has been characterized as undeveloped, uncertain, and difficult to apply. *See Planned Parenthood Ass'n of Hidalgo Cty. Texas, Inc. v. Suehs,* 692 F.3d 343, 349 (5th Cir. 2012) ("Courts often struggle with when to apply the unconstitutional conditions doctrine, and the doctrine's contours remain unclear despite its long history.").

Accordingly, the contours of the law surrounding Zen's claim in Count I are far from clear, such that a reasonable official would understand that the alleged actions taken by Bennett violated Zen's procedural due process rights. *See Willingham v. Loughnan,* 321 F.3d 1299, 1301 (11th Cir. 2003); *see also Gaines,* 871 F.3d at 1210 (explaining that "if reasonable people can differ on the lawfulness of a government official's actions despite existing case law, he did not have fair warning and is entitled to qualified immunity"). Bennett is therefore entitled to qualified immunity on Count I.

## II.    Count II of the Amended Complaint Failed to State a Section 1983 Claim for Retaliation Under the First Amendment

To state a claim for retaliation under the First Amendment, the plaintiff must allege: (1) that his speech or act was constitutionally protected; (2) that the defendant's retaliatory conduct adversely affected the protected speech; and (3) that there is a casual connection between the retaliatory actions and the adverse effect on speech. *Bennett v. Hendrix,* 423 F.3d 1247, 1250 (11th Cir. 2005) (citations omitted);

30

*see also DeMartini v. Town of Gulf Stream,* 942 F.3d 1277, 1289 (11th Cir. 2019). The only element at issue here is whether Zen's speech or petition activity was constitutionally protected. *See* In. Br., at 41. In dismissing Count II, the district court found that Zen did not speak as a citizen on a matter of public concern and, therefore, its speech was not protected under the First Amendment. Doc. 32, at 12. The district court's holding must be affirmed.

**A.    The Public Concern Requirement and *Pickering* Balancing Test Apply to Zen as an Independent Contractor Under Both the Petition and Speech Clauses of the First Amendment**

Zen first argues that the district court erred by applying the "*Pickering* balancing and the public concern test" to Zen as an independent contractor under both the Petition and Speech Clauses of the First Amendment. In. Br., at 42. Zen specifically claims that the district court conflated the petition and speech analysis, applying the test without regard to the particular circumstances. *Id.* at 44. Zen's argument is without merit.

In *Pickering v. Board of Education of Township High School District 205, Will County, Illinois,* 391 U.S. 563 (1968), the Supreme Court recognized that the First Amendment's protections apply to public employees who speak as citizens addressing matters of public concern. The Court recognized, however, the interests of the government as an employer in regulating the speech of its employees, and determined that it must balance the interests of the employee as a citizen commenting

on matters of public concern with the interest of the state as an employer in promoting the efficiency of the public service it performs through its employees. *Pickering,* 391 U.S. at 568.

Subsequently, the Court in *Connick v. Myers,* 461 U.S. 138 (1983) refined *Pickering* by establishing a multi-stage analysis to address First Amendment claims by public employees. First, it must be determined if the expression was made by a citizen involving a matter of public concern.[11] *See Connick,* 461 U.S. at 146. This part of the analysis may be referred to as the "public concern test" or "public concern requirement." If the speech addresses matters of public concern, then the employee's First Amendment interests must be balanced against the state's interests as an employer in promoting the efficiency of the public service it performs through its

---

[11] The Supreme Court in *Garcetti v. Ceballos,* 547 U.S. 410, 421-22 (2006) seemingly separated the analysis further by looking at: (1) if the speaker was acting as a private citizen; and (2) if the speech involved a matter of public concern. In that case, the Court held that because the speaker was acting in his official duties as a Deputy District Attorney, he was not speaking as a citizen and was not afforded protection under the First Amendment. *Id.* The Appellants' brief focuses on the public concern requirement, and scantly references the "capacity-of-speaker inquiry," arguing only that the inquiry is inapplicable. *See* In. Br., at 55, n.4. Nevertheless, the district court correctly concluded that Zen was not acting as a private citizen when it filed the Petition and Motion, but was instead acting in its capacity as a medical provider, challenging an overpayment decision by AHCA directly related to the services it provides in that capacity. *See* Doc. 32, at 12 (citing *BMI Salvage Corp. v. Manion,* 366 F. App'x 140, 144 (2010) which held the plaintiff did not act as a private citizen when the statements at issue were not made to bring to light any wrongdoing or to improve the government, but were made to air the individual grievances as the lessee of an aircraft parking space); *see also infra* discussing the form, content, and context of the Petition and Motion.

employees. *See Connick,* 461 U.S. at 149; *see also Goffer v. Marbury,* 956 F.2d 1045, 1049 (11th Cir. 1992) (citation omitted) (explaining the two-step analysis espoused in *Connick*). This part of the analysis is colloquially referred to as the *Pickering* balancing test. *See City of San Diego, Cal. v. Roe,* 543 U.S. 77, 84 (2004).

*Pickering* and *Connick* specifically addressed First Amendment claims by public employees under the Speech Clause of the First Amendment. However, the analysis has since been extended to claims by independent contractors and claims under the Petition Clause. *See Bd. of Cty. Comm'rs, Wabaunsee Cty., Kan. v. Umbehr,* 518 U.S. 668 (1996); *Borough of Durya, Pa. v. Guarnieri,* 564 U.S. 379 (2011). In *Umbehr,* the Supreme Court rejected a bright line rule which would grant the government "*carte blanche*" to terminate independent contractors for exercising their speech rights, recognizing the similarities between government contractors and employees and the respective interest of each under the First Amendment. *Umbehr,* 518 U.S. at 678-79. The Court concluded that any differences between government employees and contractors could be sufficiently accommodated by the "proper application of the *Pickering* balancing test." *Id.* at 678. Then, in *Guarnieri,* the Court applied the analysis to a claim under the Petition Clause, finding the "right to speak and the right to petition are 'cognate rights.'" *Guarnieri,* 564 U.S. at 388 (citation omitted). The Court held that the "substantial government interests that justify a cautious and restrained approach to the protection of speech by public employees

are just as relevant when public employees proceed under the Petition Clause." *Id.* at 389. Because the analysis applies to both claims by independent contractors and claims under the Petition Clause, the district court appropriately applied the test in evaluating Zen's claim as alleged in Count II.

Zen contends, however, that the district court's opinion did not cite to cases where the test was applied to a "retaliation claim grounded in the Petition Clause brought by an independent contractor." In. Br., at 44. While neither the Supreme Court nor the Eleventh Circuit have addressed the exact issue, several circuit courts have held that an independent contractor bringing a claim under the Petition Clause must meet the public concern requirement. *See, e.g., Lakner v. Lantz,* 547 F. App'x 13, 16 (2d Cir. 2013) (finding independent contractors, like public employees, must demonstrate their activity touched on a matter of public concern to be entitled to First Amendment protection under the Petition Clause); *L.L. Nelson Enters., Inc. v. Cty. of St. Louis, Mo.,* 673 F.3d 799, 808 (8th Cir. 2012) ("When the government takes adverse action against a public employee, an independent contractor, or another actor with whom the government has a comparable pre-existing commercial relationship, the First Amendment is implicated only when the speech or petition that motivated the retaliation involves a matter of public concern."); *Glover v. Mabrey,* 384 F. App'x 763, 776 (10th Cir. 2010) (holding "the public concern requirement applies equally to a public contractor's retaliation claim based on the

right to petition"); *Heritage Constructors, Inc. v. City of Greenwood, Ark.,* 545 F.3d 599, 602 (8th Cir. 2008) (affirming summary judgment in favor of the City on a Petition Clause claim brought by a public contractor).[12] The public concern requirement should likewise apply here.

Zen attempts to avoid the proper application of the public concern requirement to its claim by arguing that "none of the recognized government interests in controlling public employee speech and petition activity to 'promot[e] the efficiency of the public services it performs through its employees' – one of the two *Pickering* balancing factors – applies." In. Br., at 46. Zen's argument puts the cart before the horse. As explained above, the threshold question to be addressed is whether Zen's petition or speech activity touched on a matter of public concern. *Goffer*, 956 F.2d at 1049. Only if the activity relates to a matter of public concern does the court examine the "*Pickering* balancing factors," which requires the court to balance the speaker's interest in making the statement against the "interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Rankin v. McPherson,* 483 U.S. 378, 388 (1987) (citation omitted).

Nevertheless, Zen contends that the state's interest here is "vanishingly small" because: (1) Zen does not speak for the government; (2) an outside observer could

---

[12] *But see Gable v. Lewis,* 201 F.3d 769 (6th Cir. 2000) (rejecting the application of the public concern test to petitioning activity by a private business woman who supplied services to a government agency).

not confuse Zen's speech for that of the state; (3) AHCA has no interest in maintaining a harmonious working environment and relationship with Zen like it would with a government employee; and (4) Zen works at a "greater remove" from the government. In. Br., at 46-48. These exact arguments were made by the plaintiff in *Umbehr* in an effort to preclude the application of the public concern requirement to the independent contractor in that case. *Umbehr,* 518 U.S. at 676-77. In holding the public concern requirement did apply to the claims by an independent contractor, the Court in *Umbehr* explained that these differences may be "accommodated by applying our existing framework for government employee cases to independent contractors." *Id.* at 677. In particular, the differences between government employees and contractors may be addressed by the "fact-sensitive and deferential weighing of the government's legitimate interests" in the *Pickering* balancing test— a step that occurs *after* it is determined whether the speech involves a matter of public concern. *Id.* at 677. Ultimately, the existence (or nonexistence) of the state's interest in controlling Zen's speech, along with Zen's purported First Amendment interests, have no bearing on whether Zen's activity must involve a matter of public concern.[13] *See Roe,* 543 U.S. at 84 (holding that because the speech did not qualify as a matter of public concern, the *Pickering* balancing test did "not come into play").

---

[13] Even if the Court were to proceed to the *Pickering* balancing test, Zen's contention that AHCA's interest is "vanishingly small" is without merit. AHCA has a clear statutorily mandated and compelling interest in preventing fraud within the Medicaid

Lastly, Zen, a Medicaid contractor, attempts to compare itself to a licensee as "private citizens regulated by state administrative agencies," or an inmate petitioning to avoid punishment or challenging the conditions of his confinement. In. Br., at 48-49. Zen even argues that it "acted as a private citizen in petitioning for administrative review." *Id.* at 49. Zen's argument must be rejected. Below, Zen conceded that it must "be treated as an independent contractor." Doc. 24, at 6; *see also* Doc. 32, at 12 (noting the parties did not dispute that Zen is an independent contractor). Indeed, the Amended Complaint plainly alleges that Zen contracted with the government to provide Medicaid services pursuant to a Non-Institutional Medicaid Provider Agreement. Doc. 17, at 6.

Zen cannot now assert that it should be treated as anything other than an independent contractor. *Access Now, Inc.,* 385 F. 3d at 1331 (explaining an issue raised for the first time on appeal will not be considered). Nor can Zen be reasonably compared to a licensee who petitions to challenge allegations in an administrative complaint or a prisoner who alleges he was retaliated against because he filed a grievance challenging the conditions of his imprisonment. *See Riley's Am. Heritage Farms v. Elsasser,* 29 F.4th 484, 497 (9th Cir. 2022) (distinguishing a vendor who

---

program and statements like those made by Zen, which allege that AHCA is failing in its duties, impacts AHCA's interest in achieving its goals to combat fraud effectively and efficiently. AHCA's interests in preventing Medicaid fraud substantially outweigh Zen's interest in challenging the overpayment demand in the FAR.

had a contract with the government from a regulated entity that is a licensee); *amended and superseded on other grounds,* 32 F.4th 707 (9th Cir. 2022). Accordingly, the district court was correct to find that Zen's First Amendment claim in Count II must be dismissed for its failure to meet the requisite public concern threshold.

**B.    Zen was Not Speaking or Petitioning as a Citizen on a Matter of Public Concern**

Zen contends that even if the public concern requirement applies, the district court erred in finding that Zen's activity addressed a matter of public concern. In. Br., at 50. In particular, Zen argues that the district court failed to analyze the "content, form, and context" of the statements and instead relied on "empty labels and self-serving conclusory characterizations." *Id.* Zen's argument is without merit and must be rejected.

Whether speech or a petition relate to matters of public concern depends on the "content, form, and context" of the petition or speech "as revealed by the whole record." *Connick,* 461 U.S. at 147-48. The court looks at: "whether the 'main thrust' of the speech in question is essentially public in nature or private, . . . whether the speech was communicated to the public at large or privately to an individual, . . . and what the speaker's motivation in speaking was." *Mitchell v. Hillsborough Cty.,* 468 F.3d 1276, 1283 (11th Cir. 2006) (internal citations omitted). The content is the

"most important factor" in determining if the speech touches on a matter of public concern. *Id.* at 1284 (citation omitted). In evaluating content, courts look to "whether the speech communicates a 'subject of legitimate news interest . . . a subject of general interest and of value and concern to the public at the time." *Id.* (citation omitted).

The forum in which the petition or speech is made is also relevant. *Guarnieri,* 564 U.S. at 398. For example, a "petition filed with an employer using an internal grievance procedure in many cases will not seek to communicate to the public or to advance a political social point of view beyond the employment context." *Id.* Similarly, the failure of the speaker to take affirmative steps to remedy, or inform the public at large, about the problems with which they are concerned, undermines an argument that the speech touches on a matter of public concern. *Kurtz v. Vickrey,* 855 F.2d 723, 729 (11th Cir. 1988); *see also Morgan v. Ford,* 6 F.3d 750, 754 (11th Cir. 1993) (explaining the court can consider the speaker's attempts to make the concerns public).

Under this framework, the district court correctly concluded that Zen's Petition for Administrative Hearing did not involve matters of public concern. The content of the Petition, which spans no more than three pages, is directed at AHCA's determination that Medicaid payments were made for services rendered by Zen's behavior assistants who did not meet the requisite qualifications. Doc. 24-1, at 2-3.

The focus of the Petition is to challenge AHCA's overpayment determination and imposition of a fine against Zen. *Id.* at 3. With respect to its context, the Petition was filed following AHCA's audit of Zen and resulting FAR. *See generally* Doc. 24-1. Simply stated, the Petition is devoid of any value to a matter of public concern. *See Alves v. Bd. of Regents of the Univ. Sys. Of Ga.,* 804 F.3d 1149, 1166-67 (11th Cir. 2015) (holding a memorandum did not touch on matters of public concern when it dealt with individualized grievances and made only sweeping and vague references to any adverse impact on client care or public safety concerns).

Zen's attempt to frame the Petition as one that focuses on AHCA's purported conduct pursuant to a "prohibited non-rule policy," must be rejected. *See* In. Br., at 51. The Petition makes nothing more than a vague reference to an unpromulgated rule and provides no explanation or facts in support. Doc. 24-1, at 3. Pursuant to section 120.56(4)(a), Florida Statutes, a party seeking an administrative determination that an agency statement amounts to an unadopted rule must describe the challenged statement and include facts sufficient to show that the statement constitutes an unadopted rule. The Petition includes none of that information and Zen has never sought to amend the Petition. As such, Zen cannot claim that the Petition somehow initiated a rule challenge which may impact other Medicaid providers. The Petition fails the public concern requirement.

Likewise, Zen's Motion for Sanctions does not address matters of public concern. With respect to context, the Motion, like the Petition, stems from AHCA's audit and resulting FAR and overpayment demand as it relates only to Zen. Doc. 17-2, at 2. And, like the Petition, the content of the Motion challenges AHCA's decision that Zen's behavior assistants did not meet the qualifications to bill for services. *Id.* The Motion's most oft-repeated complaints were that AHCA improperly determined that services provided by Zen (and only Zen) were not covered by Medicaid. *See generally* Doc. 17-2. In that regard, the Motion includes 27 pages of argument that each of Zen's behavior assistants were qualified to bill for services. *Id.* at 15-42. The content and context of the Motion do not involve a matter of public concern. *See Alves*, 804 F.3d at 1166.

Even if the Motion was found to address topics of general interest to the public or other providers, that alone does not guarantee the Motion First Amendment protection. *Morris v. Crow,* 142 F.3d 1379, 1381 (11th Cir. 1998). This Court has explained that to adopt such a rule "would mean that virtually every remark—and certainly every criticism directed at a public official—would plant the seed of a constitutional case." *Id.* at 1382 (quotation omitted). Instead, the purpose and motivation of the expression are relevant. It is clear that the purpose of the Motion was not to make certain matters public, but to effectuate the private interest of Zen

in the recovery of attorney's fees.[14] Doc. 17-2, at 46 ("Under the circumstances described above the Agency must be ordered to pay Zen Group's reasonable attorney's fees for forcing Zen Group to defend against the Agency's legally and factually baseless claims.").

Lastly, the forum is dispositive. The Motion *was never filed in a public forum* but was only served to AHCA. Doc. 17, at 11-12. And, there is no allegation that Zen has since attempted to make the matters discussed within the Motion public. *Kurtz,* 855 F.2d at 729 (holding the officer's profession of public concern lost force when he took no steps to inform the public at large about the problems). Because the Motion is comparable to an internally filed grievance that does not seek to communicate matters to the public, it warrants no First Amendment protections. *Guarnieri,* 564 U.S. at 398.

Zen's attempt to expand the reach of its petition activity must also be rejected. Zen argues that its activity "centered on a subject the Supreme Court has held is quintessentially a matter of public concern," citing to *Harris v. Quinn,* 573 U.S. 616 (2014). In. Br., at 54. Zen's reliance on *Harris* is misplaced. That case, in *dicta,* noted that union speech in favor of increased wages and benefits for personal

---

[14] Zen's characterization of its Motion as a "rule challenge" must be rejected. In. Br., at 53. Because the Motion was not filed (Doc. 17, at 10, 11-12), the Division of Administrative Hearings could not declare the existence (or nonexistence) of an unadopted rule, as only an Administrative Law Judge could enter a final order in that regard. §§ 120.56(4)(d)-(e), Fla. Stat.

assistants under a Medicaid program would mean increased expenditures under the Medicaid program and that it would be "impossible to argue that the *level of Medicaid funding* (or, for that matter, state spending for employee benefits in general) is not a matter of great public concern." *Harris,* 573 U.S. at 654 (emphasis added). Neither Zen's Petition nor Motion touches on Medicaid funding levels.

Likewise, Zen's argument that the content of its speech "was the subject of serious media coverage," and therefore involved matters of public concern, is without merit. *See* In. Br., at 55. First, whether something is the subject of "serious media coverage" is not the appropriate standard to be applied. Instead, the relevant inquiry is whether the activity is the subject of "legitimate news interest," which means the "subject of general interest and of value and concern to the public at the time of publication." *See Roe,* 543 U.S. at 83-84. Second, Zen points only to a singular news article which cannot logically be considered either "serious media coverage" or the subject of "legitimate news interest." *In. Br.* at 55; *compare with Rankin,* 483 U.S. at 386-87 (finding the statement dealt with a matter of public concern when it was made in the course of a conversation related to the policies of the President's administration and came on the heels of a news bulletin regarding an attempt on the life of the President).

Reviewing the content, form, and context of the Petition and the Motion, it is clear that neither involve matters of public concern for which the First Amendment's

protections would apply. As such, the district court's order dismissing Count II should be affirmed.

### C.    Defendant Bennett is Entitled to Qualified Immunity

Even if this Court concludes that Zen has stated a claim for relief in Count II, the Count must still be dismissed against Bennett under the doctrine of qualified immunity. Bennett's discretionary conduct which forms the basis for Count II is the same as alleged in Count I. *Compare* Doc 17, at 38-39 *with* 42. Zen has again failed to meet its burden in showing that Bennett committed a constitutional violation and that the law governing the circumstances was clearly established at the time of the violation. *Youmans,* 626 F.3d at 562.

Indeed, Zen has not alleged facts to show the payment suspension and fraud referral was somehow unlawful. *See Carruth,* 942 F.3d at 1061. As explained *supra,* the Amended Complaint concedes that the federal regulations require the suspension of Medicaid payments following a credible allegation of fraud, as well as a fraud referral to MFCU. Doc. 17, at 15; *see also* 42 C.F.R. § 455.23.

Further, Zen has failed to establish that the law as it existed at the time provided "fair warning" to Bennett that her alleged conduct violated Zen's First Amendment rights. While the Eleventh Circuit has not directly applied the public concern requirement to a claim under the Petition Clause brought by an independent contractor, the Supreme Court has applied the requirement separately to independent

contractors and claims under the Petition Clause. *See Umbehr,* 518 U.S. at 676-77; *Guarnieri,* 564 U.S. at 388. And, the majority of circuits have determined that the public concern requirement applies to an independent contractor's claim under the Petition Clause. *See Lakner,* 547 F. App'x at 16; *Heritage Constructors, Inc.,* 545 F.3d at 602; *Glover,* 384 F. App'x at 775; *L.L. Nelson Enterprises, Inc.,* 673 F.3d at 808.

Further, precedent establishes that speech and petition activity like Zen's, which address individual grievances, which is not lodged in a public forum, or which may only generally impact the public, may be insufficient to constitute a matter of public concern. *See Guarnieri,* 564 U.S. at 398; *Kurtz,* 855 F.2d at 729; *Alves,* 804 F.3d at 1166. As such, a reasonable public official could conclude that Zen's Petition and Motion failed to address a matter of public concern. *See Gaines,* 871 F.3d at 1210. Therefore, Defendant Bennett is entitled to qualified immunity under Count II.

## CONCLUSION

For the reasons above, Appellees request that this Court affirm the district court's final judgment.

Respectfully submitted this 22nd day of June, 2022.

*/s/ Christopher B. Lunny*
CHRISTOPHER B. LUNNY (FBN 0008982)
Email: clunny@radeylaw.com
THOMAS A. CRABB (FBN 25846)
Email: tcrabb@radeylaw.com
LAURA M. DENNIS (FBN 91549)
Email: ldennis@radeylaw.com
Radey Law Firm
301 S. Bronough Street, Suite 200
Tallahassee, Florida 32301
(850) 425-6654 Telephone
(850) 425-6694 Facsimile

*Counsel for Appellees*

46

## CERTIFICATE OF COMPLIANCE

1.    I certify that this brief complies with the type-volume limitations of Federal Rule of Appellate Procedure 32(a)(7)(B)(i) because it contains 11,387 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f), as calculated by the word-counting feature of Microsoft Office Word 2010.

2.    I certify that this brief complies with the typeface requirements of Fed. R. App. P.32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally-spaced typeface using Microsoft Word in 14-point Times New Roman.

*/s/ Christopher B. Lunny*
CHRISTOPHER B. LUNNY

47

## CERTIFICATE OF SERVICE

I certify that the foregoing was filed electronically on June 22, 2022, using the

Court's CM/ECF System which will send a notice of electronic filing to the

following:

THE HEALTH LAW OFFICES
OF ANTHONY C. VITALE P.A.
Anthony C. Vitale, Esq.
Florida Bar No. 249841
2333 Brickell Avenue, Suite A-1
Miami, Florida 33129
(305) 358-4500 telephone
(305) 358-5113 facsimile
 avitale@vitalehealthlaw.com

ELLSWORTH LAW FIRM, P.A.
Sean M. Ellsworth, Esq.
Florida Bar No. 039845
1000 5th Street, Suite 223
Miami Beach, Florida 33139
(305) 535-2529 telephone
(305) 535-2881 facsimile
sean@ellslaw.com