# In The United States Court Of Appeals
# For The Eleventh Circuit

---

**ZEN GROUP, INC.,**
**CARLOS OTAMENDI,**

*Plaintiffs - Appellants,*

**v.**

**STATE OF FLORIDA AGENCY FOR HEALTH**
**CARE ADMINISTRATION;**
**SECRETARY, STATE OF FLORIDA,**
**AGENCY FOR HEALTH CARE ADMINISTRATION;**
**KELLY BENNETT,**
individually and in her official capacity as
Chief of the Office of Medicaid Program
Integrity within the State of Florida,
Agency for Health Care Administration;
**SHEVAUN HARRIS,**

*Defendants - Appellees.*

---

APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN
DISTRICT OF FLORIDA, 1:20-CV-23218 (HON. DARRIN P. GAYLES)

---

## PLAINTIFFS-APPELLANTS' REPLY BRIEF

---

Sean M. Ellsworth
ELLSWORTH LAW FIRM, PA
1000 5th Street Suite 223
Miami Beach, FL  33139
(305) 535-2529

Anthony C. Vitale
THE HEALTH LAW OFFICE OF
ANTHONY C. VITALE, PA
2333 Brickell Ave Suite A1
Miami, FL  33129
(305) 358-4500

*Counsel for Plaintiffs-Appellants*

*Gibson*Moore Appellate Services, LLC
206 East Cary Street ♦ P.O. Box 1406 (23218) ♦ Richmond, VA  23219
(804) 249-7770 ♦ www.gibsonmoore.net

## <u>CERTIFICATE OF INTERESTED PERSONS AND<br>CORPORATE DISCLOSURE STATEMENT</u>

1.  Bennett, Kelly A., Appellee

2.  Crabb, Thomas A., Counsel for Appellees

3.  Dennis, Laura M., Counsel for Appellees

4.  Ellsworth Law Firm, P.A., Counsel for Appellants

5.  Ellsworth, Sean, Counsel for Appellants

6.  Gayles, Darrin P., United States District Court Judge

7.  Harris, Shevaun, Former Acting Secretary for State of Florida Agency for Health Care Administration, Defendant in District Court

8.  Lunny, Christopher B., Counsel for Appellees

9.  Marstiller, Simone, Current Secretary State of Florida Agency for Health Care Administration

10. Mayhew, Mary C., Former Secretary for State of Florida Agency for Health Care Administration, Defendant in District Court

11. Otamendi, Carlos, Appellant

12. Radey Thomas Yon & Clark, P.A., Counsel for Appellees

13. State of Florida, Agency for Health Care Administration, Defendant in District Court

14. The Health Law Offices of Anthony C. Vitale, P.A., Counsel for Appellants

15. Vitale, Anthony C., Counsel for Appellants

16. Zen Group, Inc., Appellant

## <u>CERTIFICATIONS</u>

Pursuant to 11th Circuit Rule 26.1-2(c) and 26.1-3(b), Appellants certify that they believe the above this is complete and they are not aware of any publicly traded company or corporation that has an interest in the outcome of this appeal.

Respectfully submitted,

**ELLSWORTH LAW FIRM, P.A.**
Sean M. Ellsworth, Esq.
Florida Bar No. 039845
1000 5th Street, Suite 223
Miami Beach, Florida 33139
(305) 535-2529 telephone
(305) 535-2881 facsimile
sean@ellslaw.com

*/s/  Sean M. Ellsworth*
Sean M. Ellsworth

# **TABLE OF CONTENTS**

**Page**

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE
DISCLOSURE STATEMENT ................................................................i

TABLE OF CONTENTS ..................................................................... iii

TABLE OF AUTHORITIES ..................................................................iv

REPLY BRIEF ....................................................................................1

    I.    Count I of The AC States A Section 1983 Claim Under The
        Fourteenth Amendment ............................................................1

    II.    Count II of The AC States A Section 1983 Claim Under The First
        Amendment ...........................................................................13

        A.    The Public Concern Test Should Not Be Extended To
                Government Contractors Raising Petition Clause Claims.............13

        B.    The Speech and Petition Activity Alleged In The AC
                Touches On Matters Of Public Concern ........................................14

    III.    Appellees Are Not Entitled to Qualified Immunity On Either
        Count of the AC.......................................................................26

    IV.    Conclusion ..............................................................................28

CERTIFICATE OF COMPLIANCE .......................................................29

CERTIFICATE OF SERVICE ...............................................................29

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Access Now, Inc. v. Southwest Airlines Co.*,
  385 F. 3d 1324 (2004) ....................................................................5

*Bordenkircher v. Hayes*,
  434 U.S. 357 (1978)...............................................................10, 12

*Cook v. Gwinnett Cnty. Sch. Dist.*,
  414 F.3d 1313 (11th Cir. 2005) ...........................................17, 23

*Davis v. Bailynson*,
  268 So. 3d 762 (Fla. 4th DCA 2019)...........................................24

*Gaines v. Wardynski*,
  871 F.3d 1203 (11th Cir. 2017) ...................................................27

*Givhan v. W. Line Consol. Sch. Dist.*,
  439 U.S. 410 (1979)......................................................16, 17, 23

*Kurtz v. Vickrey*,
  855 F.2d 723 (11th Cir. 1998) .....................................................17

*New York State Nat'l Org. for Women v. Pataki*,
  261 F.3d 156 (2d Cir. 2001) ...........................................................7

*O'Laughlin v. Palm Beach County*,
  30 F.4th 1045 (2022) ...........................................................*passim*

*Richard v. Perkins*,
  373 F. Supp. 2d 1211 (D. Kan. 2005) .......................................8, 9

*Ryan v. Blackwell*,
  979 F.3d 519 (6th Cir. 2020) .......................................................12

*United States v. Goodwin*,
  457 U.S. 368 (1982)...............................................................10, 12

*United States v. Schneider*,
    853 F. App'x 463 (11th Cir. 2021)..........................................................10, 12

*Vance v. Barrett*,
    345 F.3d 1083 (9th Cir. 2003) ................................................................9, 11

**Statutes**

42 U.S. Code § 1983 ........................................................................*passim*

Fla. admin. code 59G-4.125 ................................................................19

Fla. Stat. § 57.105 ........................................................................24, 25

**Constitutional Provisions**

U.S. Const. amend. I ........................................................................*passim*

U.S. Const. amend. VI ........................................................................11

U.S. Const. amend. XIV ................................................................*passim*

## REPLY BRIEF

Unable to refute the meritorious legal arguments in the Opening Brief, Appellees hide, twist, and misrepresent the facts alleged in the Amended Complaint ("AC") – in contravention of the review standard on a motion to dismiss – urge this Court to ignore compelling arguments on fallacious claims of waiver, and double down on their strategy of attempting to obscure and confuse the straightforward issues presented here. For the reasons articulated here and in the Opening Brief, the district court order dismissing Counts I and II of the AC must be reversed.

### I.    Count I of The AC States A Section 1983 Claim Under The Fourteenth Amendment

Because Appellees mischaracterize the AC's allegations and fail to accept them as true, it is necessary to clarify the allegations relating to Count I. Most basically, Count I alleges Defendant Bennett and others at the Agency for Health Care Administration ("AHCA" or "Agency") violated Section 1983 by depriving Zen and Otamendi of their Fourteenth Amendment rights in January 2020, when Bennett issued against Zen an *unfounded and illegal suspension of Medicaid payments* and baseless fraud referral *in retaliation* for Zen's 2019 exercise of its clearly-established due process right to an administrative hearing to challenge an AHCA Final Audit Report ("FAR"), through which the Agency sought to recoup over $1.3 million in Medicaid payments and to fine Zen over $276,000. *See* Opening Brief ("OB") at 16-18; DE:17 at 36-41 (¶¶121-123, 126-127, 129-130, 138, 140-143); *see also* DE:17-1 at 1-4.

The district court dismissed Count I, erroneously concluding Zen and Otamendi failed to allege a constitutionally-protected property right in the money the Agency's sought to take from Zen through the FAR.  As the Opening Brief demonstrates, the district court erred in critical and obvious ways.  First, the court failed to consider the more-than-quarter-million-dollar fine the Agency attempted to impose as separate and distinct from the Agency's effort to recoup of over $1.3 million dollars in Medicaid payments.  *See* OB at 33-37.  Second, the district court also erred by concluding Zen and Otamendi had no constitutionally-protected property right in the more than $1.3 million in purported overpayments.  *See* OB at 34 n.2.

With no legitimate merits argument that Zen and Otamendi lacked a due process right to challenge the enormous fine the Agency attempted to impose, Appellees urge this Court to ignore this fundamental error by asserting Zen and Otamendi waived the issue.  *See* AB at 16.  As an initial and conclusive matter, Zen and Otamendi did raise this argument below.  First, in summarizing Count I's allegations in response to Appellees' Motion To Dismiss the AC ("MTD"), Zen and Otamendi argued they had a clearly established due process right to an administrative hearing to challenge AHCA's FAR "demanding Zen repay $1,376,226.46 of the Medicaid payments it earned . . . *and attempting to impose quasi-penal fines on Zen*, Doc. #17-1 at 2."  DE:24 at 3 (emphasis added).  Zen's and Otamendi's Opposition to Appellees' MTD ("MTD Opposition") continued:

As the AC summed it up at paragraph 135, Defendants' after-the-fact retaliatory conduct is:

> constitutionally indistinguishable from *if Bennett had presented Zen with the unconstitutional condition of giving up its due process rights to an administrative hearing to contest* any over-payment demand or *administrative fine imposed by AHCA* (here over $1.6 million) in exchange for Bennett not making an unsupported and false fraud referral to MFCU and/or in exchange for Bennett not issuing an improper suspension of Zen's Medicaid payments.

DE:24 at 3 (emphasis added).

As such, the undeniable fact that the AC alleged Zen and Otamendi had a Fourteenth Amendment due process right to challenge AHCA's attempted *fine* – as distinct from AHCA's attempted recoupment – in an administrative hearing was raised in the MTD Opposition, and was plainly before the district court.

To be sure, discussion on this issue below was not voluminous.  That raises the second, and perhaps more important, point. Appellees, in the less-than-two-pages of discussion of Count I in their MTD, never clearly raised the argument that Zen and Otamendi lacked a property interest in the money the Agency attempted to obtain from Zen and Otamendi via the FAR – including recouping Medicaid payments and imposing a fine.

Consequently, the first time the issue was clearly presented to Zen and Otamendi was when the district court issued its erroneous order under appeal here. Appellees' entire argument below for dismissing Count I comprises five

3

paragraphs. *See* DE:20 at 9-11. Their first and main argument was that no Section 1983 action may lie for retaliation because of the exercise of Fourteenth Amendment rights. *Id.* at 10. Next, self-servingly reframing the AC's allegations, Appellees urged that "the funds truly at stake, if any, were the reimbursements AHCA *withheld* from Zen Group during the administrative proceedings and subsequent investigation," and that extra-circuit cases "have concluded that Medicaid providers have no property interest in ostensibly valid reimbursements *suspended* during the pendency of an investigation." *Id.* at 10-11 (emphasis added) (citing Florida law permitting "AHCA to *withhold* reimbursements during an administrative proceeding contesting an overpayment demand" and federal regulations requiring Florida "to *suspend* payments during a fraud investigation"). This was the sum total of Appellees' argument in support of dismissing Count I.

As detailed in the Opening Brief, Zen and Otamendi never challenged the *temporary withholding* of Medicaid payments during the administrative proceeding challenging the FAR or the *temporary suspension* of Medicaid payments triggered by Bennett's unlawful fraud referral. What the AC alleges is that Zen and Otamendi had a property interest in the money AHCA attempted to *permanently* take from them through the FAR – both the Medicaid payments properly earned and the money AHCA sought to take by fine – and that Zen and Otamendi therefore had a Fourteenth Amendment due process right to an administrative

hearing to challenge the *permanent* deprivation.  Appellees never challenged these allegations in their MTD.

It was not until the district court delivered its erroneous order that the issue of whether Zen and Otamendi had any property rights in the money AHCA attempted to take *permanently* materialized for the first time.  The district court vaguely raised the issue itself, quoting a Middle District of Florida case finding the "contingent nature" of Medicare payments means healthcare providers lack a constitutionally-protected property interest in the overpayment of federal funds, s*ee* DE:32 at 10, before quickly turning to the issue of Zen's and Otamendi's property interest in the *temporary withholding of payments* – the only issue actually raised in Appellees' MTD, *id.* at 10-11 (concluding "Because Zen Group's reimbursement payments are contingent on payment determinations by the Agency . . . Plaintiffs do not have a property interest in the payments.")

Zen and Otamendi could not possibly have predicted the district court would ignore its clear and unambiguous allegations in the AC, mistakenly frame their claim as one relating to the *temporary* withholding of payments, and reach beyond what Appellees argued in their MTD.  This Court's decision in *Access Now, Inc. v. Southwest Airlines Co.*, 385 F. 3d 1324, 1332 (2004), specifically provides that waiver will not bar any argument an appellant had no opportunity to raise in the district court.  To the extent Zen and Otamendi raised the issue only briefly below,

this exception to waiver clearly applies.  Moreover, refusing to consider Zen's clearly meritorious argument that it had an irrefutable constitutionally-protected property interest in the money AHCA attempted to take by fine would result in a miscarriage of justice.

In sum, Zen's and Otamendi's argument that they had a constitutionally-protected property interest in the money AHCA attempted to take by fine is properly before this Court.

Appellees next contend that even if Zen and Otamendi had a constitutionally-protected property right in their money that AHCA attempted to take by *fine*, Count I must fail because Zen and Otamendi "failed to allege the deprivation of such an interest by state action without due process of law" because AHCA ultimately imposed no fine. *See* AB at 29.  Yet again, Appellees' argument so misses the substance of Zen's and Otamendi's allegations it is difficult to know whether Appellees truly misunderstand the claim or simply misrepresent it in an attempt to confuse the Court into affirming or to gain some advantage.

To reiterate, Zen and Otamendi did not allege Appellees denied them the administrative process they were due to challenge the FAR.  Zen and Otamendi did not allege they were fined without due process in relation to the FAR.  What Zen and Otamendi clearly allege is that they were retaliated against for exercising their

due process right to challenge the FAR overpayment demand, including AHCA's attempt to recoup money Zen rightfully earned and to fine Zen.

Appellees also claim Zen had no constitutionally-protected interest in the more-than-$1.3-million in properly earned Medicaid payments AHCA attempted to permanently deprive them of through the FAR.  AB. at 26-28.  Appellees' argument betrays two fundamental flaws. First, as discussed, Zen and Otamendi claim a protected property interest only in ultimately retaining money it properly earned for services provided pursuant to a contract, not a property right to be free of a temporary withholding of the money.  Second, Appellees confuse *contingent* payments, which may be subject to recoupment if the Agency establishes they were paid in error or otherwise improper, and *discretionary* payments, to which a party may have no constitutionally-protected property interest. Unlike the payments at issue in the Second Circuit case Appellees rely on, Medicaid payments for necessary services properly rendered are not "contingent on the exercise of executive discretion," *see* AB at 27 (selectively quoting *New York State Nat'l Org. for Women v. Pataki*, 261 F.3d 156, 164 (2d Cir. 2001), but leaving out crucial context conveyed in next sentence of the opinion: "[A] constitutionally protected interest cannot arise from relief that the *executive exercises unfettered discretion* to award," (emphasis added) (internal quotation marks omitted)), but must be paid according to the contractual terms of the Medicaid provider agreement. No claim

can possibly be made that AHCA has "unfettered discretion" to recoup money from a Medicaid provider.  In sum, Zen and Otamendi had a constitutionally-protected property interest in all the money AHCA attempted to permanently deprive them of through the FAR.

Next, Appellees argue the Fourteenth Amendment does not prohibit state actors from outright and vindictive retaliation based on the exercise of a clearly-established due process right.  If this Court agrees, a state official could burden the right to due process by retaliating against any private citizen or government contractor who avails herself of the right to administrative review or by overtly telling a private citizen or government contractor that if they exercise their right to administrative review that state official will retaliate against them.

The Opening Brief demonstrates the Supreme Court and this Court have repeatedly rejected such a hollow conception of Fourteenth Amendment due process rights.  Appellees nevertheless baldly assert:  "A § 1983 claim under the Fourteenth Amendment may not be predicated on retaliation for the exercise of a procedural due process right."  AB at 30 (citing an overruled 2007 Northern District of Alabama case).  If this Court needs guidance from an old district court decision, it should look to *Richard v. Perkins*, 373 F. Supp. 2d 1211 (D. Kan. 2005), where a University of Kansas track athlete brought a due process retaliation action pursuant to Section 1983 against state officials (the KU athletic director and

8

track coach) for taking adverse actions against him in retaliation for his successfully appealing an earlier decision to terminate his scholarship. *See id.* at 1215-16. There, like here, the defendant "Perkins merely responds to plaintiff's claim that Perkins retaliated against him for exercising procedural due process rights by stating that he has not found any cases which recognize such a cause of action." *Id.* at 1218. The court succinctly rejected this facile argument: "Courts however, have recognized claims based on retaliation for exercise of procedural due process rights. *See, e.g., Vance v. Barrett,* 345 F.3d 1083 (9th Cir. 2003) . . . ." 373 F. Supp. 2d at 1218.

The *Richard* court had no problem identifying precedent in related cases establishing that the right to due process includes the right to be free from retaliation for exercising that right to due process. One of those cases, *Vance*, demonstrates the practical scope of due process rights, undistracted by labels, technicalities, and the hyper-formalism that characterize Appellees' argument here. In *Vance*, Judge O'Scannlain quickly disposed of the defendants' effort to avoid Section 1983 accountability by parsing constitutional anti-retaliation law too finely, stating: "Although there was no precedent specifically on point for the due process claim, our precedent is clear that prison officials could not retaliate against inmates for the exercise of their constitutional rights." 345 F.3d at 1094.

Appellees attempt to disparage Zen's and Otamendi's meritorious Opening Brief arguments regarding Count I by calling them "'alternative' theories of § 1983 liability," AB at 31, then applying formalistic labels in an effort to escape the clear import of controlling law.

As articulated in the Opening Brief, the right under the Due Process Clause to be free from retaliation for exercising due process rights was clearly recognized and established by the Supreme Court no later than 1982, and has been consistently respected in the federal courts since.  The Court could not have articulated more clearly, more broadly, or more generally the due process right to be free from retaliation for the exercise of statutory or constitutional rights: "To punish a person because he has done what the law plainly allows him to do is a due process violation 'of the most basic sort.' *Bordenkircher v. Hayes*, 434 U.S. 357, 363 . . . (1978)." *United States v. Goodwin*, 457 U.S. 368, 372–74 (1982) ("For while an individual certainly may be penalized for violating the law, he just as certainly may not be punished for exercising a protected statutory or constitutional right."); *see also United States v. Schneider*, 853 F. App'x 463, 469 (11th Cir. 2021).

Controlling law, thus, establishes it is "patently unconstitutional" and a clear violation of the *Due Process Clause* of the Fourteenth Amendment "of the most basic sort" when a state official takes adverse action against an individual in retaliation for his or her exercise of a right guaranteed by statute or the Constitution.

Appellees have no answer.  Instead, Appellees seize on the label of "prosecutorial vindictiveness" for this line of cases, claim Bennett and others AHCA defendants "have no authority to prosecute," and thereby try to shove Goodwin and its progeny back in the bottle, begging this Court ignore the plain import and clear lessons of these cases.  See AB at 31-33 & n.8.  However, the Goodwin line and myriad related circuit holdings are not predicated on the Fourth, Fifth, or Sixth Amendment rights, limited to the criminal context.  They are based on core principles of procedural due process under the Fourteenth Amendment, and generally applicable by their own terms.

As noted, the Vance court had no hesitation applying the Goodwin line to hold that a prisoner could maintain a Section 1983 claim against prison officials who retaliated against him for refusing to relinquish his Fourteenth Amendment procedural due process rights.  345 F.3d at 1093 (rejecting defense of qualified immunity for Fourteenth Amendment retaliation claim).

As discussed in the Opening Brief, to state a Section 1983 claim based on retaliation under the Fourteenth Amendment due process clause, a plaintiff must allege (1) the plaintiff exercised a right guaranteed by statute or the Constitution, (2) the defendant state official took adverse action against the plaintiff (3) in retaliation for exercise of the right guaranteed by statute or Constitution.  Appellees, unable to refute that the AC alleges each necessary element, assert these

elements were "manufactured" or "self-manufactured" by Zen and Otamendi. *Id.* at 31, 33. On the contrary, these elements are dictated directly by the text, context, and meaning of the Fourteenth Amendment, and the clear holdings, plain language, and unassailable constitutional principles announced in *Goodwin*, *Pearce*, *Bordenkircher*, and *Schneider*. *See also Ryan v. Blackwell*, 979 F.3d 519, 524 (6th Cir. 2020) (recognizing Section 1983 claim may be predicated on retaliation for exercise of Fourteenth Amendment rights and noting "[t]here are three elements to [such] a retaliation claim": (1) plaintiff engaged in protected activity, (2) defendant took an adverse action, and (3) "adverse action was taken (at least in part) because of the protected conduct.").

As detailed in the Opening Brief, uncontested by Appellees in their Answer, Count I of the AC clearly alleges all the essential elements of a Section 1983 claim due process claim. Zen and Otamendi alleged they engaged in conduct that is protected by the Constitution and by statute, that they availed themselves of this statutory and constitutional right, and that Bennett and other defendants took adverse action against them *because* they engaged in protected conduct. *See* OB at 40-42; *see also* DE:17 at 34-41(¶¶116-43).

In sum, the Fourteenth Amendment prohibits a state official from retaliating against an individual for the exercise of protected rights, including the exercise of due process rights, and Zen and Otamendi clearly alleged all the necessary

elements, thus Count I of the AC states a claim and the district court erred in dismissing it.

Finally, the Opening Brief details that Appellees' conduct is actionable under the unconstitutional conditions doctrine. See OB at 43-49.

Appellees' respond, in essence, by arguing that this is more a case of after-the-fact retaliation against Zen and Otamendi for the exercise of their Fourteenth Amendment due process rights than a case of forced relinquishment of a due process right prior to its exercise. AB at 34-38. Zen and Otamendi agree; as discussed, the anti-retaliation component of the Fourteenth Amendment is the most appropriate basis to reverse the district court's dismissal of Count I. For the reasons stated in the Opening Brief, at 43-49, proper application of the unconstitutional conditions doctrine merely provides another basis for reversal.

## II.    Count II of The AC States A Section 1983 Claim Under The First Amendment

### A.    *The Public Concern Test Should Not Be Extended To Government Contractors Raising Petition Clause Claims*

In the Opening brief, Zen and Otamendi demonstrate why this Court should not curtail First Amendment protections by extending the "public concern test" to Petition Clause cases brought by individuals or entities that contract with the state. *See* OB at 56-61.

Appellees concede that neither the Supreme Court nor this Court have ever required independent contractors bringing Petition Clause claims to meet the "public concern test." AB at 46. They urge this Court to do so now. *Id.* at 46-47 & n.12 (describing a circuit split on the issue with most courts of appeals imposing the requirement). For the reasons articulated in the Opening Brief, this Court should decline to extend public concern test to Petition Clause cases brought by government contractors.

### B.    The Speech and Petition Activity Alleged In The AC Touches On Matters Of Public Concern

If this Court does extend the test to the present context, proper consideration of the AC's allegations leave no doubt the speech and petition activity alleged in the AC touches on matters of public concern.

Appellees argue Zen's alleged speech and petition activity did not touch on matters of public concern, because (1) the content of Zen's Motion For Sanctions related primarily to the qualifications of its providers (ignoring more than 10 pages of scathing criticism Zen leveled at the Agency's administration of its Behavior Analysis program), (2) Zen was not motivated purely by a desire to criticize the Agency and shed light on its mismanagement of the Behavior Analysis program, and (3) Zen's Sanctions Motion "was never filed in a public forum but was only served to AHCA," thus "it warrants no First Amendment protections." AB at 50-55.

14

In April, this Court roundly rejected nearly identical arguments in precise and detailed analysis that applies with equal force here.  This Court's opinion in *O'Laughlin v. Palm Beach County*, 30 F.4th 1045 (2022), is a master class in the public concern test and its "three sub-factors—namely, the content, form, and context of the" speech under review.  *Id.* at 1051.  There, two captains in the Palm Beach County Fire Rescue Department and members of the local firefighters union sued the county alleging, *inter alia*, they were retaliated against for exercising their First Amendment rights when, as part of O'Laughlin's campaign for the union presidency they posted a comment on "an invitation-only Facebook page" "accusing the union's First Executive Vice President . . . of attempting to misuse, for his personal benefit, time that union members had donated to the Union Timer Pool." *Id.* at 1049.

The district court held "that plaintiffs' Facebook posts did not address a matter of public concern," because (1) the content of the speech addressed only misuse of union money and not the "misuse of public dollars or the Fire Department's budgeting priorities," (2) the speech was not "communicated to a [sic] public at large" but, rather, was "made in the form of posts and a comment in a private Facebook group," and (3) "that the 'context' suggested that plaintiffs 'were motivated to speak by personal interests in electing ... O'Laughlin to a union leadership position.'"  *Id.* at 1051.

15

This Court rejected this entire misguided analysis: "We disagree with the district court's reasoning with respect to each of the public-concern sub-factors and, thus, with its overall conclusion that plaintiffs' speech didn't address a matter of public concern." *Id.*

With regard to the *content* sub-factor, "undoubtedly the most important factor in assessing whether particular speech touches on a matter of public concern," this Court reiterated that "we look to whether the speech communicates a subject of legitimate news interest, a subject of general interest and of value and concern to the public at the time." *Id.* (internal quotation marks and brackets omitted). The Court described plaintiffs' statements as alleging a union leader had "misus[ed] member donated paid time-off for his own personal benefit and . . . Fire Department management was complicit in [the] wrongdoing," and concluded the statements were "sufficiently a subject of legitimate news interest to satisfy the public-concern requirement's content sub-factor." *Id.* at 1051-52 (internal quotation marks omitted).

With respect to "the public-concern requirement's *form* sub-factor," this Court held, "Contrary to [the district] court's apparent assumption, the law is well-settled that a public employee does not forfeit his free-speech rights simply because he chooses to communicate privately rather than publicly." *Id.* at 1052 (citing *Givhan v. W. Line Consol. Sch. Dist.*, 439 U.S. 410, 412-13 (1979), where a

16

unanimous Supreme Court "expressly reject[ed] the proposition that 'private expression of one's views is beyond constitutional protection'"). Emphasizing Eleventh Circuit decisions "[s]ince *Givhan*" that "have underscored the same theme"), this Court emphatically rejected the proposition that private communications cannot satisfy the public-concern test. 30 F.4th at 1052 (citing *Cook v. Gwinnett Cnty. Sch. Dist.*, 414 F.3d 1313, 1319 (11th Cir. 2005) ("The mere fact that her speech was made to coworkers or to supervisors rather than directed at the general public does not remove the speech from the category of public concern.") and *Kurtz v. Vickrey*, 855 F.2d 723, 727-30 (11th Cir. 1998) (privately communicated speech sufficiently addressed matter of public concern)).

With regard to the *context* sub-factor, this Court specifically and explicitly rejected the contention that because the statements at issue were "at least to some degree 'motivated' by [plaintiffs'] personal interest in the outcome of the union election," that the "election-related motivation deprives their speech of its publicness." *O'Laughlin*, 30 F.4th at 1053.  In short, this Court has held that speech whose content concerns public matters does lose its First Amendment protection merely because the speaker has a personal motivation or interest apart from pure criticism of a government employee, program, or function.

Notwithstanding this Court's clear dictates, Appellees advance every argument disapproved in *O'Laughlin*.  In many ways, the facts of this case – the

AC's allegations – establish Zen's and Otamendi's speech and petition activity

here centered on a matter of public concern more clearly than that considered in

*O'Laughlin*.[1]

The *content* of Zen's speech,[2] the most important consideration, clearly

focused on a matter of public concern, as noted in the Opening Brief, at 68-69 n.5.

This is most evident in the Sanctions Motion Zen served on AHCA during the

course of the administrative proceedings challenging the FAR.  As the AC alleges:

> Zen Group's Motion for Sanctions laid bare how, from the outset, the
> Behavior Analysis Services Coverage Policy was wholly mismanaged
> by AHCA to the detriment of Medicaid providers, Medicaid
> recipients, and Florida taxpayers. The Motion for Sanctions
> chronicled the grossly negligent manner in which AHCA rolled out
> the Behavior Analysis services program, the reimbursement rates it
> adopted, and its failure to staff the provider enrollment process
> adequately. This information was highly critical of AHCA. Unlike the
> specific evidence and arguments related to the qualifications of the
> Zen Group providers, this scathing criticism was of great interest to all
> Medicaid providers victimized by the Agency's arbitrary and
> capricious effort to apply a post hoc non-rule policy, and of general
> interest to the public. AHCA did not want this highly critical
> information made public. Indeed, AHCA had previously suspended an

---

[1] The district court failed to address the public-concern test and its sub-factors,
despite extensive argument from Zen and Otamendi.  Instead, the district court
dismissed Count II in conclusory fashion devoid of analysis, stating:  "In its
petition, Zen Group did not challenge the Behavior Analysis Services Program or Agency
policies generally; rather, Zen Group's petition pertained only to its
individual grievance. As such, Zen Group did not speak as a citizen on a matter of
public concern but in its capacity as a medical provider."  DE:32 at 12.  This was
clear error.

[2] The Opening Brief explains that Zen's Motion For Sanctions, served as part of
the administrative proceeding challenging the FAR, is properly considered both
petition activity and speech.  For convenience, it is referred to as "speech" here.

> AHCA employee for criticizing the Behavior Analysis services
> program. The facts set forth in the Motion for Sanctions were
> embarrassing for upper level management at AHCA,
> especially Defendant Bennett, and as set forth below [in the AC],
> prompted AHCA to scramble to settle this case (on extremely
> favorable terms for Zen Group) to avoid embarrassment.

DE:17 at 11 (¶ 31); *see also id.* at 10 (¶ 30), 2-3 (¶ 4).  Zen's Sanctions

Motion was attached to the AC, and it contains more than 10 pages of

unremitting criticism of the Agency.  *See* DE:17-2 at 4-15.  There, under the

section heading, "Agency Disarray In Interpreting And Applying Rule 59G-

4.125 Lead To Prohibited Arbitrary And Capricious Agency Action," Zen

criticized the "rudderless, ad hoc nature of the approval process for Behavior

Assistants and the lack of any clear rules or standards regarding their

required qualifications." *Id.* at 10.  Further, Zen's Sanctions Motion asserted:

> Rueful of the woefully inadequate way in which it rolled out the
> Behavior Analysis services program, the exorbitant
> reimbursement rates it adopted, and its failure to staff the
> enrollment process adequately, in 2018, the Agency sought to
> recoup payments it had made under the program by any means
> necessary.  The overpayment demand issued to Zen Group in
> this case is part and parcel of the Agency's effort.

DE:17-2 at 14.

The mismanagement of hundreds of millions of dollars by Florida's

biggest-budget Agency, and the Agency's arbitrary, capricious, and unlawful

attempts to claw money back from innocent Medicaid providers are clearly

"subject[s] of legitimate news interest," and certainly matters of public concern.

Appellees cannot argue otherwise.  Consequently, they simply ignore the allegations in the AC (such as those in paragraph 31 quoted above) and the statements in the Sanctions Motion attached as an exhibit to the AC. Instead, Appellees attack the three-page "Petition" Zen filed requesting an administrative hearing.  *See* AB at 51-52.  When Appellees mention Zen's Sanctions Motion, Appellees advance the disingenuous and dishonest claim, in derogation of the review standard, that "the content of the Motion challenges AHCA's decision that Zen's behavior assistants did not meet the qualifications to bill for services." *Id.* at 53.  Appellees further contend that the "Motion's most oft-repeated complaints were that AHCA improperly determined that services provided by Zen (and only Zen) were not covered by Medicaid," and that "the Motion includes 27 pages of argument that each of Zen's behavior assistants were qualified to bill for services." *Id.* (citing Sanctions Motion at 15-42).  That's it.  That's Appellees' entire discussion of Zen's Sanctions Motion.  The first claim is untrue to the extent it suggests the Agency contended the services provided by Zen were not necessary and proper (beyond challenging some Zen providers' qualifications).  The latter claim is a nonsequitur that relies on the false dichotomy that the Sanctions Motion is *either* critique and commentary on Agency practices *or* argument in support of provider qualifications. In reality, Zen's Motion For Sanctions

20

was both.  Pages 3 through 15 of Zen's motion is a scathing general criticism of the Agency, how it administered its Behavior Analysis program, and its unlawful attempts to recoup money from providers.  Each of these issues was and is "a subject of legitimate news interest," and, as discussed in the Opening Brief, in fact were covered by the Miami Herald.[3]  Further, to the extent Zen argued its individual providers were qualified to bill for services, Zen did so on the basis that the post-hoc, extra-legal qualifications the Agency attempted to impose by impermissible non-rule policy provided no basis to disqualify them and sanction Zen.

Because pages 3-15 of the Sanctions Motion demonstrate conclusively Zen's speech was on a matter of public concern and within the core protections of the First Amendment, Appellees simply ignore that discussion and cite pages 15-42 of the motion.  Such a "pay no attention to the man behind the curtain" plea didn't fool Dorothy, and it shouldn't fool this Court.  As *O'Laughlin* and other controlling cases make clear, First Amendment-protected speech does not lose its status because it is accompanied by less public speech, thus it would be of no import even if Appellees' claims were

---

[3] Appellees' suggestion that in order to be of "legitimate news interest" a statement must deal with a presidential assassination attempt, *see* AB at 55, confirms Appellees have no legitimate basis to dispute Zen's and Otamendi's speech touched a matter of public concern.

true that the "most oft-repeated complaints" in the sanctions motion related

to Zen providers' qualifications.

In sum, the *content* of Zen's speech in the Sanctions Motion clearly

addressed a matter of public concern.

Unable to seriously contest the *content* sub-factor, Appellees revert to

precisely the same arguments on the *form* and *context* sub-factors

condemned in *O'Laughlin*.

In an argument that fits under this Court's *form* sub-factor analysis,

Appellees contend "the forum is dispositive," arguing that "[b]ecause the

[Sanctions] Motion is comparable to an internally filed grievance that does

not seek to communicate matters to the public, it warrants no First

Amendment protections."  AB at 54 ("The [Sanctions] Motion *was never*

*filed in a public forum* but was only served to [sic] AHCA.") (emphasis in

original).

As an initial matter, as discussed above, the Supreme Court and this

Court have explicitly rejected this precise argument.  *See O'Laughlin*, 30

F.4th at 1052 ("the law is well-settled that a public employee does not forfeit

his free-speech rights simply because he chooses to communicate privately

rather than publicly"); *id.* (unanimous Supreme Court "expressly reject[ed]

the proposition that 'private expression of one's views is beyond

constitutional protection.'") (quoting *Givhan*, 439 U.S. at 413); *see also*

*Cook*, 414 F.3d at 1319.

Second, Appellees are wrong to liken Zen's scathing criticism in the

Sanctions Motion to an internally filed grievance. Zen served its motion on three

Agency attorneys, *see* DE:17-2 at 47, and the undeniable inference from the AC's

allegations is that the Sanctions Motion proliferated widely at the Agency

"embarrassing . . . upper level management at AHCA, especially Defendant

Bennett," DE:17 at 11 (¶ 31); *id.* at 3 (¶ 4) ("because Zen Group was brazen

enough to criticize the Agency, expose its mistakes and misconduct, and threaten

to seek sanctions – then, ultimately prevailed – Zen Group and its owner Carlos

Otamendi drew the ire of the Agency and its employees, foremost among them,

Kelly A. Bennett"). Zen communicated clearly its intent to file the sanctions

motion in DOAH as soon as permissible, i.e., after the expiration of the 21-day

safe-harbor period provided by Florida law. *See* DE:17-3 at 125 (email sent on

Zen's behalf to Agency lawyers, stating, Zen will "proceed[] on our sanctions

motion . . . and our non-rule policy claim.").

Consequently, not only was the content of Zen's speech in its Sanctions

Motion more critical of important Agency practices and more a subject of

legitimate news interest than the speech at issue in *O'Laughlin*, the *form* of Zen's

speech was more widespread and more public.

Finally, in an argument that fits under this Court's *context* sub-factor analysis, Appellees claim "the purpose of the Motion was not to make certain matters public, but to effectuate the private interest of Zen in the recovery of attorney's fees." AB at 53-54.  Here, again, Appellees advance an argument condemned in *O'Laughlin*.  There, this Court explicitly rejected the contention that because the statements at issue were "at least to some degree 'motivated' by [plaintiffs'] personal interest in the outcome of the union election," the "election-related motivation deprives their speech of its publicness." 30 F.4th at 1053.  Simply put, a personal motivation or interest apart from pure criticism of a government employee, program, or function does not rob speech on matters of public concern of First Amendment protection.

First, Appellees are wrong to assert the purpose of Zen's Sanction Motion was to obtain attorney's fees.  Zen's motion, filed pursuant to Section 57.105 of the Florida Statutes, is best viewed as a vehicle to articulate Zen's criticism of the Agency's maladministration of the Behavior Analysis program and the unlawfulness of its attempts to claw back money from innocent Medicaid providers via arbitrary, capricious, post-hoc, and unlawfully added provider qualifications.  Moreover, while the Sanctions Motion may have had multiple purposes, it served primarily to give the Agency a chance to abandon its unlawful practices, in Zen's case and others.  *See Davis v. Bailynson*, 268 So. 3d 762, 769 (Fla. 4th DCA 2019)

("The central purpose of section 57.105 is, and always has been, to deter meritless filings . . . .").

Second, as this Court has explained, even if Zen stood to benefit from the Agency abandoning its unlawful practices – detailed extensively in Zen's Sanctions Motion – that does not alter that Zen's speech centered on a matter of public concern. Just as O'Laughlin's personal motivation to win the union election did not deprive his speech of its "publicness," Zen's and Otamendi's interest in the Agency abandoning its meritless claims and discontinuing its reliance on unlawful rules and policies did not "deprive their speech of its publicness." Finally, the AC's allegations and attachments leave no doubt that had the Agency not abandoned its unlawful recoupment effort, Zen was anxious to publicly file and litigate the detailed and explicit Sanctions Motion allegations of unlawful conduct by the Agency. *See* DE:17-3 at 125 (email sent on Zen's behalf to Agency lawyers, stating, Zen will "proceed[] on our sanctions motion . . . and our non-rule policy claim.").

In short, contrary to Appellees' conclusory argument, Zen's purpose and motivation for drafting, serving, and distributing its sanction motion confirms the conclusion that Zen's and Otamendi's speech in the motion touched on matters of public concern.

In sum, proper examination of the content, form, and context of Zen's speech confirms it clearly passes the "public concern test" and is entitled to First

25

Amendment protection.  The district court erred in concluding otherwise and dismissing Count II.  This Court must reverse.

### III.  Appellees Are Not Entitled to Qualified Immunity On Either Count of the AC

Appellees urge that even if this Court concludes they violated Zen's and Otamedi's constitutional rights they are entitled to qualified immunity. The Opening Brief demonstrates Appellees are not entitled to qualified immunity on either Count I or Count II.

Appellees first contention in support of qualified immunity is that the AC "recognizes that . . . federal regulations require the temporary suspension of Medicaid payments following a credible allegation of fraud," and "Zen has not alleged facts to sufficiently show the payment suspension and fraud referral were somehow unlawful."  AB at 41, 56.  This is bizarre.  Zen and Otamendi repeatedly allege there was *no* credible allegation of fraud – that Bennett made the fraud allegation up herself to punish Zen – and Zen engaged in no fraud.  As such, no fraud referral or payment suspension was required, warranted, or permitted by federal statute, and Bennett's false report of a crime to MFCU was clearly unlawful.

Next, Appellants contend controlling law at the time Bennett and other defendants violated Zen's and Otamendi's constitutional rights did not give them "fair warning." AB at 41, 56. This Court has held "fair warning" can be established

26

by "a materially similar case," "a broader, clearly established principle that should control the novel facts of the situation," or conduct that "so obviously violate[s] the constitution [such] that prior case law is unnecessary." *Gaines v. Wardynski*, 871 F.3d 1203, 1208 (11th Cir. 2017).

In the Opening Brief, Zen and Otamendi demonstrated that clearly established First and Fourteenth Amendment law prohibited the conduct Bennett and other Defendants are alleged to have engaged in, thus provided fair warning by the second, if not the third, method. *See* OB at 49-52, 69. Appellees fail to address this argument, and instead contend only that no controlling precedent condemned the precise conduct alleged here under the precise constitutional theories advanced.

For the reasons stated in the Opening Brief, Appellees are not entitled to qualified immunity. Most basically, as detailed in the Opening Brief, *id.* at 49-52, Appellees are not entitled to qualified immunity on Count I because the Supreme Court and this Court have repeatedly reaffirmed the principle that "[t]o punish a person because he has done what the law plainly allows him to do is a due process violation of the most basic sort," and because the factual scenarios presented by the controlling precedents that reaffirmed this broad principle are analogous in many important respects to the present case, and establish conclusively that Appellees had fair warning their retaliatory conduct violated Zen's and Otamendi's constitutional rights.

27

Similarly, Appellees are not entitled to qualified immunity on Count II because (1) the doctrine does not permit Appellees to rely on their assumption this Court will extend the public concern test to Petition Clause claims brought by contractors, and (2) the broad principles the Court relied on in *O'Laughlin* to find the speech there touched on matters of public concern were long-ago clearly established by controlling precedent and provided fair warning that Zen's alleged speech and petition activity was protected by the First Amendment and not a fair subject for retaliation.

## IV.    Conclusion

The district court erred in dismissing Counts I and II, and this Court should reverse, and reinstate them.

Respectfully submitted,

**THE HEALTH LAW OFFICES
OF ANTHONY C. VITALE P.A.**
Anthony C. Vitale, Esq.
Florida Bar No. 249841
2333 Brickell Avenue, Suite A-1
Miami, Florida 33129
(305) 358-4500 telephone
avitale@vitalehealthlaw.com

**ELLSWORTH LAW FIRM, P.A.**
Sean M. Ellsworth, Esq.
Florida Bar No. 039845
1000 5th Street, Suite 223
Miami Beach, Florida 33139
(305) 535-2529 telephone
sean@ellslaw.com

 */s/ Sean M. Ellsworth*
Sean M. Ellsworth

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS

I HEREBY CERTIFY this brief complies with the type-volume limitations set forth in Fed. R. App. P. 32(a)(7).  This brief contains 6,499 words, including all headings, footnotes, and quotations, and excluding the parts of the brief exempted under Fed. R. App. P. 32(f) and 11th Cir. R. 32-4.

I HEREBY CERTIFY further, that this brief complies with the typeface and type style requirements of Fed. R. App. P. 32(a)(5) and (6) because it has been prepared in a proportionally-spaced typeface using Microsoft Word in 14-point Times New Roman font.

 /s/ Sean M. Ellsworth
Sean M. Ellsworth

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on August 11, 2022, a true and correct copy of the foregoing has been filed electronically with the Clerk using CM/ECF who will serve a copy on all counsel of record.

 /s/ Sean M. Ellsworth
Sean M. Ellsworth